Michiko Stehrenberger, *listed creditor*
2500 Blanchard Road
Santa Rosa Valley, CA 93012
document.request@gmail.com (*\*email service preferred*)
(206) 229-4415

**U.S. COURTS**

DEC 11 2020

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF IDAHO
### BOISE DIVISION

| | |
|---|---|
| MICHIKO STEHRENBERGER,<br>Plaintiff,<br><br>v.<br><br>TAMIO LUCIEN STEHRENBERGER,<br>ANNA CHRISTINE STEHRENBERGER,<br>Debtors/Defendants,<br><br>INTERNAL REVENUE SERVICE,<br>CALIFORNIA FRANCHISE TAX BOARD,<br>AND IDAHO TAX COMMISSION,<br>Listed priority creditors,<br><br>TIMOTHY R. KURTZ,<br>Chapter 7 Trustee,<br><br>JOHN DOES 1-100,<br>Defendants. | Chapter 7 case no. 20-0083-NGH<br>Adversary No.: _____<br><br>ADVERSARY COMPLAINT TO<br>DETERMINE DISCHARGEABILITY OF<br>DEBT PURSUANT TO 11 U.S.C. § 523,<br>FOR DECLARATORY RELIEF TO<br>DETERMINE THE VALIDITY, PRIORITY,<br>OR EXTENT OF LIENS PURSUANT TO 11<br>U.S.C. § 547 AND 2201, AND FOR OTHER<br>RELIEF |

## ADVERSARY COMPLAINT

Plaintiff Michiko Stehrenberger brings this adversary proceeding respectfully seeking

orders from this Court determining that her claims are excepted from discharge under 11 U.S.C.

§ 523, this Court's determination of the validity, priority, and extent of liens under § 547 and the

avoidance of fraudulent or voidable transfers of assets, declaratory relief under 28 U.S.C. § 2201

and Bankruptcy Rules 7001(2) and 7001(9), and other requested relief pursuant to Fed. R. Bankr. P. 4007(c), 11 U.S.C. §§ 523, 542, 547, 2201 and the respective state laws for the States of Utah, California, Delaware, and Idaho, and any other applicable authority.

Plaintiff Michiko Stehrenberger ("Michiko") requests following judicial determinations:

1.  That co-debtors Tamio Stehrenberger and Anna Stehrenberger be declared jointly and severally liable for committing securities fraud and violating the Utah Securities Act, and liable for treble damages, fees, and costs under the Utah Securities Act's statutory damages formula, Utah Code Ann. § 61-1-22(1) and (2) as already ordered by a Utah state court in its August 24, 2017 final order, findings and conclusions in *Overland Associates, LLC, et al. v. Star Mountain Enterprises, LLC, et al.,* Fourth Judicial District Court of Utah case no. 160100092;

2.  That co-debtors Tamio Stehrenberger and Anna Stehrenberger be declared the "Managers/ Members" of Star Mountain Enterprises, LLC and therefore jointly and severally liable for committing securities fraud and violating the Utah Securities Act under the entity-piercing provisions of Utah Code Ann. § 61-1-22(4)(a), as based upon this Court's taking of judicial notice of the public record filings made with the Utah Department of Commerce in which they identified themselves as the "Managers" of the Star Mountain entity, and these defendants' own judicial admissions in a Utah state court case that they each are the "Managing Members" or "Managers" of Star Mountain Enterprises, LLC;

3.  That the Utah state court's August 24, 2017 award of treble damages, fees, and costs in favor of Michiko Stehrenberger against co-debtors Tamio Stehrenberger and Anna Stehrenberger, is excepted from discharge under 11 U.S.C. § 523(a)(2), (4) and (19), as

the court award is based upon these co-debtors' having committed securities fraud and violations of the Utah Securities Act;

4.  That this Court declare the final dollar amount of damages, for final judgment upon the Utah state court's statutory damages award of "treble damages, interest, fees, and costs" in the Star Mountain-related securities fraud case, based upon the application of simple math and documentary evidence for calculating interest under the statutory damages formula, Utah Code Ann. § 61-1-22(1) and (2), rather than sending that matter back to the Utah state court solely to determine the dollar amount to be excepted from discharge under 11 U.S.C. § 523.

5.  That the separate judgment entered in the Utah state court in *EAG Investments, LLC v. Tamio Lucien Stehrenberger* ("EAG Judgment"), upon which that court has ordered Michiko Stehrenberger substituted as the Successor Judgment Creditor entitled to enforce the EAG Judgment, is excepted from discharge on the basis of the the debtor's loan application fraud or misrepresentation in obtaining that money pursuant to 11 U.S.C. § 523(a)(2);

6.  That the co-debtors converted the money they obtained from EAG Investments, LLC and that such conversion excepts that debt from discharge under 11 U.S.C. 523(a)(6);

7.  That this Court declare the final dollar amount of the EAG Judgment excepted from discharge under 11 U.S.C. § 523.

8.  That creditor Michiko Stehrenberger's *Notice of Judgment Lien*, as filed May 24, 2019 with the California Secretary of State pursuant to California Code of Civil Procedure 697.510 *et seq.* created and perfected a superior five-year judgment lien against all of the co-debtors' personal property under California law, which is superior to the liens of all or

certain other parties related to this case, and that the expiration of her lien is tolled during the pendency of this case under 11 U.S.C. 108(c);

9. That creditor Michiko Stehrenberger's service upon co-debtors of the Orange County Superior Court of the State of California under California Code of Civil Procedure § 708-110 *et seq*. created and perfected a separate one-year lien against all of the co-debtors' personal property, and that the expiration of her lien is tolled during the pendency of this case under 11 U.S.C. 108(c);

10. That in the State of Delaware, the New Castle County Sheriff's July 17, 2020 service of the Kent County Superior Court's writ and levy papers created and perfected a three-year levy against all the co-debtor's property under the custody or control of, or related to, OPKIX, INC., Delaware entity no. 368777, and that the expiration of this three-year lien and levy are tolled during the pendency of this case under 11 U.S.C. 108(c);

11. And all such other relief that this Court deems just, equitable, and proper.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and this Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1).

13. Venue in the District of Idaho, Boise Division, is proper in this Court under 28 U.S.C. § 1409, in that this adversary proceeding to *In re Tamio Lucien Stehrenberger and Anna Christine Stehrenberger*, No. 20-00833-NGH now pending in this Court ("the Bankruptcy Case").

14. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, Plaintiff Michiko Stehrenberger consents to entry of a final judgment or order with respect to this Complaint.

15. Determination of exceptions to the co-debtors' discharge of certain debts is appropriate under 11 U.S.C. § 523(a).

16. Declaratory relief is appropriate under 28 U.S.C. § 2201 and Bankruptcy Rules 7001(2) and 7001(9).

## THE PARTIES

17. Creditor Michiko Stehrenberger ("Michiko") is a creditor on two different claims in this case:

18. First, creditor Michiko is creditor in the Bankruptcy Case, 20-00833-NGH, as listed by the co-debtors in this case on September 11, 2020 (Chapter 7 petition and schedules, Official Form 106E/F, case docket Document 1, page 37 of 73; co-debtors list the amount of the debt as $1,163,310.92 related to "EAG Investments" and a"Utah Default Judgment," related to EAG Investments, LLC v. Tamio Lucien Stehrenberger, et al.;

19. Second, creditor Michiko separately received an award from a different Utah state court of treble damages, interest, fees, and costs under the statutory damages formula, Utah Code Ann. § 61-1-22(1) and (2) against co-debtors in the matter of *Overland Associates, LLC; Ken Hsieh; Michiko Stehrenberger; Francine Yeh v. Star Mountain Enterprises, LLC; Tamio Stehrenberger; Anna Stehrenberger; Taanen, LP; Landmark Venture Capital, LLC;* Fourth Judicial District Court of Utah related case numbers 080402986, 16010092, and 160400620, which co-debtor's have listed as "Overland v. Star Mountain & Tamio Stehrenberger" as a "Civil Lawsuits" in their September 11, 2020 petition and schedules, Doc 1, page 54 of 73.

20. Defendant Tamio Lucien Stehrenberger is a co-debtor in the Bankruptcy Case.

21. Defendant Anna Christine Stehrenberger, wife to Tamio Lucien Stehrenberger, is the

other co-debtor in the Bankruptcy Case.

22. The marital community is comprised of the interests and community property of both of the co-debtors in the Bankruptcy Case.

23. Defendant Timothy R. Kurtz is the Chapter 7 Trustee in this case, appointed on or after the September 11, 2020 petition date and hold a lien against all assets and property of the co-debtors' bankruptcy estate, which lien first arose on that date.

24. Defendant Internal Revenue Service ("IRS"), the California Franchise Tax Board, and the Idaho Tax Commission are each either listed or referenced by another name as the holders of tax liens against the co-debtors in the Bankruptcy Case.

25. John Doe Defendants 1-100 are parties whose identities are not yet known at this time, who upon information and belief have transferred assets or property to or from the Debtors or the Debtors' various entities, or who otherwise have an interest, claim, or an involvement in the property or information related to the Bankruptcy Case, the bankruptcy estate, or this action.

I.   **Exception to discharge for securities fraud-related debts in violation of a state securities act under 11 U.S.C. § 523(a)(2) and (19).**

26. Under 11 U.S.C. § 523(a)(2)(A), (4), and (19):

> A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

(19) that— (A) is for—

(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, <u>any of the State securities laws, or any regulation or order issued under such</u> Federal or <u>State securities laws;</u> or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) <u>results, before,</u> on, or after <u>the date on which the petition was filed,</u> from—

(i) <u>any judgment, order, consent order, or decree entered in any</u> Federal or State <u>judicial or administrative proceeding;</u>
(ii) any settlement agreement entered into by the debtor; or
(iii) <u>any court</u> or administrative <u>order for any damages,</u> fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, <u>or other payment owed by the debtor.</u>

(emphasis added)

27. Matters related to the co-debtors' property are generally governed by local state law, *Butner v. United States*, 440 U.S. 48, 55 (1979), which in this case the securities fraud cause of action arose in the State of Utah, and the Utah Uniform Securities Act, Utah Code Ann. § 61-1-1, *et seq.* therefore governs those aspects of the case.

28. On August 24, 2017, the Utah state court entered a final order of default (designated as final under Utah R. Civ. P. 54(b)) piercing the corporate veil determining co-debtors Tamio Stehrenberger and Anna Stehrenberger as jointly and severally liable under Utah Code Ann. § 61-1-22(4)(a) for committing securities fraud and for violation of the Utah State Securities Act under Utah Code Ann. § 61-1-1, *et seq.*, and awarded creditor Michiko Stehrenberger treble damages, interests, fees, and costs under the statutory damages formula under Utah Code Ann. § 61-1-22(1) and (2). 1

¶ 2: "[T]he promissory notes in this case meet the definition of "securities" under the Utah Securities Act, Utah Code Ann. § 61-1-1, *et seq.*, and are governed by the liability and damages formula provisions of the Utah Securities Act, because they are "notes" under subpart (a) of § 61-1-13(ee) (i), and are "investment contracts" under subpart (k) of §§ 61-1-13(ee)(i).

¶ 3: "[T]he Court hereby declares that defendant[] Star Mountain Enterprises, LLC (Utah entity n8mber 6215366-0160) ha[s] violated the Utah Uniform Securities Act, Utah Code Ann. §61-1-1, et seq., including the Utah Securities Act's "anti-fraud" provision pertaining to Defendant[] Star Mountain Enterprises, LLC's omission of material facts made in connection with the sale of the securities in this case, in the manner of failing to disclose the "high-risk" warnings of the Landmark Venture Capital, LLC investment offering in connection with the sale of the Star Mountain Enterprises-issued promissory notes accompanying Plaintiffs' *Amended Complaint* as Exhibits 4-8."

¶ 6: "[T]he Court concludes that Defendants Tamio Stehrenberger and Anna Stehrenberger are specifically identified by name as the two Managers of Star Mountain Enterprises, LLC during the time period relevant to this case;"

¶ 7: "[U]nder Utah Code Ann. § 61-1-22(4)(a), the two Managers of Star Mountain Enterprises, LLC, defendants Tamio Stehrenberger and Anna Stehrenberger, are persons who are jointly and severally liable together with Defendant Star Mountain Enterprises, LLC, for the Utah Securities Act violations committed and the money owed;"

¶ 5: "[...] Plaintiff Michiko Stehrenberger is to be awarded Default Judgment, of an amount to be determined separately, against defendants [] Star Mountain Enterprises, LLC (Utah entity number6215366-0160); and Taanen, LP (Utah entity numbers 8561982-0180, 6882723-0180, and 9505205-0180), as authorized under the statutory formula set forth in the Utah Securities Act, Utah Code Ann. § 61-1-22, of: [1] treble damages to be calculated upon the total amount paid upon the promissory note securities filed with Plaintiff's *Amended Complaint* as Exhibits 4-8; [2] plus pre-judgment interest accrued as of the calendar date of entry of judgment; plus attorney fees and costs inclusive of those incurred in this case and in the related Provo District case, number 080402986; [4] minus reductions for amounts repaid on the securities-the accounting of such dollar amounts and damages to be determined in separate proceedings under [Utah Civil] Rule 55(b)(2);"[1]

---

[1]   The Utah state court additionally awarded post-judgment interest and other remedies in other paragraphs of its August 24, 2017 final order, findings and conclusions, as follows:

¶ 11: "In accordance with Utah R. Civ. P. 54(b), the Court expressly determines that there is no just reason for delay in the entry of judgment, in that the Plaintiff's claims against these defaulted defendants (including the totality of claims against Star Mountain Enterprises on the five (5) Star Mountain-issued promissory notes on file with the court August 15, 2016 as Plaintiff's Amended Complaint [as Exhibits 4-8) are claims separate and distinct from the remaining claims against the remaining defendants, and the prompt entry of judgment against these defaulted defendants therefore best serves the interest of justice by allowing the Plaintiff to present her damages in supplemental proceedings under Utah R. Civ.P. 55(b)(2) and the Court to derive a final sum certain as to these separate claims, thereby allowing the separate claims against the remaining participating defendants to be separately adjudicated.

Ex. 1. (emphasis added)

29. The Utah state court designated its August 24, 2017 award and findings/conclusions as

final under Rule 54(b) in its ¶ 11. Ex. 1.

30. The co-defendants (as defendants in the Utah state court case) and their defaulted entities

did not appeal the Utah state court's August 24, 2017 final order.

31. The Utah state court later made verbal rulings from the bench on November 28, 2018

clarifying that it has ordered that the "Managers/Members" of Star Mountain

Enterprises, LLC (which the court again found were Tamio Stehrenberger and Anna

Stehrenberger) are jointly and severally liable together with Star Mountain for

---

¶ 8: "[P]ost-judgment interest on the total judgment shall accrue daily at the statutory rate o 12% per annum (1% per month) under Utah Code Ann. 61-1-22(c)(ii)(B), for which the []defaulted Defendants, along with their Managers of public record are likewise jointly and severally liable for the securities violations committed and for money owed under Utah Code Ann. § 61-1-22(4) (a). . ."

¶ 9: "The accounting of all such dollar amounts and damages, and the identity of any additional liable Managers and Partner(s) of the defaulted entity defendants Star Mountain Enterprises, LLC and Taanen, LP, are to be determined in separate proceedings under [Utah Civil] Rule 55(b)(2);"

¶ 10: "Upon appropriate application to the Court, Plaintiff Michiko Stehrenberger shall be entitled to further damages, fee[s], cost and any other appropriate relief related to any appeal or enforcement and collection of this Judgment, as permitted by law or contract.

committing securities fraud and for violations of the Utah Securities Act.

32. The Utah state court is in the Tenth Circuit, and "[i]n the Tenth Circuit [in which the Utah state court entered its August 24, 2017 final order] default judgments have preclusive effect." *In re Armstrong*, 294 B.R. 344, 357 (B.A.P. 10th Cir. 2003), referencing *McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 477 (10th Cir. BAP 1999); *accord Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir. 1995); *FDIC v. Daily (In re Daily)*, 47 F.3d 365 (9th Cir. 1995).

33. "As cited by the bankruptcy court in its ruling, the law provides that a ruling of a court, even when the ruling is a default judgment, is sufficiently final for purposes of preclusion." *Jordana*, 232 B.R. at 477.

34. In their pleadings in the Utah state court cases, co-debtors indicated they intended their activities to function as investment advice on the investments they offered through their entities, whereby co-defendants obtained $100,000.00 from creditor Michiko (and $153,500.00 and $17,000 from two other investors, family members, who later transferred all of their right, title, and interest in their claims to Michiko) as a direct result of their "investment advice" in which investors relied upon and trusted the co-debtors purported greater knowledge and insider knowledge in these types of private investments, such that Tamio and Anna presented themselves as acting in a fiduciary role, cultivating a special relationship and confidential relationship of trust related to their advice, the investments they offered, and the money they obtained from creditor Michiko and other investors.

35. Co-defendants misrepresented the nature of the investment in the manner described in the Utah state court's August 24, 2017 order at ¶ 3, above, in that they, jointly and

severally with their investment company, Star Mountain Enterprises, LLC:

> violated the Utah Uniform Securities Act, Utah Code Ann. §61-1-1, et seq., including the Utah Securities Act's "anti-fraud" provision pertaining to Defendant[] Star Mountain Enterprises, LLC's omission of material facts made in connection with the sale of the securities in this case, in the manner of failing to disclose the "high-risk" warnings of the Landmark Venture Capital, LLC investment offering in connection with the sale of the Star Mountain Enterprises-issued promissory notes

36. Under the circumstances of co-debtors' "omission of material facts made in connection with the sale of securities . . . in the manner of failing to disclose the 'high-risk' warnings of the Landmark Venture Capital, LLC investment offering in connection with the sale of the Star Mountain Enterprises-issued promissory notes" as declared in the Utah state court's August 24, 2017 final order, co-debtors Tamio Stehrenberger and Anna obtained money through false pretenses, while acting in a fiduciary capacity as "investment advisors" and breaching and defalcation in their duties, and their debt for obtained in this manner, plus any amounts related thereto, is excepted from discharge under § 523(a)(2) and (4).

37. On November 26, 2019, the Utah state court ordered a stay of all proceedings in the state court case until the bankruptcy cases are resolved.

38. In direct response to the Trustee's demand, Debtors Tamio Stehrenberger and Anna Stehrenberger filed their personal Chapter 7 petition and schedules on September 11, 2020. Record a*dmission during Section 341 meeting before Trustee Tim Kurtz.*

39. The Utah state court proceedings to determine the last step of the dollar amount of the damages for entry of final judgment under the simple math of the statutory damages formula (Utah Code Ann. § 61-1-22(1) and (2)) have been stayed by the two June 2, 2019 District of Utah bankruptcy filings (cases 19-24015 and 19-24016) and Debtors'

September 11, 2020 District of Idaho bankruptcy filings (20-00833-NGH).

II.     **Exception to discharge for EAG Investments, LLC Judgment and loan proceeds obtained through fraud of misrepresentation under 11 U.S.C. § 523(a)(2) and conversion that constitutes "willful and malicious injury by the debtor to another entity or to the property of another entity" under § 523(a)(6).**

40. Between August 2006 and 2007, co-debtors caused the money of creditor Michiko, investors Ken Hsieh and Francine Yeh, and others, to be placed into Landmark Venture Capital, LLC investments and/or it affiliated entity, Bray-Conn.

41. In or about 2005, co-debtor Tamio sent creditor Michiko an email in which Tamio described how to "season" the money belonging to other people by depositing it into his own bank account for a period of a few months, whereby banks typically only ask for about three months' worth of bank statements as proof of funds in consideration for a new loan, and that Tamio would then use his bank account statements to obtain new loans.

42. Co-debtor Tamio offered to put $50,000.00 from investor Francine Yeh into a shared account between Tamio and Michiko to use to "season" funds to apply for new loans.

43. Creditor Michiko did not agree to Tamio's suggestion that they "season" the money belonging to others in their shared account because she did not want to misrepresent the money of others as belonging to her.

44. Between August 2006 and at least May 2007, co-debtors caused the money of creditor Michiko and other investors to be pooled together and then paid to Landmark/Bray-Conn in exchange for promissory notes bearing an annual interest rate of 72%.

45. By approximately May 2007, co-debtors caused the amount of approximately US $2.2 million, comprised of the pooled money of numerous investors, including creditor

Michiko, to be placed into an account with Landmark/Bray-Conn.

46. The account with Landmark/Bray-Conn was related to Star Mountain Enterprises, LLC but under the name of co-debtor Tamio Stehrenberger personally, and labeled as account 10032.

47. In or about July 2007, co-debtors were aware that the Landmark/Bray-Conn investment was not able to pay as previously agreed under the 72% annual interest promissory notes, and, after Landmark/Bray-Conn made an Offer of Rescission related to the 72% interest rate promissory notes, co-debtor Tamio Stehrenberger signed two new promissory notes with Landmark Venture Capital, LLC that only paid 12% per year to Star Mountain (1% each month), which was less than the amount Star Mountain owed each of its investors each month under its Star Mountain promissory notes.

48. In or about May 2008, co-debtors knew or should have known that the Landmark Venture Capital, LLC investment would not pay back the approximately $2.2 million of the pooled investor funds referenced in Account 10032.

49. Star Mountain was obligated by the Star Mountain promissory notes to pay certain of its investors, including creditor Michiko, the return of the entirety of their investment on or about June 1, 2007.

50. Co-debtor Tamio indicated to creditor Michiko that Star Mountain would be late in returning her $100,000.00 investment for the June 1, 2008 due date, and indicated that Tamio would try to get a new home equity line of credit to use to pay back Michiko $100,000.00 investment instead of returning her money from the Star Mountain investment.

51. In May of 2008, co-debtor Tamio sought a new loan from EAG Investments, LLC in the

amount of approximately $500,000.00 as part of the purchase of a luxury home located
on Pristine Cove in Draper, Utah.

52. In connection with obtaining a new loan from EAG Investments, co-debtor Tamio
Stehrenberger submitted to EAG a Uniform Residential Loan Application in which
Tamio claimed to have his own personal assets in an account "BRAE" in the amount of
approximately US $ 2.2 million.

53. The approximately $2.2 million in the "BRAE" account was the same money that was in
the Landmark/Bray-Conn Account 10032 that belonged to Star Mountain investors.

54. Co-debtor Tamio had caused to be pooled together the approximately $2.2 million of
money from investors into an account under his own name to "season" the funds and
apply for new loans while misrepresenting that money as Tamio's own money.

55. Co-debtor Tamio provided to EAG Investments account statements for Account 10032 in
which Tamio allowed it to be misrepresented that the $2.2 million was Tamio's own
personal money to guarantee repayment of the loan.

56. EAG Investments would not have made the approximately $500,000.00 loan to co-
debtor Tamio if Tamio had told EAG the truth that the $2.2 million was not Tamio's own
money to guarantee repayment of the EAG loan.

57. EAG Investments relied upon co-debtor Tamio's misrepresentation in making its
determination to loan Tamio the money, believing that Tamio had more than enough
liquid assets to repay the $500,000.00 loan from the approximately $2.2 million in the
Account 10032.

58. Co-debtor Tamio caused a letter titled "Irrevocable Letter of Assignment" to be provided
to EAG Investments from Landmark/Bray-Conn in which they purported to secure EAG

Investments, LLCs $500,000.00 loan with the funds in the Account 10032.

59. Co-debtor Tamio agreed to EAG Investments, LLC filing a UCC lien against the money in the Landmark/Bray-Conn Account 10032.

60. Co-debtor Tamio knew or should have known that the Account 10032 did not actually hold liquid assets of $2.2 million belonging to either of the co-debtors at the time they interacted with EAG Investments, LLC to obtain the approximately $500,000.00 loan..

61. Co-debtor Tamio knew that he would not be able to repay the $500,000.00 new loan to EAG Investments, LLC on the dates they applied for the loan, provided the Residential Loan Application, Irrevocable Assignment letter, and agreed to EAG Investments placing a UCC lien.

62. Co-debtor Tamio knew that they would not keep the Pristine Cove luxury home in Draper, Utah or make payments on the loans against the property.

63. Co-debtor Tamio fraudulently induced EAG Investments, LLC into loaning Tamio Stehrenberger approximately $500,000.00 as a second-position loan, behind a first-position purchase loan from Wachovia Bank.

64. Co-debtor Tamio submitted a Uniform Residential Loan Application a few days after the Uniform Residential Loan Application to EAG Investments, LLC, showing a disparity in the approximately $2.2 million assets just a few days apart.

65. Co-debtor Tamio failed to disclose to EAG Investments, LLC in connection with his loan application and the obtaining of the approximately $500,000.00 loan proceeds that Tamio did not, in fact, own the $2.2 million in in assets in the "BRAE" Account 10032.

66. EAG Investments, LLC relied upon Debtor Tamio's misrepresentations regarding his assets, money, and property in connection with qualifying for the approximately

$500,000.00 loan.

67. EAG Investments, LLC would not have made the $500,000.00 loan to Debtor Tamio
Stehrenberger but for Tamio's representation that the approximately $2.2million in the
"BRAE" Account 10032 was Tamio's own personal money.

68. EAG Investments, LLC was damaged as a direct result of its reliance upon co-debtor
Tamio's misrepresentations regarding his assets, money, and property in connection with
qualifying for the approximately $500,000.00 loan.

69. Co-debtor Tamio Stehrenberger's misrepresentations and omissions (including the
Uniform Residential Loan Applications to EAG Investments compared to Wachovia
Bank, the Irrevocable Assignment, and the agreement to a UUC lien) each constitute
separate instances of loan application fraud and are excepted from discharge under 11
U.S.C. § 523(a)(2).

70. Co-debtor Tamio made only one or two payments and then defaulted on all further loan
payments to EAG Investments, LLC.

71. Co-debtor Tamio signed the promissory note with EAG Investments, LLC and received
the approximately $500,000.00 while Tamio had no intention of paying back the loan.

72. Co-debtor converted the EAG Investments, LLC loan of approximately $500,000.00 for
his own use and benefit with no intention of repaying the money he had obtained.

73. Co-debtor Tamio did not pay back the approximately $500,000.00 money to EAG
Investments, LLC as agreed.

74. Co-debtor Tamio Stehrenberger failed to cure the default on the first-position loan with
Wachovia Bank, and allowed the Pristine Cove luxury home to go into foreclosure such
that no collateral was available to satisfy the approximately $500,000.00 obligation to

EAG Investments, LLC.

75. On January 4, 2011, EAG Investments, LLC obtained a default judgment (the "EAG Judgment") against Tamio and became the judgment creditor in Utah Third Judicial District Court.

76. In February 2017, creditor Michiko became the successor judgment creditor on the EAG Judgment, and filed it as a sister-state judgment in the Orange County Superior Court for the State of California.

### III. Determination of the Validity, Priority, and Extent of Liens and creditor Michiko's liens and perfected security interest related to the EAG Judgment

77. Debtors Tamio Stehrenberger and Anna Stehrenberger moved to California prior to March 2017 and were each residents of California on May 24, 2019. the date when creditor Michiko filed a *Notice of Judgment Lien* with the California Secretary of State.

78. "California Commercial Code § 9301(1), . . . adopted in 2001 . . . provides in relevant part: 'While a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection . . . of a security interest in collateral.'" *In re Aura Systems, Inc.*, (Bankr. C. D. Cal. 2006), section B.

79. Section 544 of the Bankruptcy Code makes the avoidance powers of the trustee contingent upon state law. See 11 U.S.C. § 544; *Farm Credit Bank of St. Louis v. Lucas*, 152 B.R. 244, 247 n. 3 (C.D. Ill. 1993), rev'd on other grounds sub nom. *Appeal of Swartz*, 18 F.3d 413 (7th Cir. 1994). Thus, "if perfection is not a concept under [state] law, then it is not a valid concept under the Bankruptcy Code." *Id.*

80. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed

differently simply because an interested party is involved in a bankruptcy proceeding.
Uniform treatment of property interests by both state and federal courts within a State
serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from
receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis* v.
*Manufacturers National Bank*, 364 U.S. 603, 609. The justifications for application of
state law are not limited to ownership interests; they apply with equal force to security
interests, including the interest of a mortgagee in rents earned by mortgaged property."
*Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914 (1979).

81. "Article 9 of the UCC, as adopted in California, governs the method for perfecting a
security interest in personal property. Article 9 applies to "general intangibles," a term
that includes intellectual property. Cal. Com. Code § 9106. "Article 9 of the UCC, as
adopted in California, governs the method for perfecting a security interest in personal
property. Article 9 applies to "general intangibles," a term that includes intellectual
property. Cal. Com. Code § 9106. *In re Cybernetic Services, Inc.*, 252 F.3d 1039 (9th Cir.
2001).

82. Under the Bankruptcy Code, "the entity asserting an interest in property has the burden
of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. §
363(p)(2). This means that the entity asserting an interest must prove that it—and not
other entities—has the superior claim. *Chequers Inv. Assocs. v. Hotel Sierra Vista Ltd.
P'ship (In re Hotel Sierra Vista Ltd. P'ship)*, 112 F.3d 429, 434 (9th Cir. 1997).

83. California Civil Code § 697.510 states:

(a) A judgment lien on personal property described in Section 697.530 is
created by filing a notice of judgment lien in the office of the Secretary of
State pursuant to this article. A judgment lien may be created under this

article only if the judgment is a money judgment that was first entered in
this state after June 30, 1983. Except as provided in subdivision (b) of
Section 697.540, a judgment lien may not be created under this article if
the money judgment is payable in installments unless all of the
installments under the judgment have become due and payable at the time
the notice of judgment lien is filed

(b) Except as otherwise provided in subdivision (c), (e), or (g), the judgment lien
continues for five years from the date of filing.

84. Upon information and belief, and according to the California Secretary of State UCC

lien Search, creditor Michiko's May 24, 2019 *Notice of Judgment Lien* is the first and

only lien filed against co-debtor Tamio Stehrenberger in the State of California as of the

September 11, 2020 petition filing date; and as of the date of this Complaint, there are no

other UCC liens filed with the California Secretary of State against any person with the

surname "Stehrenberger."

85. In 2019 and 2020, the Orange County Superior Court for the State of California entered

multiple Orders requiring co-debtor Tamio to Appear and be Examined ("ORAP")

pursuant to California Code of Civil Procedure § 708.110.

86. Co-debtor Tamio Stehrenberger installed a surveillance camera at his home and used it

or other methods to evade direct service of each of the court's Order ("ORAP") requiring

him to appear and be examined.

87. On June 19, 2020, Debtor Tamio Stehrenberger electronically filed documents into the

Orange County Superior Court case in accordance with California Court Rule 2.2.

88. In co-debtor Tamio's June 19, 2020 filing into the Orange County Superior Court case,

Tamio filed his new residence address with that California court as "35 Argonaut Suite

B1, Aliso Viejo, CA."

89. Under California court rule 2.2, co-debtor Tamio consented to receive all further service

in that Orange County Superior Court case by electronic service as a direct result of his consent to e-filing into that case.

90.    On July 9, 2020, creditor Michiko caused to be served by email upon co-debtor Tamio the Orange County Superior Court's Order to Appear and be Examined ("ORAP') for July 23, 2020, in accordance with Tamio's consent to receive service by email.

91.    On July 9, 2020, co-debtor Tamio Stehrenberger received actual notice of the Orange County Superior Court's Order compelling him to Appear and be Examined on July 23, 2020.

92.    On July 9, 2020, creditor Michiko served by email upon co-debtor Tamio 's counsel in the Star Mountain Enterprises, LLC and Taanen, LP bankruptcy cases (District of Utah case no. 19-24015 and 19-24016, respectively) a copy of the Orange County Superior Court's Order to appear and be examined ("ORAP") and Tamio's counsel acknowledged Tamio's and Anna's receipt of the emailed documents.

93.    On July 9, 2020, Debtor Tamio Stehrenberger received actual notice of the Orange County Superior Court's Order to appear and be examined ("ORAP") against him under California Code of Civil Procedure § 708.110 through the electronic filing and service of the Order to Appear and Be Examined ("ORAP").

94.    Under California Code of Civil Procedure § 708.110(d), the Order to Appear and be Examined ("ORAP") created and perfected a one-year lien against co-debtor Tamio's personal property, including his share of marital community property.

95.    he one-year lien is tolled under 11 U.S.C. 108(c) until thirty (30) days after the lifting of the automatic stay or the dismissal of the Bankruptcy Case, whichever occurs first,

and until then remains in full force without requiring renewal.

96. The Ninth Circuit has recognized that § 108(c) would toll the duration period for an enforceable lien during bankruptcy. *In re Hunters Run Ltd. Partnership,* 875 F.2d 1425, 1429 (9th Cir.1989). If the ORAP lien was perfected, then its duration time would have been tolled by § 108(c).

97. Under California law, service of the ORAP on the judgment debtor creates an enforceable lien in the debtor's nonexempt personal property, even without a separate levy on the property.

98. Upon the July 9, 2020 actual notice to co-debtor Tamio, the ORAP lien was created and perfected against all of Tamio's non-exempt tangible and intangible personal property, wherever located, and with priority over other liens created and perfected after that date.

99. On September 11, 2020, co-debtors filed their Chapter 7 petition in the Bankruptcy Case, 20-00833-NGH, and the Chapter 7 Trustee, Mr. Timothy R. Kurtz, was appointed.

100. Co-debtors assert in their September 11, 2020 petition that co-debtor Tamio owns an approximately 9.13% interest through corporate shares in OPKIX, INC..

101. OPKIX, INC. is a Delaware corporation.

102. On July 17, 2020, the New Castle County Sheriff in the State of Delaware served a writ upon OPKIX, INC. and levied all of co-debtor Tamio's tangible and intangible property related to OPKIX, INC..

103. Under 10 Del. C. § 5072, creditor Michiko Stehrenberger has a period of five-year period in which to execute upon the judgment.

104. Under 11 U.S.C. § 108(c), the five-year period to execute upon the Delaware

judgment against co-debtor under 10 Del. C. § 5072 is tolled until thirty (30) days

after the lifting of the automatic stay or the dismissal of the Bankruptcy Case,

whichever occurs first.

105. Co-debtors list on page 54 of 73 of their September 11, 2020 petition and schedules,

Document 1 a "Federal Tax Lien" in the approximate amount of $25,905.00, and filed

with the Orange County Recorder of Deeds.

106. Creditor Michiko first learned of the co-debtors' purported Federal Tax Lien and other

taxing authority liens upon receipt of the co-debtors' petition and schedules in or about

September 2020.

107. Co-debtors claim in their petition and schedules in the Bankruptcy Case that they owe

debts to the Internal Revenue Service, the California tax authority (the California

Franchise Tax Board), and the Idaho Tax Commission, but the information disclosed in

the petition and schedules is presently insufficient to adequately calculate the validity,

priority, or extent of the liens of each of the parties.

**IV.   A Justiciable Controversy Exists between the various parties identified in the
Bankruptcy Case regarding the Validity, Priority, and Extent of Liens.**

108. All paragraphs of this Adversary Complaint are hereby re-alleged and incorporated by

reference.

109. Creditor Michiko's May 24, 2019 filing of the *Notice of Judgment Lien* with the

California Secretary of State created and perfected a five-year lien under CCP § 695.510

against all of co-debtors' shared personal property, including tangible and intangible

property, and that five-year lien is automatically tolled under 11 U.S.C. § 108(c) during

the pendency of the Bankruptcy Case.

110. Creditor Michiko's service of the California court's Order to Appear and be Examined ("ORAP) under CCP § 708.110 *et seq.*, created and perfected a one-year lien against all of the co-debtors' shared personal property, including tangible and intangible property, and that one-year lien is automatically tolled under 11 U.S.C. § 108(c) during the pendency of the Bankruptcy Case.

111. The Delaware Sheriff's service of the writ upon OPKIX, INC. created and perfected a three-year lien and levy upon the co-debtors' shared assets related to OPKIX, INC., including tangible and intangible property, the the three-year lien and levy are automatically tolled under 11 U.S.C. § 108(c) during the pendency of the Bankruptcy Case.

112. Each of the three EAG Judgment-related liens was created and perfected prior to the September 11, 2020 date of the Chapter 7 petition.

113. Upon information and belief, the Internal Revenue Service's, California Franchise Tax Board's, and/or Idaho Tax Commissions' tax liens are invalid, unenforceable, or junior liens because they were not perfected prior to those liens of creditor Michiko Stehrenberger having first been perfected.

114. The other creditors and parties in interest in this case with purported superior liens or interest in the co-debtors' property are invalid, unenforceable, or junior liens because they were not perfected prior to those liens of creditor Michiko Stehrenberger having first been perfected.

115. A declaratory judgment that declares the validity, priority, and extent of each of the liens would clear up the justiciable controversy, and is authorized under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Bankruptcy Rules 7001(2) and

7001(9).

116.   Accordingly, creditor Michiko Stehrenberger respectfully seeks a declaratory judgment

that each of her three pre-petition liens related to the EAG Judgment are valid, binding,

enforceable, and entitled to priority over the liens of all others for the purpose of the

proper distribution of any assets in the bankruptcy estate.

**V.   Turnover of property ore recorded information of the estate under 11 U.S.C. § 542, declaratory relief related to fraudulent or voidable transfers under 11 U.S.C. § 548.**

117.   Upon information and belief, defendants John Does 1-100, whose true identities or

activities giving rise to these claims are not yet confirmed as of the fling deadline of this

action, received or had/currently have control or dominion over, or otherwise were

involved with, co-debtors' assets or property fraudulently or voidably transferred, for

which or order for reversal of any such transfers, or turnover of any such property, or of

recorded information under 11 U.S.C. 542(d)) would benefit the administration of the

bankruptcy estate.

**VI.   Declaratory Relief: No § 527 preferential transfers were made to creditor.**

118.   Upon information and belief, none of creditor Michiko's liens constitute preferential

transfers under 11 U.S.C. § 547, and declaratory relief confirming that creditor Michiko's

liens or transfers shall not be avoided under § 547 is therefore proper.

**VII.   Injunctive Relief against actions that negatively impact the value of portions of intangible property intertwined both inside and outside of the bankruptcy estate.**

119.   Upon information and belief, based upon facts still being investigated and not yet fully

known to creditor Michiko at the time of the filing deadline for this action, the Chapter 7

Trustee and/or other John Doe defendants are interacting or intend to be interacting in

negotiations or settlement discussions with third-parties that are obligated directly or

indirectly to the co-debtors.

120. Upon information and belief, such interactions will have a negative impact on the value or recoverability of tangible and intangible property and rights that are intertwined both inside and outside of the bankruptcy estate, and property and rights in which creditor Michiko has a present or future interest through her pre-petition liens and levies.

121. The valuation of intangible property in a private corporation, without resort to public records or independent verification of valuation, has the potential for being highly subjective, and interactions between the Trustee or John Does and any third-parties presuming to assert a value of that portion of property or rights that exist within the bankruptcy estate could by association endanger and irreparably harm an attempt at an objective valuation for the portions of property or rights outside the bankruptcy estate.

122. The Trustee, through his fiduciary duties to all creditors, and/or other John Doe defendants in whatever capacity they may interact, should be enjoined from interactions that could endanger the valuation or recoverability of property or rights both inside and outside of the bankruptcy estate; the interests of the parties may readily balanced by requiring the Trustee to grant meaningful consultation and involvement in those interactions with third parties to creditor Michiko where those interactions may impact her interests outside of the estate.

/    /    /

PRAYER FOR RELIEF

WHEREFORE, creditor Michiko Stehrenberger respectfully requests this Court:

(a) Determine that Michiko Stehrenberger's claims related to the Star Mountain

Enterprises-related securities fraud order in the Utah state court are excepted from

discharge under 11 U.S.C. § 523(a)(2),(4), and (19) and are jointly and severally binding

upon the co-debtors under that court's August 24, 2017 entity-piercing order, determine

by simple application of math under the Utah statutory damages formula the precise

amount of the treble damages already awarded by the Utah state court, to finalize the

precise dollar amount excepted from discharge;

(b) Determine that the EAG Investments, LLC judgment, upon which Michiko

Stehrenberger has become the Successor Judgment Creditor, is excepted from discharge

under 11 U.S.C. § 523(a)(2) and (6);

(c) Enter a declaratory judgment in favor of creditor Michiko Stehrenberger on all issues

and declare her liens on the EAG Investments judgment as having been created and

perfected as the superior lien over all others, under IRC §6323, 11 U.S.C. § 547state

laws, and other relevant authority;

(d) Determine that any fraudulently or voidably transferred assets or property made to

any of the John Doe defendants be identified and declared as such if such investigation

by the creditor obtains information not otherwise available to the Chapter 7 Trustee, and

whether the Chapter Trustee may then pursue recovery under 11 U.S.C. § 548 for benefit

of the bankruptcy estate or whether those assets are outside the estate;

(e) Order injunction relief against parties whose interactions or negotiations with third-

parties will impact the valuation or recovery of portions of property that fall outside of

the bankruptcy estate, or order meaningful consultation and shared involvement in any

such interactions or negotiations;

(f) Enter judgment in Michiko Stehrenberger's favor on her Adversary Complaint and all

claims or requests for relief made herein, or in any amendments thereto;

(g). Award Michiko Stehrenberger any other relief that the Court deems just and proper.

RESERVATION OF RIGHTS

Plaintiff Michiko Stehrenberger reserves the right to revise, supplement, or amend her

allegations, claims, defenses, and prayer for relief, including reserving all claims and defenses

permitted under the Federal Rules of Bankruptcy Procedure and Federal Rules of Civil

Procedure and relevant state laws, the Bankruptcy Code, and/or otherwise at law or in equity,

that may now exist or may in the future be available based on discovery and/or further

investigation in this case, and/or in any related case or consolidated adversary proceeding.

Respectfully submitted December 11, 2020, in Santa Rosa Valley, CA.

Michiko Stehrenberger, listed creditor
2500 Blanchard Road
Santa Rosa Valley, CA 93012
document.request@gmail.com
*email service required
(206) 229-4415