# Exhibit 1

---

U.S. COURTS

Rcv'd\_\_\_\_ Filed\_\_\_\_
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

The Order of the Court is stated below:
Dated: August 24, 2017    /s/ ROGER W GRIFFIN
       01:12:55 PM         District Court Judge

MARK WOODBURY, Utah Bar No. 14373
*Attorney for Plaintiff*
P.O. Box 671
American Fork, UT 84002
(801) 692-3606

IN THE FOURTH JUDICIAL DISTRICT COURT IN AND FOR
UTAH COUNTY, AMERICAN FORK, STATE OF UTAH

| | |
|---|---|
| OVERLAND ASSOCIATES, LLC; KEN HSIEH, MICHIKO STEHRENBERGER; and FRANCINE YEH, Plaintiffs, v. STAR MOUNTAIN ENTERPRISES, LLC; TAMIO STEHRENBERGER; ANNA STEHRENBERGER; TAANEN, LP; LANDMARK VENTURE CAPITAL, LLC; BRAY-CONN, INC.; BRAY-CONN COMMERCIAL PROPERTIES, LLC; BRAY-CONN RESOURCES, LLC; CARY ANTHONY VALERIO; CHADBORNE WILLIAM ALBURY; MARK BACA; and JOHN DOES 1-100, Defendants. | FINDINGS OF FACT AND CONCLUSIONS OF LAW UPON THE DEFAULT OF DEFENDANTS ANNA STEHRENBERGER, STAR MOUNTAIN ENTERPRISES, LLC, AND TAANEN, LP<br><br>Utah R. Civ. P. 54(c) and 55<br><br>Case No.: 160100092<br><br>Judge: The Honorable Roger W. Griffin |

This matter having come before the Court on Plaintiff Michiko Stehrenberger's *Motion for Default Judgment*, and the Court having ordered these three defendants Anna Stehrenberger, Star Mountain Enterprises, LLC, and Taanen, LP in default on May 1, 2017 (order of default

Case No. 160100092 – Findings of Fact/Conclusions of Law on May 1, 2017 Order of Default    Page 1 of 6

---

entered June 9, 2017 with effective date of May 1, 2017) and under Utah R. Civ. P. 54(c), a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings, the Court makes the following findings of fact and conclusions of law pertaining to defaulted Defendants Anna Stehrenberger, Star Mountain Enterprises, LLC, and Taanen, LP.

1. The portion of the pleadings pertaining to defaulted Defendants Anna Stehrenberger, Star Mountain Enterprises, LLC, and Taanen, LP (the portions of the *Answer* filed September 8, 2016 and *Amended Answer* filed September 28, 2016 relating to these defaulted Defendants) are hereby stricken and all allegations against each of them are hereby deemed admitted.

2. Consistent with the Plaintiff's allegations in her August 15, 2016 *Amended Complaint* at ¶ 282-287, the Holding Account Agreement and the promissory notes in this case meet the definition of "securities" under the Utah Securities Act, Utah Code Ann. § 61-1-1, *et seq.*, and are governed by the liability and damages formula provisions of the Securities Act, because they are "notes" under subpart (a) of § 61-1-13(ee)(i), and are "investment contracts" under subpart (k) of § § 61-1-13(ee)(i).

3. Consistent with the Plaintiffs' *Amended Complaint* at ¶ 70-72, 79-89, 96-97, 101, 109, 115-116, 134-137, 139-141, 143-152, 156-159, 167, 177-187, 189, 191-199, 205-207, 209-210, 217-218, 221-222, 224, 226 (only as to defaulted Defendants Anna, Star Mountain, and Taanen), 227(a)-(i), 227(k)-(l), 227(o), 243, 245-246, 247-252 (only as to defaulted Defendant Star Mountain), 254, 256-261 (only as to defaulted Defendants Anna and Star Mountain), 263, 265-268 (only as to defaulted Defendants Anna and Star

Case No. 160100092 – Findings of Fact/Conclusions of Law on May 1, 2017 Order of Default    Page 2 of 6

Mountain), 282-305 (only as to defaulted Defendants Anna and Star Mountain), and Plaintiff's Prayer for Relief in the *Amended Complaint*, at page 55, paragraph (c), the Court hereby declares that defendants Anna Stehrenberger and Star Mountain Enterprises, LLC (Utah entity number 6215366-0160) have violated the Utah Uniform Securities Act, Utah Code Ann. § 61-1-1, *et seq.*, including the Utah Securities Act's "anti-fraud" provision pertaining to Defendants Anna Stehrenberger and Star Mountain Enterprises, LLC's omission of material facts made in connection with the sale of the securities in this case, in the manner of failing to disclose the "high-risk" warnings of the Landmark Venture Capital, LLC investment offering in connection with the sale of the Star Mountain Enterprises-issued promissory notes accompanying *Plaintiffs' Amended Complaint as Exhibits 4-8*;

4. Consistent with the Plaintiffs' *Amended Complaint* at ¶ 206, 220, 324-329, 332-334 (only as to Defendant Taanen, LP) related to the Plaintiff's Twelfth Cause of Action under the Uniform Fraudulent Transfers Act in effect during the relevant time period Utah Code Ann. § 25-6-1, *et seq.*, the Court determines that Defendant Taanen, LP wrongfully received the transfer of assets otherwise under the control of the other defaulted Defendants, such that these assets were wrongfully conveyed to Taanen, LP beyond the reach of the creditors of these defaulted Defendants, including the Plaintiff as creditor, such that the wrongful transfer should be reversed;

5. Consistent with Plaintiffs' prayer for relief in the *Amended Complaint*, at page 55-56, paragraphs (b),(d), and (f), Plaintiff Michiko Stehrenberger is to be awarded Default

Case No. 160100092 – Findings of Fact/Conclusions of Law on May 1, 2017 Order of Default    Page 3 of 6

Judgment, of an amount to be determined separately, against defendants Anna Stehrenberger, Star Mountain Enterprises, LLC (Utah entity number 6215366-0160); and Taanen, LP (Utah entity numbers 8561982-0180, 6882723-0180, and 9505205-0180), as authorized under the statutory formula set forth in the Utah Uniform Securities Act, Utah Code Ann. § 61-1-22, of: [1] treble damages to be calculated upon the total amount paid upon the promissory note securities filed with Plaintiff's *Amended Complaint* as Exhibits 4-8; [2] plus pre-judgment interest accrued as of the calendar date of entry of judgment; [3] plus attorney fees and costs inclusive of those incurred in this case and in the related Provo District case, number 080402986, [4] minus reductions for amounts repaid on the securities–the accounting of such dollar amounts and damages to be determined in separate proceedings under Rule 55(b)(2);

6. Consistent with the allegations pled in Plaintiff's *Amended Complaint* at ¶ 55 and its accompanying *Exhibit 3*, the Utah Department of Commerce database's Registered Principal Search results, the Court concludes that Defendants Tamio Stehrenberger and Anna Stehrenberger are specifically identified by name as the two Managers of Star Mountain Enterprises, LLC during the time period relevant to this case;

7. Consistent with the allegations pled in Plaintiff's *Amended Complaint* at ¶ 281-301 and ¶ 305-305, under Utah Code Ann. § 61-1-22(4)(a), the two Managers of Star Mountain Enterprises, LLC, Defendants Tamio Stehrenberger and Anna Stehrenberger, are persons who are jointly and severally liable together with Defendant Star Mountain Enterprises, LLC, for the Utah Securities Act violations committed and the money owed;

Case No. 160100092 – Findings of Fact/Conclusions of Law on May 1, 2017 Order of Default    Page 4 of 6

8. Consistent with the *Amended Complaint* prayer for relief at page 55, paragraph (6), post-judgment interest on the total judgment shall accrue daily at the statutory rate of 12% per annum (1% per month) under Utah Code Ann. 61-1-22(e)(ii)(B), for which these three defaulted Defendants, along with their Managers of public record are likewise jointly and severally liable for the securities violations committed and for money owed under Utah Code Ann. § 61-1-22(4)(a), as pled in the *Amended Complaint* at ¶ 281-301 and ¶ 305-305;

9. The accounting of all such dollar amounts and damages, and the identity of any additional liable Managers and Partner(s) of the defaulted entity defendants Star Mountain Enterprises, LLC and Taanen, LP, are to be determined in separate proceedings under Rule 55(b)(2); and

10. Upon appropriate application to the Court, Plaintiff Michiko Stehrenberger shall be entitled to further damages, fee, costs and any other appropriate relief related to any appeal or enforcement and collection of this Judgment, as permitted by law or contract.

11. In accordance with Utah R. Civ. P. 54(b), the Court expressly determines that there is no just reason for delay in the entry of judgment, in that the Plaintiff's claims against those defaulted defendants (including the totality of claims against Star Mountain Enterprises on the five (5) Star Mountain-issued promissory notes on file with the court August 15, 2016 as *Plaintiff's Amended Complaint* as *Exhibits 4-8*) are claims separate and distinct from the remaining claims against the remaining defendants, and the prompt entry of judgment against these defaulted defendants therefore best serves the interest of justice

by allowing the Plaintiff to present her damages in supplemental proceedings under Utah R. Civ. P. 55(b)(2) and the Court to derive a final sum certain as to these separate claims, thereby allowing the separate claims against the remaining participating defendants to be separately adjudicated.

The signature of the court appears atop the first page of the document.

Case No. 160100092 – Findings of Fact/Conclusions of Law on May 1, 2017 Order of Default    Page 5 of 6

5 of 6

August 24, 2017 01:12 PM

Case No. 160100092 – Findings of Fact/Conclusions of Law on May 1, 2017 Order of Default    Page 6 of 6

6 of 6

August 24, 2017 01:12 PM

Steven C. Tycksen, #3300
TYCKSEN & SHATTUCK, L.C.
12401 South 450 East, Suite E-1
Draper, Utah 84020
Telephone: (801) 748-4081
Fax: (801) 748-4087

Attorneys for Plaintiff

**FILED**
THIRD DISTRICT COURT
JAN - 4 2011
WEST JORDAN DEPT.

IN THE THIRD JUDICIAL DISTRICT COURT IN AND FOR
SALT LAKE COUNTY, STATE OF UTAH, WEST JORDAN DEPARTMENT

| | |
|---|---|
| EAG INVESTMENTS, LLC, a Utah limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> TAMIO LUCIEN STEHRENBERGER, an individual, ELINOR HUTCHERSON, an individual, BRAY-CONN CAPITAL MANAGEMENT, LLC dba BRAY-CONN COMPANIES, <br><br> Defendants. | **JUDGMENT BY DEFAULT** <br><br> Case No. 100401172 <br> Judge Adkins |

In this action, the Defendant, Tamio Lucien Stehrenberger, having been regularly served with process pursuant to this Court's Order dated September 13, 2010, and having failed to appear and answer the Plaintiff's Amended Complaint filed herein, the legal time for answering having expired, and the default of the said Defendant in the premises having been duly entered

1

---

according to law, upon the application of said Plaintiff to the above-entitled Court, judgment is hereby entered against said Defendant, in pursuance of prayer of said Amended complaint.

WHEREFORE, by virtue of the law, and by reason of the premises aforesaid, it is ORDERED, ADJUDGED AND DECREED that Plaintiff, EAG INVESTMENTS, LLC is awarded judgment against Defendant, TAMIO LUCIEN STEHRENBERGER, as follows:

| | |
|---|---|
| Principal | $ 565,000.00 |
| Origination Fee | $ 56,500.00 |
| Interest at 14% thru 11/5/10 | $ 129,971.27 |
| Extension Fee | $ 4,680.99 |
| Late Charge | $ 37,447.91 |
| Service Charge | $ 31.00 |
| Costs of Court | $ 360.00 |
| Attorney Fees Pursuant to Contract | $ 3,717.00 |
| Less Payments | $ (249,300.00) |
| Total Judgment | $ 548,408.17 |

Together with post-judgment interest at the rate of 14% per annum from the date hereof until paid, plus post judgment accruing attorney fees and costs.

Judgment rendered this ___ day of _____, 2010.

BY THE COURT:

_____
DISTRICT COURT JUDGE

By: _____
    Deputy Clerk

STATE OF UTAH
COUNTY OF _____
I hereby certify that the documents to which this certificate is attached is a full, true and correct copy of the original on file and of record in my office.
WITNESS my hand and seal
this ___ day of _____, 20__
DISTRICT COURT CLERK

2

# Exhibit 2

PROMISSORY NOTE

___ day of December 2005

$ 55,500
Interest Rate: 18 % per annum.

**PROMISE TO PAY.**
Star Mountain Enterprises, LLC, a Utah Limited Liability Company with its principal place of business in Saratoga Springs, Utah (hereinafter "Borrower") promises to pay _____ of _____ ($) (hereinafter "Lender"), the principal amount of _____ ($) together with interest at the rate of _____ percent (__%) per annum on the unpaid principal balance from December __, 2005 until paid in full one year later unless removed.

**PAYMENT.**
Borrower will pay this loan annually, upon maturation of the investment, with principal and accrued interest. Borrower's final payment will be for all principal and interest, not yet paid. Interest will be calculated under this Note on a 365/365 basis, that is by applying the ratio of the actual days outstanding over a year of 365 days, times the annual interest rate, times the outstanding principal (balance, Monthly interest payments will be sent and postmarked no later than the 10th of every month. Borrower will pay Lender at the address shown below or such other place as Lender may designate in writing. Unless otherwise agreed, or required by applicable law, payments will be applied first to accrued interest and the remaining amount to principal. Monies do not accrue interest the first 30 days after deposit of funds.

**PREPAYMENT.** Lender agrees to loan the above-referenced funds to Borrower for a minimum term of one year. As a result, there will be no prepayment of the loan amount or interest due until maturity.

**LATE CHARGE.** Borrower's payment will be late if Lender does not receive it within 5 days of the due date. If the payment is late, Borrower will be charged a Late Fee of Fifty Dollars ($50).

**DEFAULT.** If Borrower does not pay this Note as agreed, or if Borrower breaches any other agreement with Lender, Borrower will be in default.

**LENDER'S RIGHTS.** Upon default, or if Lender in good faith deems itself unsecured, Lender may declare the entire unpaid principal balance and accrued interest immediately due after notice to the Borrower, and Borrower will then pay that amount. Upon default, or if this Note is not paid at maturity, Lender, at its option, may increase the interest rate on this Note 2.000 percentage points. The interest rate shall not exceed the maximum __ permitted by applicable law. Lender may also hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services. Borrower also will pay any court costs. If there is a lawsuit, Borrower and Lender agree to submit to the jurisdiction of the courts in Utah County, State of Utah. This Note shall be governed by and construed in accordance with the laws of the State of Utah.

**GENERAL PROVISIONS.** Lender may delay enforcing any of its rights or remedies under this Note without losing them. If there is any change in the terms of this Note, and unless otherwise expressly stated in writing, it is Lender's intention not to release any party who signs this Note, whether as maker, accommodation maker, or endorser. All such parties waive notice of any renewals, extensions, modifications, releases of collateral, and other actions taken by Lender.

Prior to signing this Note, Borrower and Lender read and Borrower and Lender understood all of the provisions of this Note. Borrower and Lender agree to the terms of the Note and Borrower and Lender acknowledge receipt of a completed copy of the Note.

BY: _____
LENDER

Lender Address: _____

BY: _____
Star Mountain Enterprises, LLC
BORROWER
By: _____
Title: _____

# PROMISSORY NOTE

25 DAY OF JANUARY, 2007

$100,000
INTEREST RATE: 24 % PER ANNUM.

**PROMISE TO PAY.**
STAR MOUNTAIN ENTERPRISES, LLC, A UTAH LIMITED LIABILITY COMPANY WITH ITS PRINCIPAL PLACE OF BUSINESS IN SARATOGA SPRINGS, UTAH (HEREINAFTER "BORROWER") PROMISES TO PAY FRANCINE YEH OF PROVO, UTAH (HEREINAFTER "LENDER"), THE PRINCIPAL AMOUNT OF ONE-HUNDRED THOUSAND DOLLARS ($100,000.00) TOGETHER WITH INTEREST AT THE RATE OF TWENTY-FOUR PERCENT (24%) PER ANNUM ON THE UNPAID PRINCIPAL BALANCE FROM FEBRUARY 25TH, 2007, UNTIL PAID IN FULL ONE YEAR LATER UNLESS RENEWED.

**PAYMENT.**
BORROWER WILL PAY THIS LOAN ANNUALLY, UPON MATURATION OF THE INVESTMENT, WITH PRINCIPAL AND ACCRUED INTEREST IN ITS ENTIRETY. BORROWER'S FINAL PAYMENT WILL BE FOR ALL PRINCIPAL AND INTEREST NOT YET PAID. INTEREST WILL BE CALCULATED UNDER THIS NOTE ON A 365/365 BASIS, THAT IS BY APPLYING THE RATIO OF THE ACTUAL DAYS OUTSTANDING OVER A YEAR OF 365 DAYS, TIMES THE ANNUAL INTEREST RATE, TIMES THE OUTSTANDING PRINCIPAL BALANCE. MONTHLY INTEREST PAYMENTS WILL BE SENT AND POSTMARKED NO LATER THAN THE 10TH OF EVERY MONTH. BORROWER WILL PAY LENDER AT THE ADDRESS SHOWN BELOW OR SUCH OTHER PLACE AS LENDER MAY DESIGNATE IN WRITING. UNLESS OTHERWISE AGREED, OR REQUIRED BY APPLICABLE LAW, PAYMENTS WILL BE APPLIED FIRST TO ACCRUED INTEREST AND THE REMAINING AMOUNT TO PRINCIPAL. MONIES DO NOT ACCRUE INTEREST THE FIRST CALENDAR MONTH AFTER DEPOSIT OF FUNDS.

**PREPAYMENT.**
LENDER AGREES TO LOAN THE ABOVE-REFERENCED FUNDS TO BORROWER FOR A MINIMUM TERM OF ONE YEAR. AS A RESULT, THERE WILL BE NO PREPAYMENT OF THE LOAN AMOUNT OR INTEREST DUE UNTIL MATURITY.

**LATE CHARGE.**
BORROWER'S PAYMENT WILL BE LATE IF LENDER DOES NOT RECEIVE IT WITHIN 5 DAYS OF THE DUE DATE. IF THE PAYMENT IS LATE, BORROWER WILL BE CHARGED A LATE FEE OF FIFTY DOLLARS ($50).

**DEFAULT.**
IF BORROWER DOES NOT PAY THIS NOTE AS AGREED, OR IF BORROWER BREACHES ANY OTHER AGREEMENT WITH LENDER, BORROWER WILL BE IN DEFAULT.

**LENDER'S RIGHTS.**
UPON DEFAULT, OR IF LENDER IN GOOD FAITH DEEMS ITSELF UNSECURED, LENDER MAY DECLARE THE ENTIRE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST IMMEDIATELY DUE, AFTER NOTICE TO THE BORROWER, AND BORROWER WILL THEN PAY THAT AMOUNT. UPON DEFAULT, OR IF THIS NOTE IS NOT PAID AT MATURITY, LENDER, AT ITS OPTION, MAY INCREASE THE INTEREST RATE ON THIS NOTE 2.000 PERCENTAGE POINTS. THE INTEREST RATE SHALL NOT EXCEED THE MAXIMUM RATE PERMITTED BY APPLICABLE LAW. LENDER MAY PAY SOMEONE ELSE TO HELP COLLECT THIS NOTE IF BORROWER DOES NOT PAY. BORROWER ALSO WILL PAY LENDER THAT AMOUNT. THIS INCLUDES, SUBJECT TO ANY LIMITS UNDER APPLICABLE LAW, LENDER'S ATTORNEYS' FEES AND LEGAL EXPENSES WHETHER OR NOT THERE IS A LAWSUIT, INCLUDING ATTORNEYS' AND LEGAL EXPENSES FOR BANKRUPTCY PROCEEDINGS (INCLUDING EFFORTS TO MODIFY OR VACATE ANY AUTOMATIC STAY OR INJUNCTION), APPEARANCES, AND ANY ANTICIPATED POST-JUDGMENT COLLECTION SERVICES. BORROWER ALSO WILL PAY ANY COURT COSTS. IF THERE IS A LAWSUIT, BORROWER AND LENDER AGREE TO SUBMIT TO THE JURISDICTION OF THE COURTS IN UTAH COUNTY, STATE OF UTAH. THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF UTAH.

**GENERAL PROVISIONS.**
LENDER MAY DELAY ENFORCING ANY OF ITS RIGHTS OR REMEDIES UNDER THIS NOTE WITHOUT LOSING THEM. IF THERE IS ANY CHARGE IN THE TERMS OF THIS NOTE, AND UNLESS OTHERWISE EXPRESSLY STATED IN WRITING, IT IS LENDER'S INTENTION NOT TO RELEASE ANY PARTY WHO SIGNS THIS NOTE, WHETHER AS MAKER, ACCOMMODATION MAKER, OR ENDORSER. ALL SUCH PARTIES WAIVE NOTICE OF ANY RENEWALS, EXTENSIONS, MODIFICATIONS, RELEASES OF COLLATERAL, AND OTHER ACTIONS TAKEN BY LENDER.

PRIOR TO SIGNING THIS NOTE, BORROWER AND LENDER READ AND UNDERSTOOD ALL OF THE PROVISIONS OF THIS NOTE. BORROWER AND LENDER AGREE TO THE TERMS OF THE NOTE AND BORROWER ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE NOTE.

SIGNED _____  STAR MOUNTAIN
LENDER                      ENTERPRISES, LLC
                            BORROWER

LENDER ADDRESS              BY: _____
_____         TITLE: _____
_____
_____

PROMISSORY NOTE

23RD DAY OF FEBRUARY, 2007

$ 5,000.00
INTEREST RATE: 18% PER ANNUM.

**PROMISE TO PAY.**
STAR MOUNTAIN ENTERPRISES, LLC, A UTAH LIMITED LIABILITY COMPANY WITH ITS PRINCIPAL PLACE OF BUSINESS IN SARATOGA SPRINGS, UTAH (HEREINAFTER "BORROWER") PROMISES TO PAY KEN HSICH OF _____, NE (HEREINAFTER "LENDER"), THE PRINCIPAL AMOUNT OF FIVE-THOUSAND DOLLARS ($5,000) TOGETHER WITH INTEREST AT THE RATE OF EIGHTEEN PERCENT (18%) PER ANNUM ON THE UNPAID PRINCIPAL BALANCE FROM MARCH 25, 2007, UNTIL PAID IN FULL ONE YEAR LATER UNLESS RENEWED.

**PAYMENT.**
BORROWER WILL PAY THIS LOAN ANNUALLY, UPON MATURATION OF THE INVESTMENT, WITH PRINCIPAL AND ACCRUED INTEREST IN ITS ENTIRETY. BORROWER'S FINAL PAYMENT WILL BE FOR ALL PRINCIPAL AND INTEREST NOT YET PAID. INTEREST WILL BE CALCULATED UNDER THIS NOTE ON A 365/365 BASIS, THAT IS BY APPLYING THE RATIO OF THE ACTUAL DAYS OUTSTANDING OVER A YEAR OF 365 DAYS, TIMES THE ANNUAL INTEREST RATE, TIMES THE OUTSTANDING PRINCIPAL BALANCE. MONTHLY INTEREST PAYMENTS WILL BE SENT AND POSTMARKED NO LATER THAN THE 10TH OF EVERY MONTH. BORROWER WILL PAY LENDER AT THE ADDRESS SHOWN BELOW OR SUCH OTHER PLACE AS LENDER MAY DESIGNATE IN WRITING. UNLESS OTHERWISE AGREED, OR REQUIRED BY APPLICABLE LAW, PAYMENTS WILL BE APPLIED FIRST TO ACCRUED INTEREST AND THE REMAINING AMOUNT TO PRINCIPAL. MONIES DO NOT ACCRUE INTEREST THE FIRST CALENDAR MONTH AFTER DEPOSIT OF FUNDS.

**PREPAYMENT.**
LENDER AGREES TO LOAN THE ABOVE-REFERENCED FUNDS TO BORROWER FOR A MINIMUM TERM OF ONE YEAR. AS A RESULT, THERE WILL BE NO PREPAYMENT OF THE LOAN AMOUNT OR INTEREST DUE UNTIL MATURITY.

**LATE CHARGE.**
BORROWER'S PAYMENT WILL BE LATE IF LENDER DOES NOT RECEIVE IT WITHIN 5 DAYS OF THE DUE DATE. IF THE PAYMENT IS LATE, BORROWER WILL BE CHARGED A LATE FEE OF FIFTY DOLLARS ($50).

**DEFAULT.**
IF BORROWER DOES NOT PAY THIS NOTE AS AGREED, OR IF BORROWER BREACHES ANY OTHER AGREEMENT WITH LENDER, BORROWER WILL BE IN DEFAULT.

**LENDER'S RIGHTS.**
UPON DEFAULT, OR IF LENDER IN GOOD FAITH DEEMS ITSELF UNSECURED, LENDER MAY DECLARE THE ENTIRE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST IMMEDIATELY DUE, AFTER NOTICE TO THE BORROWER, AND BORROWER WILL THEN PAY THAT AMOUNT. UPON DEFAULT, OR IF THIS NOTE IS NOT PAID AT MATURITY, LENDER, AT ITS OPTION, MAY INCREASE THE INTEREST RATE ON THIS NOTE 2.000 PERCENTAGE POINTS. THE INTEREST RATE SHALL NOT EXCEED THE MAXIMUM RATE PERMITTED BY APPLICABLE LAW. LENDER MAY PAY SOMEONE ELSE TO HELP COLLECT THIS NOTE IF BORROWER DOES NOT PAY. BORROWER ALSO WILL PAY LENDER THAT AMOUNT. THIS INCLUDES, SUBJECT TO ANY LIMITS UNDER APPLICABLE LAW, LENDER'S ATTORNEYS' FEES AND LEGAL EXPENSES WHETHER OR NOT THERE IS A LAWSUIT, INCLUDING ATTORNEYS AND LEGAL EXPENSES FOR BANKRUPTCY PROCEEDINGS (INCLUDING EFFORTS TO MODIFY OR VACATE ANY AUTOMATIC STAY OR INJUNCTION), APPEARANCES, AND ANY ANTICIPATED POST-JUDGMENT COLLECTION SERVICES. BORROWER ALSO WILL PAY ANY COURT COSTS, IF THERE IS A LAWSUIT, BORROWER AND LENDER AGREE TO SUBMIT TO THE JURISDICTION OF THE COURTS IN UTAH COUNTY, STATE OF UTAH. THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF UTAH.

**GENERAL PROVISIONS.**
LENDER MAY DELAY ENFORCING ANY OF ITS RIGHTS OR REMEDIES UNDER THIS NOTE WITHOUT LOSING THEM. IF THERE IS ANY CHARGE IN THE TERMS OF THIS NOTE, AND UNLESS OTHERWISE EXPRESSLY STATED IN WRITING, IT IS LENDER'S INTENTION NOT TO RELEASE ANY PARTY WHO SIGNS THIS NOTE, WHETHER AS MAKER, ACCOMMODATION MAKER, OR ENDORSER. ALL SUCH PARTIES WAIVE NOTICE OF ANY RENEWALS, EXTENSIONS, MODIFICATIONS, RELEASES OF COLLATERAL AND OTHER ACTIONS TAKEN BY LENDER.

PRIOR TO SIGNING THIS NOTE, BORROWER AND LENDER READ AND BORROWER AND LENDER UNDERSTOOD ALL OF THE PROVISIONS OF THIS NOTE. BORROWER AND LENDER AGREE TO THE TERMS OF THE NOTE AND BORROWER AND LENDER ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE NOTE.

_____
LENDER

STAR MOUNTAIN
ENTERPRISES, LLC
BORROWER

BY: _____
TITLE: PRESIDENT

LENDER ADDRESS: [Contact Information Redacted]

PROMISSORY NOTE:

23rd day of April, 2007

$85,000.00
Interest Rate: 24% per annum.

PROMISE TO PAY.
Star Mountain Enterprises, LLC, a Utah Limited Liability Company with its principal place of business in Saratoga Springs, Utah (hereinafter "Borrower") promises to pay MICHIKO STEHRENBERGER of BIMBIONIC INDUSTRIES (AND/OR ASSIGNS), of Seattle, Washington (hereafter "Lender"), the principal amount of US$85,000 ($) together with interest at the rate of TWENTY-FOUR Percent (24%) per annum, or TWO PERCENT (2%) MONTHLY on the unpaid principal balance from JUNE 1, 2007, until paid in full one year later, unless renewed.

PAYMENT.
Borrower will pay this loan annually, upon maturation of the investment, with principal and accrued interest in its entirety. Borrower's final payment will be for all principal and interest not yet paid. Interest will be calculated under this Note on a 365/365 basis, that is by applying the ration of the actual days outstanding over a year of 365 days, times the annual interest rate, times the outstanding principal balance. Monthly interest payments will be sent and postmarked no later than the 10th of every month. Borrower will pay Lender at the address shown below or such other place as Lender may designate in writing. Unless otherwise agreed, or required by applicable law, payments will be applied first to accrued interest and the remaining amount to principal. Monies do not accrue interest the first Calendar Month after deposit of funds.

PREPAYMENT.
Lender agrees to loan the above-referenced funds to Borrower for a minimum term of one year. As a result, there will be no prepayment of the loan amount [selected: or interest due] until maturity.

LATE CHARGE.
Borrower's payment will be late if Lender does not receive it within 5 days of the [monthly interest] due date. If the payment is late, Borrower will be charged a Late Fee of Fifty Dollars ($50).

DEFAULT.
If Borrower does not pay this Note as agreed, or if Borrower breaches any other agreement with Lender, Borrower will be in default.

LENDER'S RIGHTS.
Upon default, or if Lender in good faith deems itself unsecured, Lender may declare the entire unpaid principal balance and accrued interest immediately due, after notice to the Borrower, and Borrower will then pay that amount. Upon default, or if this Note is not paid at maturity, Lender, at its option, may increase the interest rate on this Note 2.000 percentage points. The interest rate shall not exceed the maximum rate permitted by applicable law. Lender may pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appearances, and any anticipated post-judgment collection services. Borrower also will pay any court costs. If there is a lawsuit, Borrower and Lender agree to submit to the jurisdiction of the courts in Utah County, State of Utah. This Note shall be governed by and construed in accordance with the laws of the State of Utah.

GENERAL PROVISIONS.
Lender may delay enforcing any of its rights or remedies under this Note without losing them. If there is any change in the terms of this Note, and unless otherwise expressly stated in writing, it is Lender's intention not to release any party who signs this Note, whether as maker, accommodation maker, or endorser. All such parties waive notice of any renewals, extensions, modifications, releases of collateral, and other actions taken by Lender.

Prior to signing this Note, Borrower and Lender read and Borrower and Lender understood all of the provisions of this Note. Borrower and Lender agree to the terms of the Note and Borrower and Lender acknowledge receipt of a completed copy of the Note.

Date: _____

Signed: _____
Borrower, Star Mountain Enterprises, LLC

Michiko Stehrenberger
and/or assigns
Lender

Lender Address: [Contact Information Redacted]

BORROWER
By: _____
Title: _____

PROMISSORY NOTE

23rd day of April, 2007

$35,000.00
Interest Rate: 24% per annum.

PROMISE TO PAY.
Star Mountain Enterprises, LLC, a Utah Limited Liability Company with its principal place of business in Saratoga Springs, Utah (hereinafter "Borrower") promises to pay MICHIKO STEHRENBERGER of BIMSIONIC INDUSTRIES (AND/OR ASSIGNS), of Seattle, Washington (hereinafter "Lender"), the principal amount of US$35,000 ($) together with interest at the rate of TWENTY-FOUR Percent (24%) per annum, or TWO PERCENT (2%) MONTHLY on the unpaid principal balance from JUNE 1, 2007, until paid in full one year later, unless renewed.

PAYMENT.
Borrower will pay this loan annually, upon maturation of the installment, with principal and accrued interest in its entirety. Borrower's final payment will be for all principal and interest not yet paid. Interest will be calculated under this Note on a 365/365 basis, that is by applying the ration of the annual interest rate, times the outstanding principal balance, times the actual days outstanding over a year of 365 days. Monthly interest payments will be sent and postmarked no later than the 10th of every month. Borrower will pay Lender at the address shown below or such other place as Lender may designate in writing. Unless otherwise agreed, or required by applicable law, payments will be applied first to accrued interest and then the remaining amount to principal. Monies do not accrue interest the first Calendar Month after deposit of funds.

PREPAYMENT.
Lender agrees to loan the above-referenced funds to Borrower for a minimum term of one year. As a result, there will be no prepayment of the loan amount [deleted: or interest due] until maturity.

LATE CHARGE.
Borrower's payment will be late if Lender does not receive it within 5 days of the [monthly interest] due date. If the payment is late, Borrower will be charged a Late Fee of Fifty Dollars ($50).

DEFAULT.
If Borrower does not pay this Note as agreed, or if Borrower breaches any other agreement with Lender, Borrower will be in default.

LENDER'S RIGHTS.
Upon default, or if Lender in good faith deems itself unsecured, Lender may declare the entire unpaid principal balance and accrued interest immediately due, after notice to the Borrower, and Borrower will then pay that amount. Upon default, or if this Note is not paid at maturity, Lender, at its option, may increase the interest rate on this Note 2.000 percentage points. The interest rate shall not exceed the maximum rate permitted by applicable law. Lender may pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appearances, and any anticipated post-judgment collection services. Borrower also will repay court costs. If there is a lawsuit, Borrower and Lender agree to submit to the jurisdiction of the courts in Utah County, State of Utah. This Note shall be governed by and construed in accordance with the laws of the State of Utah.

GENERAL PROVISIONS.
Lender may delay enforcing any of its rights or remedies under this Note without losing them. If there is any change in the terms of this Note, and unless otherwise expressly stated in writing, it is Lender's intention not to release any party who signs this Note, whether as maker, accommodation maker, or endorser. All such parties waive notice of any renewals, extensions, modifications, releases of collateral, and other actions taken by Lender.

Prior to signing this Note, Borrower and Lender read and Borrower and Lender understood all of the provisions of this Note. Borrower and Lender agree to the terms of the Note and Borrower and Lender acknowledge receipt of a completed copy of the Note.

Date: _____

Signed: _____
Lender

Michiko Stehrenberger
and/or assigns

Lender Address

[Contact Information Redacted]

Borrower, Star Mountain Enterprises, LLC

BORROWER

By: JAMIE _REDACTED_
Title: PRES_____

# TRUST DEED PROMISSORY NOTE

County of Salt Lake, State of Utah

Date: May 15, 2008

## 1. PHYSICAL ADDRESS AND LEGAL DESCRIPTION:

Primary Collateral:

Irrevocable Letter of Assignment and Disbursement to Bmy-Conn Investments, LLC regarding Star Mountain Enterprises, LLC Account No. 10052.

Secondary Collateral:

Lot 25, DRAPER HEIGHTS, according to the official plat thereof on file and of record in the Salt Lake County Recorder's Office.

Together with that portion of vacated street abutting said Lot.

Tax ID # 34-07-429-005

## 2. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $72,200.00 (this amount is called "principal"), plus interest, to the order of the EAG Investments, LLC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 3. INTEREST AND OTHER FEES

Interest will be charged on the unpaid balance of this Note until the full amount due has been paid. If the Note is not paid by June 20, 2008. I will pay interest at a yearly rate of 14.00%. If the note is paid upon the "Maturity Date" no interest will be due. The daily interest will be calculated using a 365-day year. A 14% origination fee has been paid at closing.

## 4. PAYMENTS - Time and Place

I will make a payment of $200,000.00 within 7 business days from the date of this Note. The remaining balance shall be paid in full by June 18, 2008 which is called the "Maturity Date". All payments will be applied to interest before principal.

I will make my payment at Mr. H. Rosen, Manager; EAG Investments, LLC; 5911 South Fashion Blvd., #200; Salt Lake City, Utah 84107, or at a different place if required by the Note Holder.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in this promissory note unless the Note Holder agrees in writing to those changes.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any

Borrower's Initials TS    Date 5/15/08

1

---

such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal balance owed under this Note or by making a direct payment to me. If a refund reduces principal, the reduction shall be treated as a partial prepayment

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of principal and interest by the maturity date, I will pay a late charge to the Note Holder in the amount of $1,000.00, or 10.00% of the balance owing, whichever is greater.

(B) Default
If I do not pay the full amount owing under this Note on or before the Maturity Date, I will be in default. My default interest rate will then be 34.00%; in addition to any late charges other charges to collect on the Note.

(C) Extension
The Note Holder agrees to extend the all terms and conditions of the Note for an additional period of 30 days. I agree to pay a fee of 1.25% of the total of the principal and unpaid interest as consideration for this extension.

(D) Notice of Default
Late charges and default interest rates will immediately begin to accrue regardless whether or not the Note Holder has sent me a written notice telling me that I am in default.

(E) Payment of Note Holder's Costs and Expenses
If I am in Default, the Note Holder will have the right to be reimbursed by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by law. These expenses include, for example, reasonable attorney's fees. There will also be a $100.00 check fee for any check returned and not paid by the bank.

## 3. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at (Borrower's Address) 441 W. 12300 S., Ste Alco, Draper, UT 84020.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 4 above, or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations, including the obligations of this Note is also obligated to do these things. Any person, who takes over all of the promises made in this Note, is also obligated to keep all of the promises made in this Note of a guarantor, surety or endorser of this Note.

The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. INSURANCE

I agree to keep in force during the duration of this loan, standard fire insurance. This minimum insurance coverage will be the amount of this loan. I will provide to the Note Holder with a certificate of insurance from the insurer, showing the Note Holder as "additionally insured". Should I fail to provide this certificate of insurance to the Note Holder at the time I sign this Note, I authorize the Note Holder to obtain this insurance for me. I agree to pay all costs, fees and insurance premium associated with obtaining this insurance; and a fee to the Note Holder of $500.00 for obtaining the insurance coverage.

Borrower's Initials TS    Date 5/15/08

2

11. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payments of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid. In the event of legal action taken by the undersigned, I hereby waive my right to a trial by jury.

12. **SECURED OBLIGATION**

A Trust Deed on real property described in Section 1 secures this Note. The protections given to the Note Holder under the Deed of Trust (the "Security Instrument"), dated May 15, 2008, the same date as this Note, protects the Note Holder from possible losses if I do not keep the promises that I make in this Note.

13. **PURPOSE OF LOAN.** I certify that the purpose of this loan is for business and/or investment purposes only and is not a "residential mortgage loan" as defined by Utah statute, Title 61 Chapter 2c.

14. **MODIFICATIONS.** This Note may not be modified, altered, amended, extended or changed without the express written agreement of the Note Holder and the undersigned.

This note is secured by a Trust Deed of even date herewith

Dated 5/15/08

_____
Tamio Lucien Steinetberger

Acknowledged by:

_____
Philip A. Harvey

*Philip A. Harvey acknowledges the terms of this Note and understands a Trust Deed will also be recorded against his property located at 11276 South Pervenche Lane, South Jordan, Utah 84095 to help secure the Note. Philip A. Harvey understands the effects this Trust Deed and Note will have in respect to his property.

Approved by:
EAG investments, LLC

By: _____
Its: Manager

Date 5/15/08

3

Borrower's Initials ___

# Exhibit 3

JUSTIN D. HEIDEMAN (USB #8897)
HEIDEMAN & ASSOCIATES
2696 North University Ave., Suite 180
Provo, Utah 84604
Telephone: (801) 472-7742
Fax: (801) 374-1724
Email: jheideman@hcidlaw.com
*Attorney for Plaintiffs*

IN THE FOURTH JUDICIAL DISTRICT COURT IN AND FOR
UTAH COUNTY, AMERICAN FORK, STATE OF UTAH

| | |
|---|---|
| OVERLAND ASSOCIATES, LLC, a Wyoming limited liability company; KEN HSIEH, an individual; MICHIKO STEHRENBERGER, an individual; and FRANCINE YEH, an individual;<br><br>*Plaintiffs*,<br><br>vs.<br><br>STAR MOUNTAIN ENTERPRISES, LLC, a Utah limited liability company; TAMIO STEHRENBERGER, an individual; ANNA STEHRENBERGER, an individual; TAANEN, LP, a Utah limited partnership; CARY ANTHONY VALERIO, an individual; CHADBORNE WILLIAM ALBURY, an individual; MARK BACA, an individual; BRAY-CONN, INC., a Nevada corporation; BRAY-CONN COMMERCIAL PROPERTIES, LLC, a Utah limited liability company; BRAY-CONN RESOURCES, LLC, a Utah limited liability company; LANDMARK VENTURE CAPITAL, LLC, a Utah limited liability company; and JOHN DOES 1-100;<br><br>*Defendants.* | AMENDED COMPLAINT<br><br>Case No.: 160100092<br><br>Judge: Christine Johnson |

12. Tamio told Michiko that the investment he was offering her was "safe" and "guaranteed."

13. Tamio indicated that he would be "pooling" the funds of several different investors and family members as a means of raising the minimum amount of money to allow him to gain access to this private investment through this private investor network.

14. Tamio emphasized to Michiko that in order to meet the minimum dollar amount to allow him to gain access to this private investor network, that Michiko would need to invest a substantial portion of her life savings.

15. Tamio did not disclose to Michiko that the State of Utah requires Tamio to have a securities license to be able to lawfully "pool" the funds of multiple investors.

16. Tamio specifically instructed Michiko not to put his access to the private investment network at risk by "asking too many questions" or by associating with the people involved in his private investment network without Tamio's permission.

17. Michiko relied upon Tamio's representations regarding the low-risk nature of the investment when she invested the $65,000.00 with Tamio under the terms of the Holding Account Agreement.

18. To further gain Michiko's trust, Tamio emphasized to Michiko that Tamio would not receive any compensation, bonus, percentage sharing, profit participation, or other form of remuneration for himself related to Michiko's investment.

19. Further, Tamio indicated that Michiko would receive all of the money Tamio received from the exclusive, private network as far as that money related to her investment.

20. Michiko trusted Tamio.

6

42. Francine earns very little money, is not an accredited investor, and had no liquid funds to invest with Tamio.

43. Tamio persuaded Francine to take out a home equity line of credit, using the equity Francine had built up in her home.

44. Tamio personally accompanied Francine to her local bank, and supervised while Francine applied for the $150,000.00 line of credit.

45. Tamio did not tell Francine that Tamio would be placing Francine's money in an investment that was out of Tamio's direct control.

46. Tamio did not explain to Francine that this home equity line of credit could result in a foreclosure against Francine's home if Tamio failed to pay Francine as agreed.

47. In August of 2005, Tamio sold Francine a promissory note security valued at not less than $50,000.00. *Exhibit 2*.

48. This note represented one-third of the amount available under the home equity line of credit Tamio had persuaded Francine to obtain.

49. Tamio did not provide Francine with any written risk disclosures prior to her purchase of the promissory note.

50. The note issued by Tamio to Francine states: "These funds will be guaranteed with the personal assets of Tamio Stehrenberger." *Ex. 2* at ¶ 1.

51. On or about May 15, 2006, Tamio and Anna formed Star Mountain Enterprises, LLC ("Star Mountain").

52. Star Mountain Enterprises ("SME") failed to maintain any corporate or company formalities.

53. Specifically, SME failed to issue timely renewal.

54. SME expired as a registered limited liability company on September 7, 2010.

55. According to the Utah Department of Commerce's Registered Principal Search, *Exhibit 3*, Tamio and Anna are identified as SME's only managing members.

56. According to SME's Articles of Organization, SME is involved in business transactions involving securities, as follows:

> The business ... purposes for which the Company is organized are ... to invest and reinvest the assets of the Company in, and to purchase or otherwise buy, acquire, hold, sell, transfer, exchange, invest in, manage, finance, exchange or otherwise dispose of, or realize upon, stocks, bonds, mutual funds, partnership interests, certificates of deposit, commodities, and any other interests in business ventures and other securities and investments of all types and descriptions ... (emphasis added).

57. During the entirety of SME's existence, SME did not maintain contemporaneous Meeting Minutes related to SME's intended business activities.

58. During the entirety of SME's existence, SME did not keep money in SME's financial account(s) for the purpose of performing any business operations separate from:

  (1) Receiving money from investors and Tamio, Anna, and/or their entities;

  (2) Paying money to Defendants Landmark and/or the Bray-Conn entities; and

  (3) Paying money to Star Mountain's investors, Tamio, Anna, and/or their entities.

59. During the entirety of SME's existence, SME did not have insurance related to SME's

9

10

business activities.

60. Certificates obtained from the Utah Division of Securities Custodian of Records indicate that Defendants SME, Tamio, and Anna, have "never been licensed as a broker-dealer, agent, or investment adviser, investment adviser representative in Utah."

61. At some point, Tamio indicated to Michiko that he had been receiving important additional investment training, and gaining additional experience in investing through an investing mentor named Les McGuire.

62. Specifically, Tamio emailed Michiko asking for her permission to authorize Tamio to remove Michiko's investment from Koerber's Founders Capital and place the investment funds into Les McGuire's company, "McGuire Funds."

63. Tamio indicated to Michiko that the "McGuire Funds" investment was also "safe."

64. Tamio "guaranteed" and that the McGuire Funds investment was "backed the same way" with collateral and personal guarantees similar to the Founders Capital investment.

65. Michiko, relying upon Tamio's superior training and knowledge, authorized Tamio to switch Michiko's investment from Founders Capital into "McGuire Funds."

66. In August of 2006, Defendants Tamio, Anna, and/or SME breached their known obligation and contractual agreement by failing to seek Michiko's written permission prior to switching her money into another investment.

67. Tamio, Anna, and/or SME considered investing in an investment offered by Defendant Landmark Venture Capital, LLC ("Landmark").

68. The Landmark investment is managed by Defendants Cary Valerio, Chadborne Albury,

11

and Mark Baca.

69. Defendants Valerio, Albury, and Baca were the three Managing Members of both Defendant Landmark Venture Capital, LLC, and Defendant Bray-Conn, Inc.

70. Upon information and belief, in 2006 Tamio, Anna, and/or SME received written risk disclosures from Defendant Landmark related to a new investment offering from Landmark and/or the Bray-Conn entities.

71. In these disclosures, Landmark identifies itself as "high-risk."

72. Further, Landmark's disclosures indicate a risk of total loss to its investors' money.

73. Upon information and belief, the Landmark investment existed for the following purposes: (1) raising investor money to purchase promissory note securities form Valerio's, Albury's, and Baca's other entity, Bray-Conn, Inc., and (2) to provide the Bray-Conn entities and Valerio, Albury, and Baca with access to new investors' money.

74. Upon information and belief, Valerio, Albury, and/or Baca met with new investors, on behalf of Landmark, for the purposes of selling Landmark promissory note securities to investors.

75. Upon information and belief, Valerio, Albury, and/or Baca, on behalf of Landmark, "pooled" the money received from Landmark's investors to purchase the promissory note securities from Bray-Conn, Inc.

76. Upon information and belief, Valerio, Albury, and/or Baca, on behalf of Bray-Conn, Inc., also "pooled" the money received from Bray-Conn Inc.'s investors to purchase promissory note securities from other individuals and entities.

12

5, incorporated herein by reference.

113. Ken's promissory note does not reflect all of the money that Ken invested with Tamio.

114. Ken deposited additional money until the total amount received by Tamio and Anna into the SME account was not less than $17,000.00.

115. At no time did Tamio, Anna, or Star Mountain disclose to Ken that they would be placing Ken's money into the "high-risk" Landmark investment.

116. At all times Defendants Tamio, Anna and SME represented to Plaintiff Ken that his investment was "safe" and "guaranteed".

117. Tamio also affirmed to Ken that Tamio expected to pay Tamio's mother 1% each month based upon the total amount of money raised from Ken for this investment, in addition to the monthly interest rate Tamio would pay to Ken on the promissory note security.

118. In or about early 2007, Francine's bank mailed to her home mailbox in Provo, Utah, a home equity line of credit advance, in the form of a check for US $100,000.00.

119. Francine had traveled to California to visit with family and was away at the time the $100,000.00 bank check arrived at her home mailbox in Provo.

120. Francine had previously authorized her daughter to collect her mail from her home mailbox while Francine was in California.

121. Francine had not authorized any other person to remove any mail from Francine's mailbox.

122. Upon information and belief, while Francine was in California, Tamio, or someone acting on Tamio's behalf, removed the $100,000.00 check from Francine's mailbox without her

17

---

into Landmark's "high-risk" investment.

86. In August of 2006, Tamio, Anna, and/or SME moved Michiko's $65,000.00 investment out of "McGuire Funds" and into the "high-risk" investment offered by Landmark.

87. Tamio, Anna, and/or SME did not tell Michiko they were switching her $65,000.00 into a "high-risk" investment offered by Landmark.

88. Tamio, Anna, and/or Star Mountain also failed to inform Plaintiffs of Landmark's written risk disclosures.

89. Upon information and belief, Tamio, Anna, and/or Star Mountain, either directly or indirectly, were to receive each month from the Landmark "high-risk" investment, a percentage dollar amount based upon the total dollar principal amount of the promissory note purchased with investment money obtained from Michiko, Francine, and others.

90. Upon information and belief, because the Landmark investment was considered "high-risk," with substantial risk of total loss to the investors' money, Landmark offered a higher interest rate.

91. The rate of interest offered by Landmark was 72% per year. ~~denied~~

92. Upon information and belief, under the terms of the promissory note securities the Landmark/Bray-Conn entities sold to Tamio, Anna, and/or SME, the Landmark/Bray-Conn entities were obligated to pay 6% monthly "interest" payments to the purchasers of its securities.

93. Upon information and belief, Tamio, Anna, and/or SME contracted to receive from Defendant Landmark the rate of 72% interest per year (6% per month) based specifically

14

220. Upon information and belief, Tsunen, LP received the $50,000.00 that was the actual repayment of assets intended to ensure Tamio's ability to "guarantee" repayment to his investors, which Tamio and Anna attempted to shield from their creditors, including Plaintiffs.

221. Between 2008 and 2015, Tamio and Anna formed, or purchased, multiple other Utah and Nevada entities, including but not limited to: (1) Luxe Automotive Group, Inc.; (2) Tsunen, LP; (3) a family trust held under Anna Stehrenberger's individual name; (4) On The Curb, LLC; (5) Matchtrade, Inc.; (6) Bassline Productions, Inc.; (7) Pavilion Energy Resources, Inc.; and (8) Reve Technologies, Inc.

222. To date, Neither Tamio, Anna, nor SME have repaid to the Plaintiffs the investment money they received from Plaintiffs, or any interest, costs, or fees to which each of the Plaintiffs may be entitled based upon the terms thereon.

223. Defendant Tamio asserted by sworn and notarized affidavit dated December 22, 2014, as filed with the court December 29, 2014 in related case number 0804029986.

   Affidavit at ¶ 6-8, that:
   > I admit that Defendant, Star Mountain Enterprises, LLC, could be liable to Plaintiff [Michiko] …. We [Tamio and Anna] have never maintained that Plaintiff may not have a cause of action against Star Mountain Enterprises.

224. Upon information and belief, there is such a unity of interest and ownership between Tamio, Anna, Star Mountain, that they are each alter egos, agents, or ultra vires of one another.

---

197. The terms of Michiko's two promissory notes with SME allowed Michiko to make demand of immediate payment, in the event Michiko deemed her investment not properly secured.

198. Accordingly, Michiko demanded that Tamio and Anna repay all principal and accrued interest to her no later than by March 14, 2008.

199. Tamio and/or Anna did not repay the $100,000.00 to Michiko on the specified March 14, 2008 due date, again refusing repay Michiko's $100,000.00 until the June 1, 2008, due date on the promissory notes.

200. In May of 2008, Tamio wrote to Michiko asking if she would allow them to repay her $100,000.00 later than the June 1, 2008 maturity date, offering instead to make final repayment of all of Michiko's money between June 18 and 20, 2008.

201. Tamio indicated the repayments would be made to Michiko from a new equity line of credit.

202. Michiko relied upon Tamio's representations that the money would be repaid in full from a new equity line of credit, and did not commence litigation to recover her investment, believing there were funds available to make the repayment.

203. In June of 2008, Tamio, Anna, and SME ceased making any further payments to all Plaintiffs.

204. A short time later, in August of 2008, Tamio and Anna visited with Francine's son and daughter-in-law, Hao-Yth and Jennifer Hsieh, and asked them if they knew how to hide assets.

28

31

286. Plaintiffs' promissory notes qualify as a "note" under subpart (a) of § 61-1-13(ee)(i).

287. Defendants Tamio's, Anna's, and/or Star Mountain's promissory notes entered into with the Landmark and/or Bray-Conn entities qualify as a "note" under subpart (a) of § 61-1-13(ee)(i).

288. Utah Code Ann. § 61-1-1 provides that:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly to:
>
> (1) Employ any device, scheme, or artifice to defraud;
> (2) Make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
> (3) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

299. In connection with the offer and sale of securities to Plaintiffs, Defendants Star Mountain, Tamio, and Anna directly and indirectly failed to disclose material information, including but not limited to the following material information that was necessary in order to make the statements made (concerning the investment), in light of the circumstances under which they were made, not misleading:

> (a) Risk factors;
>
> (b) Whether Defendants were licensed to sell securities;
>
> (c) Suitability factors for the investment;
>
> (d) The number of investors;
>
> (e) How the investment funds were to be utilized;
>
> (f) Management details;

45

247. But for Plaintiffs investing their money with Star Mountain, Star Mountain would not have purchased the Landmark promissory note securities, through Landmark's agents Mr. Valerio, Mr. Albury and Mr. Baca, and Mr. Albury, Mr. Baca, Landmark, Bray-Conn, Inc., and/or the Bray-Conn entities would not have received the interest received the "interest-rate differential" or "profit participation" remuneration based upon a percentage of the money invested by each Plaintiff.

248. None of the Defendants would have received the "interest-rate differential" or "profit participation" remuneration if not for their sale of the promissory notes to the Plaintiffs.

249. According to the records of the Utah Division of Securities, Defendants Tamio, Anna, Star Mountain, Cary Valerio, Chadborne Albury, Mark Baca have never been licensed with the Utah Division of Securities to be able to sell promissory note securities.

250. Under Utah Code Ann. § 61-1-3 (1): "It is unlawful for a person to transact business in this state as a[n] . . . agent unless the person is licensed under this chapter."

251. Accordingly, Defendants violated Utah Code Ann. § 61-1-3(1).

252. Due to Defendants' violations of Utah Code Ann. § 61-1-3(1) and (2), Plaintiffs have been damaged in the aforementioned amounts and are entitled to recover all costs, attorney's fees, penalties, fines, interest, and statutory damages as afforded by Utah law, including treble damages under Utah Code Ann. § 61-1-22.

38

penalties, fines, and statutory damages afforded by Utah law, including treble damages under Utah Code Ann. § 61-1-22 because Defendants misrepresentations and conduct were reckless or intentional.

304. Utah Code Ann. § 61-1-22(4)(a) provides:

> Every person who directly or indirectly controls a seller or buyer liable under Subsection (1), every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions, every employee of such a seller or buyer who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase are also liable jointly and severally with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that the nonseller or nonpurchaser did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

305. Accordingly, Defendants are jointly and severally liable for all costs, attorney's fees, penalties, fines, and statutory damages afforded by Utah law, including treble damages afforded to Plaintiff under Utah Code Ann. § 61-1-22.

## NINTH CAUSE OF ACTION
### *Civil Conspiracy*
(Against All Defendants)

306. Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein.

307. A claim of civil conspiracy consists of: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.

308. In connection with the events described above whereby Plaintiffs were damaged, Defendants acted as an association of two or more persons with an objective to perform an unlawful act.

48



# Utah Department of Commerce
## Registered Principal Search

*Help*

Search all of Utah.gov »

Search results for "stehrenberger"

| Name | Address | Name of Entity | Entity Type | Position | |
|---|---|---|---|---|---|
| ANNA STEHRENBERGER | 1571 S PARKWAY CT SARATOGA SPRINGS UT 84043 | LUXE AUTOMOTIVE GROUP, INC. | Corporation | Officer | Details |
| ANNA STEHRENBERGER | 1571 S PARKWAY COURT Saratoga Springs UT 84043 | STAR MOUNTAIN ENTERPRISES, LLC | Limited Liability Company | Manager | Details |
| ANNA C STEHRENBERGER | 1571 PARKWAY CT Saratoga Springs UT 84045 | STEHRENBERGER HEIGHTS, LLC | Limited Liability Company | Manager | Details |
| TAMIO STEHRENBERGER | 1571 S PARKWAY CT Saratoga UT 84045 | STAR MOUNTAIN GROUP, LLC | Limited Liability Company | Registered Agent | Details |
| TAMIO STEHRENBERGER | 441 W 12300 S STE A600 DRAPER UT 84020 | LUXE AUTOMOTIVE GROUP, INC. | Corporation | Registered Agent | Details |
| TAMIO STEHRENBERGER | 1571 S PARKWAY CT Saratoga UT 84045 | STAR MOUNTAIN GROUP, LLC | Limited Liability Company | Manager | Details |
| TAMIO STEHRENBERGER | 1571 S PARKWAY COURT Saratoga Springs UT 84043 | STAR MOUNTAIN ENTERPRISES, LLC | Limited Liability Company | Manager | Details |
| TAMIO STEHRENBERGER | 1571 S. PARKWAY CT SARATOGA SPRINGS UT 84045 | STAR MOUNTAIN ENTERPRISES, LLC | Limited Liability Company | Registered Agent | Details |
| TAMIO STEHRENBERGER | 1571 S PARKWAY CT SARATOGA SPRINGS UT 84043 INC. | LUXE AUTOMOTIVE GROUP, | Corporation | Director | Details |
| Tamio t Stehrenberger | 1571 S. Parkway Ct. Saratoga Springs UT 84045 | LUXE FOUNDATION | Corporation | Registered Agent | Details |
| Tamio l Stehrenberger | 441 West 12300 South, Ste A600 Draper UT 84020 | LUXE CAPITAL GROUP, LLC | Limited Liability Company | Registered Agent | Details |
| Tamio l Stehrenberger | 441 West 12300 South, Ste A600 Draper UT 84020 | LUXE CAPITAL GROUP, LLC | Limited Liability Company | Manager | Details |
| TAMIO L STEHRENBERGER | 1571 S PARKWAY CT Saratoga Springs UT 84045 | TAANEN, LP | Limited Partnership | Registered Agent | Details |
| TAMIO L STEHRENBERGER | 441 W. 12300 S. STE A600 DRAPER UT 84020 | STEHRENBERGER HEIGHTS, LLC | Limited Liability Company | Registered Agent | Details |
| Tamio l Stehrenberger | 1571 S. Parkway Ct. Saratoga Springs UT 84045 | LUXE FOUNDATION | Corporation | Incorporator | Details |
| TAMIO L STEHRENBERGER | 1571 PARKWAY CT Saratoga Springs UT 84045 | STEHRENBERGER HEIGHTS, LLC | Limited Liability Company | Manager | Details |
| Tamio l Stehrenberger | 1571 S. Parkway Ct. Saratoga Springs UT 84045 | LUXE FOUNDATION | Corporation | Director | Details |
| TAMIO L STEHRENBERGER | 1571 S PARKWAY CT Saratoga Springs UT 84045 | TAANEN, LP | Limited Partnership | Partner | Details |

Total Results: 18 | Perform another search

Department of Commerce Home | Division of Corporations Home | Contact Us

# Exhibit 4

The Order of the Court is stated below:
Dated: October 03, 2017   /s/ ROGER W GRIFFIN
05:43:45 PM               District Court Judge

MATTHEW J. MORRISON, Bar # 14562
Attorney for Defendant
1887 N 270 E
Orem, UT 84057
(801) 845-2581
matt@oremlawoffice.com

IN THE FOURTH JUDICIAL DISTRICT COURT,
IN AND FOR THE STATE OF UTAH

| Overland Associates, LLC et. al., | |
|---|---|
| Plaintiffs | |
| v. | Case No. 160100092 |
| Star Mountain Enterprises LLC et al., | Judge: Griffin |
| Defendants | |

The Court, having been fully advised on the issue, hereby makes the following Order regarding Defendant Anna Stehrenberger's Motion to Set Aside Default. Hearing regarding the matter was held on September 18, 2017. Plaintiff Michiko Stehrenberger was present with her counsel, Mark Woodbury. Defendant Anna Stehrenberger was present with her counsel, Matthew Morrison. Defendant Tarrio Stehrenberger was not present, but was represented by counsel, Matthew Morrison. The legal entities Star Mountain and Tsanen were represented by Matthew Morrison. Chris Andrus was present, but did not participate herein. The Court finds and orders as follows:

1. Defendant's Motion to Set Aside Default was submitted based on Defendant Anna Stehrenberger's lack of actual notice of a telephone hearing.

2. The Court finds that Anna Stehrenberger has demonstrated good cause for the default to be set aside.

3. The Court finds that during the marital separation of Defendant Anna Stehrenberger and Defendant Tarrio Stehrenberger, the separation was of unknown length.

4. The Court finds that the temporary nature of the separation resulted in Defendant Anna Stehrenberger not appearing at a hearing of which she lacked actual notice.

5. The Court finds that Defendant Anna Stehrenberger's not having provided a change of address, even for her temporary separation, was neglect but was excusable neglect.

6. The Court orders, as a result of the above, that the default as to Anna Stehrenberger is hereby set aside.

7. The Court additionally states as a clarification that the default entered as to Star Mountain and Tsanen is not set aside, as they did not file or join in the instant motion.

The signature of the court appears atop the first page of this document.

Approved as to Form:
/s/Mark Woodbury
Mark Woodbury

/s/Matthew Morrison
Matthew Morrison

October 03, 2017 05:43 PM    1 of 2

October 03, 2017 05:43 PM    2 of 2