Michiko Stehrenberger, *Plaintiff*
c/o 2500 Blanchard Road
Santa Rosa Valley, CA 93012
document.request@gmail.com
(206) 229-4415

U.S. COURTS

JUN 10 2021
Rcvd\_\_Mail\_Filed\_\_\_\_Time 10:30
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF IDAHO, BOISE DIVISION

| | |
|---|---|
| MICHIKO STEHRENBERGER,<br>Plaintiff,<br>v.<br><br>TAMIO LUCIEN STEHRENBERGER,<br>ANNA CHRISTINE STEHRENBERGER,<br>Debtors/Defendants,<br><br>STAR MOUNTAIN ENTERPRISES, LLC,<br>an expired Utah entity managed by debtors,<br>Defendant,<br><br>JOHN DOES 1-100,<br>Defendants. | Adversary case no. 20-06044-NGH<br>Chapter 7 case no. 20-00833-NGH<br><br>PLAINTIFF'S OPPOSITION TO<br>DEFENDANT ANNA STEHRENBERGER'S<br>MOTION TO DISMISS AMENDED<br>ADVERSARY COMPLAINT |

RELIEF REQUESTED AND GROUNDS FOR RELIEF

Plaintiff Michiko Stehrenberger respectfully requests that the Court DENY Defendant Anna Stehrenberger's May 3, 2021 *Motion to Dismiss* in its entirety, or in the alternative, that dismissal be made without prejudice with permission to amend, based upon the following:

**I.  Legal standard under Rule 12(b)(6).**

In deciding a motion to dismiss under Rule 12(b)(6), the Court is required to accept all factual allegations in the plaintiff's complaint as true at this stage, and to draw to all reasonable inferences in the plaintiff's favor. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067-768 (9th Cir. 2011).

The Court may consider allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008). Additionally, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2nd Circ. 1999).

II. **Plaintiff's Count One properly alleges that Utah law gives preclusive effect to default orders, that the Utah state court's August 24, 2017 order is a final order that determined Defendant Anna's joint and several liability for securities violations and awarded statutory damages, and that 11 U.S.C. § 523(a)(19) excepts the statutory damages debt from discharge.**

    1. <u>The Utah state court order has already determined Defendant Anna's joint and several liability for securities violations.</u>

Plaintiff has alleged at ¶¶ 2-11 of her *Amended Adversary Complaint*, of which the Court may also take judicial notice under Fed. R. Evid. 201, that the Utah state court's August 24, 2017 order in case number 160100092 (*Am. Adv. Compl. Ex. 1*) has already expressly determined that: (1) Defendant Anna Stehrenberger is a Manager of Star Mountain Enterprises; (2) the Managers and Members of Star Mountain Enterprises are jointly and severally liable under the Utah Securities Act for having committed securities fraud (violations of the Utah Securities Act's "anti-fraud" provision, Utah Code Ann. § 61-1-1(2))[1]; (3) Plaintiff was awarded statutory damages, the exact amount of which may be readily determined by applying the Utah Securities Act's statutory damages formula found under Utah Code Ann. § 61-1-22; (4) the Utah state court designated its order as a final order under Utah R. Civ. P. 54(b); and (5) Defendants did not appeal the Utah state Court's 2017 final order.

---

[1] See *Amended Adversary Complaint's Ex. 1*: "[T]he two Managers of Star Mountain Enterprises, LLC . . . are persons who are jointly and severally liable together with Defendant Star Mountain Enterprises, LLC for the Utah Securities Act violations committed and the money owed. . . the Court concludes that Defendants Tamio Stehrenberger and Anna Stehrenberger are specifically identified by name as the two Managers of Star Mountain Enterprises, LLC during the time period relevant to this case . . . ."

Plaintiff has additionally alleged at ¶ 28 of the *Amended Adversary Complaint* that Defendant Anna admitted in her January 29, 2011 filing in the related Utah state court case, number 080402986, that:

> Anna Stehrenberger was a manager of Star Mountain [Enterprises] during the time it sold securities to Michiko, and [s]he played an active role in selling the securities to Michiko. (emphasis added)

The Court may also take judicial notice of Star Mountain Enterprises's *Articles of Organization* filed with the Utah Department of Commerce, in which Anna is also identified in as one of Star Mountain Enterprises's two Managers. *Am. Adv. Compl. Ex. 2*, ¶ 7.

### 2. Defendant Anna and her counsel intentionally ratified the default to the Utah state court, even after her joint and several liability determination resulted from it.

Plaintiff alleges at ¶ 9 that Defendant Anna and the other defendants chose not to appeal the Utah state court's August 24, 2017 determination of Anna's joint and several liability for securities violations, and that through counsel, Anna had even submitted a proposed order confirming Star Mountain Enterprises's default afterwards, which the Utah state court then entered verbatim on October 3, 2017. In so doing, Defendant Anna, while represented by counsel, knowingly ratified the default of her company Star Mountain Enterprises in October 2017, even after the Utah state court's August 24, 2017 final order had already determined that Anna, as Manager and Member of Star Mountain Enterprises, is personally jointly and severally liable under Utah Code An. § 61-1-22(4)(a) as a direct result of Star Mountain Enterprises's default. Thus, as alleged in the complaint and as Defendant Anna asserts is required under *In re Bundy*, 468 B.R. 916, 922 (Bankr. E.D. Wash. 2012), the securities liability determination against Defendant Anna has already been made in a non-bankruptcy forum, and Defendant Anna knowingly chose not to appeal it in that forum.

3.     Utah preclusion law governs, and Utah considers default orders to be final orders.

Under *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380-82, 105 S. Ct. 1327, 1332, 84 L. Ed. 2d 274 (1985), "the full faith and credit statute 'directs a federal court to refer to the preclusion law of the State in which the judgment was rendered."

Utah's preclusion law therefore applies to the Utah state court's August 24, 2017 order, and "a ruling of a court, even when the ruling is a default judgment, is sufficiently final for purposes of preclusion." *In re Armstrong,* 294 B.R. 344, 358 (B.A.P. 10th Cir. 2003), applying Utah preclusion law to the "Utah Default Order" in that case (citing *McCart v. Jordana* (In re *Jordana),* 232 B.R. 469, 477 (10th Cir. BAP 1999).

Defendant Anna mistakenly relies upon *Stokes v. Vierra,* 185 B.R. 341, 344 (N.D. Cal. 1995) to argue that "a default judgment is not a final judgment on the merits," even when *Stokes*'s holding is limited to an analysis of South Carolina's preclusion laws, rather than those of Utah. She also relies upon an outdated Utah Court of Appeals decision in *Utah State Dept. of Social Services. v. Ruscetta,* 742 P.2d 114, 116 (Utah App. 1987) when asserting that "a default judgment is not a judgment merits for the purposes of collateral estoppel," when the Utah Supreme Court has since stated in 2019 that "*Ruscetta* does not square with our more recent jurisprudence. We do not simply drop rulings into a 'procedural' or 'substantive' box to determine their preclusive effect." *Cheek v. Iron County Attorney,* 2019 UT 50. The additional facts of Defendant Anna's and her counsel's knowing and intentional ratification of the default and her decision not to timely appeal the final order of joint and several liability assures that the necessary "full and fair opportunity to litigate the allegations" requirement has already been met in the Utah state court back in 2017.

> 4. <u>The Ninth Circuit also considers orders entered upon unopposed motions to have preclusive effect in bankruptcy nondischargeability determinations.</u>

Fortunately Tenth Circuit and Ninth Circuit preclusion decisions are sufficiently similar and the outcome does not hinge upon a choice-of-law analysis. *In re Armstrong,* applying Utah preclusion law to its "Utah Default Judgment," also collects its supporting decisions from other jurisdictions, including an instructive Ninth Circuit decision, *FDIC v. Daily (In re Daily),* 47 F.3d 365 (9th Cir.1995). *Daily* carefully considered the amount of litigation conducted by the defaulted party prior to the default. Based upon the debtor Daily having actively litigated for two years prior to default, the *Daily* court determined that the defaulted party had had the necessary "full and fair opportunity to litigate the allegations" before giving up, which is sufficient for the resulting default order to constitute a final order for the purpose of preclusion. *Daily* relied upon *United States v. Gottheiner (In re Gottheiner),* 703 F.2d 1136, 1140 (9th Cir. 1983), even where the debtor gave up on litigation after an even shorter period of time of 16 months:

> [W]e approved use of collateral estoppel to establish the existence of a debt in bankruptcy although the prior judgment relied upon to establish the debt rested upon an unopposed motion for summary judgment. <u>We deemed the requirement of 'actual litigation' satisfied notwithstanding the debtor's failure to oppose the motion,</u> stating:
>
>> Gottheiner did not simply give up from the outset. For sixteen months he actively participated in litigation . . . . That after many months of discovery Gottheiner decided his case was no longer worth the effort does not alter the fact that he had his day in court. Under the circumstances we hold that . . . collateral estoppel properly was available to the [creditor].
>
> By contrast, denying preclusive effect . . . on the ground that the issues relevant to discharge were not fully tried in that proceeding would permit Daily to substantially and perhaps ultimately avoid payment of a debt by deliberate abuse of the judicial process. . . Nor is due process violated if the defendant is later held to the consequences of such a judgment in a bankruptcy discharge proceeding.
>
> *Daily,* 47 F.3d 365, section II (internal citations omitted).

Here, the Court may take judicial notice of the Utah state court docket to conclude that Defendant Star Mountain Enterprises, acting through its Manager and Member Defendant Anna, had litigated for nearly *nine* years (over four times longer than Daily had) before letting itself go into default. Even then, Defendant Anna through counsel, even ratified the default and memorialized it as part of a proposed order to Utah state court which then got entered verbatim on October 3, 2017. Thus, Defendant Anna knowingly and intentionally allowed her company Star Mountain Enterprises to go into default, even after it was clear that Anna had already been ordered jointly and severally liable for Star Mountain Enterprises's securities violations.

Based on Plaintiff's facts as alleged, the Utah state court's securities violation liability determination has preclusive effect, and all that remains is for the Court to apply the statutory damages formula to determine the final judgment dollar amount to be excepted from discharge.

5.  *Ellsworth v. Anderson* (D. Idaho) simplifies the Court's analysis.

Under this Court's ruling in in *Ellsworth v. Anderson (In re Anderson)*, no. 10-20651-TLM (Aug.1, 2012, p. 8), the Court has a simplified duty:

> [W]hen § 523(a) subsections require a memorialized liability determination, bankruptcy courts do not litigate the underlying claim. In those situations, the bankruptcy court merely determines the underlying claim was established in a non-bankruptcy forum and satisfies any other requirements found within § 523(a).
>
> (citing *Faris v. Jafari (In re Jafari)*, 401 B.R. 494, 496-97 (Bankr. D. Colo. 2009)(emphasis added).

Thus, under *Ellsworth*, the Court may simply look to the *Amended Adversary Complaint* ¶¶ 1-10, 19-20 to find that the Plaintiff has properly alleged that a non-bankruptcy forum, the Utah state court, has already declared the securities violation liability determination and determined that Defendant Anna is jointly and severally liable for statutory damages through her

role as Manager and Member of Star Mountain Enterprises. The Court may also consider that the allegations assert that the Utah state court designated its order as final, Defendant Anna chose not to appeal the Utah state court's final decision, and that Anna and her counsel later knowingly ratified Star Mountain Enterprises's default in a proposed order submitted to that state court.

> 6. <u>Plaintiff has properly alleged damages under the statutory damages formula, which this Court has authority to order excepted from discharge.</u>

Star Mountain Enterprises strategically filed for Chapter 7 bankruptcy on June 2, 2019 (District of Utah case number 19-24015) to trigger the automatic stay, just two days before the Utah state court's scheduled June 4, 2019 hearing to apply the statutory damages formula and enter judgment in the state court. Star Mountain Enterprises's bankruptcy case has since been closed without discharge under 11 U.S.C. § 727(a)(1), and no stay in that case impacts this Court's decisions. Fortunately, the Utah state court's August 24, 2017 order determined securities violation liability and awarded statutory damages under Utah Code Ann. § 61-1-22(1) and (2), and the statutory damages formula requires only simple math to derive a sum certain for an exception from discharge.

Plaintiff has alleged at ¶ 5 that "$2,155,348.26 accrued as of the debtors' September 11, 2020 petition date in the related bankruptcy case, number 20-00833-NGH." and prays for the relief that these amounts, plus amounts accruing thereafter, be ordered excepted from discharge. Plaintiff has alleged facts sufficient for the Court to determine under *Ellsworth* and *Jafari* that the Utah state court's August 24, 2017 order is a final order that precludes re-litigation regarding Defendant Anna's joint and several liability, and the statutory damages formula closes the gap.

### III. Plaintiff's Count Two properly alleges Joint and Several Liability of Defendant Anna under Utah Code Ann. § 61-1-22(4)(a).

The Utah state court has already ordered that Defendant Anna, as Manager and Member

of Star Mountain Enterprises, is jointly and severally liable for the securities violations, and Defendant Anna is precluded from re-litigating the liability already determined in the state court. However, Defendant Anna mischaracterizes Plaintiff's Count Two as one requiring an eight-factor test under *Jones & Trevor Marketing, Inc. v. Lowry*. 284 P.3d 630 (Utah 2012) solely as "entity-piercing," Plaintiff's Count Two instead alleges multiple variants in its title ("joint and several liability, vicarious liability, entity-piercing, and alter ego," *Amended Adversary Complaint* at page 9).

Notably, the Utah Securities Act imposes strict liability upon "every partner, officer, or director" of an entity that sells a security. Plaintiff's allegations focus on the joint and several liability elements of proof under the Utah Securities Act, which contains a lesser pleading standard than that in *Jones & Trevor Marketing* as the statutory basis for joint and several liability for securities violations under the Utah Securities Act. Plaintiff's complaint cites Utah Code Ann. § 61-1-22(4)(a) and its disjunctive elements of proof at ¶ 27-28 as follows:

> Every person who directly or indirectly controls a seller or buyer liable under Subsection (1), <u>every partner, officer, or director of such a seller</u> or buyer, every person occupying a similar status or performing similar functions, every employee of such a seller or buyer who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase <u>are also liable jointly and severally with and to the same extent as the seller</u> or purchaser, unless the non-seller or non-purchaser who is so liable sustains the burden of proof that the non-seller or non-purchaser did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

> *Utah Code Ann. § 61-1-22(4)(a)*(emphasis added).

*Steenblik v. Lichfield*, 906 P.2d 872, 876-77 (Utah 1995) clarifies this as essentially a strict liability standard when it comes to misrepresentations made during securities transactions:

> <u>Thus, a partner, an officer, a director, a person of similar status or function, or a seller of securities is liable for violations committed by the entity</u> unless that person proves the affirmative defense that he lacked knowledge of the unlawful acts. . . .Utah Code Ann. § 61-1-22(2) deviates from the federal act by <u>expressly imposing liability on every partner, officer, director, or the like</u>. The plaintiff need not demonstrate that such a person was <u>able</u> to control the transaction.

Plaintiff has sufficiently alleged that Defendant Anna falls within the scope of a "partner, officer, director, a person of similar status or function, or a seller of securities" of liable parties under Section 22(4)(a), in that Star Mountain Enterprises's *Articles of Organization* at ¶ 7 and *Am. Adv. Compl.* ¶¶ 35-36 and the complaint's <u>*Exhibit 2*</u> identify Anna is one of the two Managers of Star Mountain Enterprises, and the Utah Department of Commerce's Registered Principal Search results identify Anna as Star Mountain Enterprises's Manager. Plaintiff also alleged at ¶ 33 that Defendant Anna identified herself as the "Vice-President" of Star Mountain Enterprises, which falls within the scope of an "partner, officer, or director" of Star Mountain Enterprises. Plaintiff also alleged at ¶ 28 that Defendant Anna admitted that Anna "materially aided" in the sale when Anna filed into the related Utah case on January 29, 2011 a confirmation that Anna "was a manager of Star Mountain during the time it sold securities to [Plaintiff] Michiko and [Anna] played an active role in selling the securities to Michiko," which satisfies both prongs of the disjunctive requirements under the Utah Securities Act's Section 22(4)(a). Additionally, "a person who purports to act for and on behalf of a corporation that has no corporate authority is personally liable." Utah Code Ann. ¶ 16-10-139; *Gillham Advertising Agency, Inc. v. Ipson*, 567 P.2d 163 (Utah 1977). The Utah state court has already determined Defendant Anna's joint and several securities violation liability as a "partner, officer, or director" under the strict liability standard clarified in *Steenblik,* and dismissal of Plaintiff's Second Count should also be denied.

IV. **Plaintiff's Count Three properly alleges that the Managers and Members of Star Mountain Enterprises are jointly responsible for the willful and malicious injury.**

Defendant Anna argues that the willful and malicious injury count is not properly pled simply because it is worded as "and/or" together with the other defendants in *Amended Adversary Complaint* ¶¶ 183, 197-99. However, nothing prohibits Defendant Anna from admitting or denying each allegation as to just her own conduct. *Wool v. Tandem Computers Inc.*, 818 F.2d 1433 (9th Cir. 1987) ¶¶ 39-41 addresses how a "lack of Individualization" when pleading fraud under Rule 9(b) can be surmounted, as follows:

> The individual defendants also objected to the "all defendants" language of Wool's complaint for failing to attribute particular fraudulent statements or acts to each individual defendant. In cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other "group-published information," it is reasonable to presume that these are the collective actions of the officers. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations. The individual defendants are a narrowly defined group of officers who had direct involvement not only in the day-to-day affairs of Tandem in general but also in Tandem's financial statements in particular. During the period in question, Treybig, Marshall, and Morgan were the President/Chief Executive Officer, Senior Vice President/Chief Operating Officer, and Vice President/Controller of Tandem, respectively. We conclude that Wool pleaded each alleged misrepresentation with particularity, and, where possible, Wool has extended such particularity to the individual defendants.
> (internal citations omitted).

Plaintiff has met the *Tandem Computers* pleading requirement by alleging the fraudulent omissions with particularity and the "narrowly defined group of officers who had direct involvement" to meet Rule 9(b)'s heightened standard,[2] and dismissal should be denied.

---

2   In other paragraphs, each the elements are pled specifically to Defendant Anna's conduct separately from those of the other defendants, see *Amended Adversary Complaint* ¶¶ 107-150: "Defendant Anna met with persons interested in investing, and told those persons about the Star Mountain-related investments"; "In April 2007, Tamio and Anna met with Michiko Stehrenberger and described a "guaranteed" and "low-risk" investment to Michiko through which Michiko would invest money with their entity, Star Mountain Enterprises, LLC, through promissory notes."; Defendant Anna engaged in activities with persons interested in investing in Star Mountain-related investments that resulted in Star Mountain Enterprises, LLC receiving money into Star Mountain's accounts related to Star Mountain-issued promissory notes."; "Defendant Anna directly or indirectly caused to be sold the Star Mountain-issued promissory notes to Plaintiff Michiko."; "In exchange for Anna's discussions

**V.   Plaintiff's Counts Four and Five properly allege fraud and willful and malicious injury through allegations that Defendant Anna willfully concealed that she had switched Plaintiff's investment to a different higher-risk one, and then skimmed a percentage of the investment returns until the high-risk investment collapsed.**

Plaintiff alleges at ¶¶ 216-218 that the closely-related group of defendants, including

Defendant Anna:

> intended to cause injury and damages (financial loss) to Plaintiff Michiko, Francine Yeh, and Ken Hsieh, or believed injury and damages (financial loss) would result) in Defendants concealing the switch to the "high-risk" Landmark/Bray-Conn investment to gain the higher 72% interest rate, and then concealing the percentage-skimming remuneration on the interest-rate differential between what Landmark/Bray-Conn paid and what Star Mountain was required to pay Michiko, Francine, and Ken, that which Defendants kept in an undisclosed separate account, and which had it not been skimmed should have belonged to the investors and would have lessened the investors' losses at the end when Landmark/Bray-Conn failed to repay the investment

> believed injury and damages (financial loss) would result from their actions, which is also why they kept their acts secret until long after Landmark/Bray-Conn had failed to repay the investment.

The above factual allegations are sufficient to establish that Defendant Anna was aware

---

with Michiko about the Star Mountain-related investments, Star Mountain received at least $100,000.00 into its account(s) from Michiko."; "In exchange for Anna's discussions with Michiko about the Star Mountain-related investments, Star Mountain received money into its account(s) from Michiko."; "Defendant Anna directly or indirectly offered Aichu Yeh a financial incentive in exchange for Aichu persuading Francine Yeh to invest money with Star Mountain."; "The financial incentive Defendant Anna offered to Aichu Yeh directly or indirectly included payment to Aichu of a percentage of the monthly return that Star Mountain, Tamio, and/or Anna received on Francine Yeh's investment."; "Defendant Anna directly or indirectly caused Star Mountain-issued promissory notes to be sold to Francine Yeh."; "In exchange for Anna's efforts and interactions regarding the Star Mountain-related investments related to Francine Yeh, Star Mountain received at least $153,500.00 into its account(s) from Francine."; "In exchange for Anna's discussions with Francine Yeh about the Star Mountain-related investments, Star Mountain received money its account(s) from Francine.";"Defendant Anna wrote checks, or otherwise caused payments to be made, to Aichu Yeh related to Francine Yeh's investment with Star Mountain."; Defendant Anna directly or indirectly caused the Star Mountain-issued promissory notes to be sold to Ken Hsieh through Tamio's mother, Aichu Yeh."; "Defendant Anna offered Aichu Yeh a financial incentive in exchange for Aichu persuading Ken Hsieh to invest money with Star Mountain."; "Defendant Anna directly or indirectly caused the Star Mountain-issued promissory notes to be sold to Ken Hsieh."; "In exchange for Anna's efforts and interactions regarding the Star Mountain-related investments related to Ken Hsieh, Star Mountain received at least $17,000.00 into its account(s) from Ken."; "In exchange for Anna's efforts and interactions regarding the Star Mountain-related investments related to Ken Hsieh, Star Mountain received money into its account(s) from Ken."; "Defendant Anna wrote checks, or otherwise caused payments to be made, to Aichu Yeh related to Ken Hsieh's investment with Star Mountain."; "In paying or causing to be paid to Aichu Yeh a financial incentive in exchange for Star Mountain receiving money from Francine Yeh, Defendant Anna directly or indirectly employed an unlicensed securities agent or unlicensed investment advisor."; "In paying or causing to be paid to Aichu Yeh a financial incentive in exchange for Star Mountain receiving money from Ken Hsieh, Defendant Anna directly or indirectly employed an unlicensed securities agent or unlicensed investment advisor."

that her conduct would cause financial loss to Plaintiff and the other investors, and that Anna's secrecy and concealment of her conduct confirms her awareness and intent to continue doing the harm. Under *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001) "the wrongful act must be committed intentionally <u>rather than the injury itself</u>," (emphasis added) and "malice can be inferred based upon the nature of the wrongful act where willfulness has already been established." *Id.* Therefore *Petralia* only requires that Plaintiff allege that Defendant Anna skimmed the money intentionally and believed that her conduct would harm Plaintiff and the other investors – not that Anna specifically intended to *do harm* to Plaintiff and the other investors. Dismissal should therefore be denied as to Plaintiff's Count Four and Five.

## VII. Plaintiff's Count Six and Seven properly allege that Defendant Anna "pooled" money into the account and aided in the loan application fraud against EAG Investments, LLC.

Defendant Anna misconstrues Counts Six and Seven as being based solely upon Anna's marital status, disregarding Plaintiff's re-alleged facts incorporated from other sections regarding Anna's contemporaneous business partnership arrangement with her then-husband. Under *Tsurukawa v. Nikon (In re Tsurukawa)*, 258 B.R. 192 (9th Cir. BAP 2001):

> [S]pouses can be partners in a business enterprise where agency principles apply. However, the marital status alone does not create an agency relationship. . . . Based on the discussion above, we hold that a marital union alone, <u>without a finding of a partnership or other agency relationship between spouses</u>, cannot serve as a basis for imputing fraud from one spouse to the other.
> (emphasis added).

Under *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752 (2018), 11 U.S.C. 523(a)(2)(A) has been applied when a debt arises from "forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." It also has been used to bar the discharge of debts resulting from misrepresentations about the value of goods, property, and

services. And its footnote 5 summarizes the same conclusion under various fact patterns, such as *In re Bocchino,* 794 F.3d 376, 380-383 (C.A.3 2015) (holding nondischargeable under § 523(a)(2)(A) civil judgment debts against a debtor-stockbroker who made misrepresentations about investments); *In re Cohen,* 106 F.3d 52, 54-55 (C.A.3 1997) (holding that a landlord's misrepresentations about the rent that legally could be charged for an apartment constituted fraud under § 523(a)(2)(A)); *United States v. Spicer,* 57 F.3d 1152, 1154, 1161 (C.A.D.C.1995) (holding nondischargeable under § 523(a)(2)(A) a settlement agreement owed to the Government based on an investor's misrepresentations of downpayment amounts in mortgage applications)."

Plaintiff's allegations against Defendant Anna regarding her pattern of fraudulent schemes may also be characterized as fraud committed in direct collusion with her husband Tamio's loan application fraud under 11 U.S.C. § 523(a)(2)(B), or as a separate series of fraudulent schemes committed under 11 U.S.C. § 523(a)(2)(A) in furtherance of her husband's fraud on the loan application. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman),* 234 F.3d 1081, 1085 (9th Cir. 2000) sets forth the five elements Plaintiff is required to allege under Section 523(a)(2)(A), which Plaintiff has alleged against Anna throughout other sections of the complaint: (1) the misrepresentation, fraudulent omission, or deceptive conduct by the debtor (see Plaintiff's *Am. Adv. Compl.* at ¶ 97-98, 100, 101, 173[3]); (2) knowledge of the falsity or

---

[3] *Am. Adv. Compl.* at ¶ 100, 97-98, 101, 173, respectively, allege that: "Defendant Anna acted as a securities agent by selling promissory note securities related to or on behalf of Star Mountain Enterprises, LLC. . . Anna admits[s] as true in their September 28, 2016 Amended Answer in Utah state court case number 16010082 at ¶ 60, 249, that "[c]ertificates obtained from the Utah Division of Securities Custodian of Records indicate that Defendant . . .Anna [has] "never been licensed as . . . [an] agent . . . in Utah. . . That the State of Utah requires a securities license to be able to lawfully 'poo' the money of multiple investors together with the money of others, and that . . . Anna failed to disclose to [Plaintiff] . . . that Anna [was] therefore required to obtain her own securities license before "pooling" [Plaintiff's] money, was an omission of fact . . ..In exchange for selling Star Mountain-issued securities, Defendants Tamio and/or Anna received direct and indirect financial benefits including showing the commingled and pooled approximately $2.2 million of multiple investors held in [an] account under their control by claiming it as their own assets, which Tamio did in or about May 15, 2008 to obtain a $572,000.00 loan from EAG Investments, LLC. . . . If not for the investors having invested their money with Star Mountain, and their money then being commingled and "pooled" into the $2.2. million, Defendants

deceptiveness of her conduct (*Am. Adv. Comp.* ¶ 178, 234-235[4]); (3) an intent to deceive (¶ 178, 234-235 inferred from acts to conceal the scheme and the secret use of the pooled assets); (4) justifiable reliance by the creditor on the debtor's conduct (¶ 255[5]); and (5) damage to the creditor proximately caused by its reliance. (¶ 260 alleges the reliance by Plaintiff's predecessor in interest,[6] and ¶224 alleges that the Utah state court "ordered Plaintiff Michiko formally substituted as the Successor Judgment Creditor to former plaintiff EAG.").

When taken as a whole along with the facts re-alleged from other sections, Counts Six and Seven properly allege Defendant Anna's active role in the loan application fraud and in a wider-ranging set of fraudulent schemes–overt acts as a business partner in a partnership, beyond those of a merely innocent spouse. Dismissal of her Counts Six and Seven should also be denied.

## VIII. Plaintiff's Count Eight properly alleges that Plaintiff is a real party in interest who may acquire standing under Fed. R. Civ. P. 17(c).

Debtor defendants Anna and Tamio informed the Court through the withdrawal of their prior shared counsel that they have commenced new divorce proceedings during this case.

---

[including Anna] would not have received the 6% per month on that $2.2 million from which Defendants [including Anna] skimmed a percentage for their own remuneration. . . . "

4  *Am. Adv. Compl. at* ¶ 178, 234-35, imputing knowledge and intent to deceive through their concealment of the pooling of others' assets and percentage-skimming scheme: "Defendants [including Anna] knew or should have known at least as of July 2007 that Star Mountain, in having contracted to receive 1% per month while already having contracted to pay out 1.5%-2% per month to investors [including Plaintiff], that Star Mountain would be unable to sustain making payments from the investment. . . .In or about March 15, 2008, Defendant Anna . . . claimed that people could use the V.O.D. to defraud others, and Anna thereby indicated that she was well aware of how the fraudulent 'seasoning' and loan application scheme worked. Between August 2006 and at least May 2007, Defendants Tamio and/or Anna secretly caused the money of Plaintiff Michiko and other investors to be commingled and 'pooled' together and then placed into the Landmark/Bray-Conn investment in exchange for promissory notes bearing an annual interest rate of 72% on the larger 'pooled' amount of money of others."

5  *Am. Adv. Compl.*¶ 255, 259, from which it may be inferred that the fraudulent statements were based upon the money pooled by Defendant Anna to result in the account statement showing those pooled assets: "EAG Investments, LLC, through its Manager, Hal Rosen, relied upon Defendant Tamio's written statement indicating that Tamio would be able to repay the loan back to EAG, in full, about a month later on June 20, 2008. . . . EAG Investments, LLC, through its Manager Hal Rosen, did indeed rely upon Defendant Tamio's Uniform Residential Loan Application, Account 10032 statements, and "Irrevocable Letter of Assignment and Disbursement."

6  *Am. Adv. Compl.* ¶ 260: "EAG investments, LLC then suffered losses as a result of its reliance upon Defendant Tamio's written statements containing misrepresentations of his financial condition when the $572,000.00 loan was not repaid in full by the June 20, 2008 agreed date."

Previously, it was presumed that any marital community's shared liabilities would also apply to receipt into an individual spouse's bank account, such as when debtor Tamio received a transfer of $25,917.15 from Taanen (an entity which Taanen's petition and schedules in Utah bankruptcy case 19-24016 indicate is comprised only of debtors Tamio and Anna, and their minor son). The Utah state court's August 24, 2017 order, *Am. Adv. Compl. Ex. 1* ¶ 4, also declared that Taanen had received the wrongful transfer of assets and then ordered those transfers reversed in favor of Plaintiff as Taanen's creditor, and Plaintiff has already met that statute of limitations outside of this case. Plaintiff reasonably inferred that both debtors Tamio and Anna were the transferees of Taanen's $25,917.15 transfer as they were a single marital unit at the time, and therefore did not allege fraudulent transfer separately against Anna, Tamio, and their minor son. If the Court deems amendment necessary for Plaintiff's Count Eight to survive dismissal, Plaintiff requests leave to amend.

As to Defendant Anna's lack of standing arguments, non-party Taanen, LP's Chapter 7 petition was filed June 2, 2019. Taanen's trustee's two-year authority granted under 11 U.S.C. § 546(a) to bring Taanen's fraudulent transfer claim against the debtors would normally have expired on June 1, 2021. Even if tolled during the pendency of this case, however, Taanen's trustee's deadline to seek exception to discharge on those fraudulent transfer claims expired December 14, 2020, and this Court has already ordered the debtors' other debts (outside of this adversary case) as discharged. Due to the expiration of crucial deadlines, Taanen's trustee no longer has any viable claims remaining against the debtors in this case that could interfere with Plaintiff's ability to pursue the claims as a real party in interest in her own name.

As relates to Taanen and its trustee, "[b]ecause creditors' avoidance claims are not property of the estate, the trustee has a limited time in which to bring them," and "when the

two-year limitation on trustee avoidance claims expires, the claims automatically revert" to creditors. *In re Tribune Company Fraudulent Conveyance Litigation*, Multidistrict Litigation No. 11 MD 2296, 499 B.R. 310 (S.D.N.Y. 2013). "[C]reditors do not regain the right to sue <u>unless the trustee</u> abandons the claim or he <u>no longer has a viable cause of action because, for example, the statute of limitations has run</u>." *In re Tessmer*, 329 B.R. 776, 779 (Bankr. M.D. Ga. 2005) (emphasis added). Once the trustee's claim is prohibited by expiration of the statute of limitations, a creditor "regains standing to pursue a state law fraudulent conveyance action, in its own name and for its own benefits." *In re Integrated Agri, Inc.*, 313 B.R. 419, 427-28 (Bankr. C.D.Ill. 2004).

Plaintiff's ability to pursue her nondischargeability claim is protected under Fed. R. Civ. P. 17 (made applicable in through Fed. R. Bankr. P. 7017), which provides that an action shall not be dismissed on the ground that it is not prosecuted in the name of the real party in interest until the real party in interest has been allowed a "reasonable time" to ratify the commencement of, or join or substitute in, the action, in which event "such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." *Fed. R. Bankr. P. 7017(a)*. Plaintiff is deemed to have previously ratified these claims going forward in her own name as required under Fed. R. Civ. P. 17(c), through the filing of her adversary complaint, and can submit an additional affidavit confirming her ratification within a reasonable time, if the Court requires one to be able to deny dismissal.

This Court has exclusive jurisdiction to determine nondischargeability. *Grogan v. Garner*, 498 U.S. 279 (1991) *10. Due to the Taanen trustee's limitations deadlines in this case having already expired, Plaintiff has regained her rights to continue pursuing in her own name her claims against the debtors related to wrongful transfers of assets made using the Taanen entity,

for which the Utah state court has already ordered the wrongful transfers reversed. *Utah state court 's August 24, 2017 order* ¶ 4. Plaintiff seeks a nondischargeability determination to allow her to continue tracing assets and identifying any third-party transferees from which to recover once the debtors' bankruptcy case has been closed. As the real party in interest matters have automatically been resolved through the expiration of the Taanen trustee's deadline, dismissal of Plaintiff's Count Eight should be denied.

### IX. Plaintiff's Count Nine properly alleges that Defendant Anna misappropriated property belonging to the heirs of Aichu Yeh and concealed that fact from discovery.

Under Fed. R. Civ. P. 8(a)'s notice pleading standard, Plaintiff has adequately alleged that Defendant Anna has concealed vital information and missing property, including sentimental items of the decedent's estate, that has made it impossible for Plaintiff to determine the location and final dollar amount value of the missing property due to her as one of the heirs or beneficiaries of the decedent's estate, and that these as-yet-unknown amounts should be excepted from discharge. Due to Defendant Anna's concealment, Plaintiff does not have sufficient facts to determine what others laws in what others jurisdiction may apply to the concealed facts, other than this Court's jurisdiction over matters regarding what is and is not lawfully the debtors' bankruptcy estate property.

Upon Defendant Anna's filing of her bankruptcy petition, the ownership and location of this concealed property was suddenly put into jeopardy. Items listed as assets or exemptions in Without discovery, Defendant Anna's cannot be verified as her own property rather than the property of the decedent's estate. It is also vital that the decedent's estate property, including items sentimental to the decedent's other family members, not be characterized as Defendant Anna's property or utilized to satisfy the Defendant Anna's debts, and that any wrongful transfers

be reversed or in the very least that any debts related to them be declared nondischargeable.

This Court has exclusive jurisdiction to hear nondischargeability claims under *Grogan v. Garner*, and thus Defendant Anna's debt related to the decedent's estate, and the determination of nondischargeability of this debt, have could not have previously been litigated in any other court, and thus this claim only became ripe for the first time after Defendant Anna's bankruptcy case was commenced. Under 11 U.S.C. § 105 the Court has power to grant equitable relief to allow Plaintiff to obtain the information and location of the decedent's property thus far concealed. Any concealed or appropriated assets are inextricably related to the administration of the bankruptcy estate and identification of its assets, and therefore constitute a core proceeding for which this Court has authority to enter final orders.

If the Court is inclined to dismiss Plaintiff's Count Nine, Plaintiff requests that any dismissal ruling be held in abeyance to retain the relevancy scope of the claims to allow limited discovery, such as an initial inquiry requiring Defendant Anna to provide identification under oath of any other persons or parties with knowledge of who administered the decedent's estate and in what manner, the production of the decedent's will or trust to determine to what extent if any the Plaintiff had an interest in the decedent's estate,, copies of court filings or notices given identifying the case number, case status, and executor or personal representative of the estate, documents regarding the inventorying, appraisal, present location(s) and person(s) with custody of the decedent's property, and the specifics of any distribution or disposition of the decedent's property. If dismissal cannot be held in abeyance while limited discovery is completed, then Plaintiff respectfully requests dismissal be made without prejudice, with leave to amend.

**X.    Plaintiff's Count Ten properly alleges that her liens be determined as having priority over certain other liens filed in the bankruptcy case.**

Defendant Anna asserts that Plaintiff's Count Ten "fails to state if it seeks to determine validity of a lien, and if so, which one. Count Ten fails to identify whether it seeks to determine the priority of the Plaintiff's lien(s) against other lienholders." The debtors listed priority debts with vague dollar amounts claimed owed to the Internal Revenue Service and state taxing authorities. It is reasonable to infer that Plaintiff is requesting a priority determination on her two EAG Investments liens against the taxing authority liens. As Defendant Anna cites to no authority that requires Plaintiff to assert specific further elements in addition to those already alleged, dismissal as to Plaintiff's Count Ten should be denied.

## CONCLUSION

Based upon the foregoing, Plaintiff Michiko Stehrenberger respectfully requests that Defendant Anna Stehrenberger's May 3, 2021 Motion to Dismiss be DENIED in its entirety. In the alternative, if dismissal is granted, then Plaintiff respectfully requests that dismissal be made without prejudice and that she be granted leave to amend, along with a detailed order specifying which exact numbered paragraphs, if any, are defective and should be amended to survive future dismissal.

Respectfully submitted June 4, 2021,

Michiko Stehrenberger, Plaintiff
document.request@gmail.com
(206) 229-4415

### CERTIFICATE OF SERVICE
I hereby certify that on the date below, I caused to be served a true and correct copy of Plaintiff Michiko Stehrenberger's Opposition to Defendant Anna Stehrenberger's *Motion to Dismiss* the *Amended Adversary Complaint* by email, as agreed by the parties, as follows:

Blair Clark via dbc@dbclarklaw.com, *Attorney for defendant Tamio Stehrenberger*
Alexandra O. Caval via alex@cavallawoffice.com , *Attorney for defendant Anna Stehrenberger*

Dated June 4, 2021,

Michiko Stehrenberger