Michiko Stehrenberger, *Plaintiff*
2500 Blanchard Road
Santa Rosa Valley, CA 93012
document.request@gmail.com
(*email service required)
(206) 229-4415

U.S. COURTS

OCT 12 2021

Rcvd____ Filed____ Time 11:15am
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF IDAHO, BOISE DIVISION

| | |
|---|---|
| MICHIKO STEHRENBERGER,<br>     Plaintiff,<br><br>v.<br><br>TAMIO LUCIEN STEHRENBERGER,<br>ANNA CHRISTINE STEHRENBERGER,<br>and their marital community,<br>     Debtors/Defendants,<br><br>TIMOTHY R. KURTZ,<br>solely in his capacity as Chapter 7 Trustee,<br>     Defendant,<br><br>INTERNAL REVENUE SERVICE,<br>as secured lien claimant,<br>     Defendant,<br><br>JOHN DOES 1-100,<br>     Defendants. | Adversary case no. 20-06044-NGH<br>Chapter 7 case no. 20-00833-NGH<br><br>**PLAINTIFF'S SECOND AMENDED ADVERSARY COMPLAINT**<br><br>(REQUEST FOR DETERMINATION OF EXCEPTIONS TO DISCHARGE UNDER 11 U.S.C. § 523(a), DECLARATORY JUDGMENT, AND OTHER RELIEF) |

COMES NOW, Plaintiff Michiko Stehrenberger, and respectfully requests this Court's final determination that her claims filed in District of Idaho bankruptcy case 20-00833-NGH (claims register numbers 24-26) be excepted from discharge under the relevant sections of 11 U.S.C. § 523(a)(2)(A) and (B); (4); (6); and (19)(A)(i) and (ii) and (B)(i), and Bankruptcy Rule 4007(c)l for declaratory judgment under 28 U.S.C. § 2201 and Rules 7001(2) and 7001(9); and for the other relief requested herein.

Defendants are required to serve their answers or responses within fourteen (14) days of the service date under Fed. R. Civ. P. 15(a)(3); Fed. R. Bankr. 7015.

**NOTE: Each Defendant's separate response should be provided in a document with the allegation paragraph included immediately before each of the Defendants' responses** so that any admitted allegations are contained within a single answering document without need to cross-reference between multiple documents. Plaintiff provides by email an editable version of this complaint into which each Defendant can insert his or her admissions, denials, or objections. **If you admit, deny, or object to portion of an allegation, please provide in your response which exact portion to which you admit, deny, or object with specificity, as required under Fed. R. Civ. P. 8(b)(2),(3), and (4). Plaintiff requires that each Defendant, in addition to their counsel, provide their signature at the end of their response document,** to satisfy the underlying good faith requirements of Fed. R. Civ. P. 11 (Fed. R. Bankr. P. 7011) with regard to each Defendant being required to directly participate in making truthful and complete responses in their own case, rather than counsel potentially providing blanket denials and objections that may serve to obstruct the purpose of accurately and efficiently determining the factual basis underlying any Defendants' claims and defenses. **Defendants are requested to serve their responses by email to Plaintiff at document.request@gmail.com as a text-searchable PDF.**

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

2. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1).

3. Venue in the U.S. Bankruptcy Court for the District of Idaho, Boise Division, is proper under 28 U.S.C. § 1409, as the co-debtors' Chapter 7 bankruptcy case, *In re Tamio Lucien Stehrenberger and Anna Christine Stehrenberger*, case no. 20-00833-NGH, is also pending before this Court.

4. Determination of exceptions to the co-debtors' discharge of certain debts is appropriate under 11 U.S.C. § 523(a) and its subsections (a)(2)(A), (a)(2)(B), (4), (6), (19)(A)(i) and (ii), and (B)(i), and under this Court's December 21, 2020 order granting a Rule 4007(c) filing extension until March 15, 2021, and the Court's September 9, 2021 order granting leave to amend within 30 days.

5. Declaratory judgment is appropriate under 28 U.S.C. § 2201, Fed. R. Bankr. P. 7001(2), 7001(9), and Fed. R. Civ. P. 57.

6. This Court has authority to hear this adversary proceeding, and under *Grogan v. Garner*, 498 U.S. 2799, 284 n. 11 (1991), this Court retains exclusive jurisdiction to determine whether a debt is dischargeable. Such claims statutorily constitute core proceedings as contemplated by 28 U.S.C. 157(b)(2)((I) and (O), and meet all constitutional standards for the proper exercise of full judicial power by this Court.

7. Each of the debtor-defendants has appeared in this case and has consented, or upon default is deemed to have consented, to the jurisdiction and constitutional authority of

this Court to enter final default judgment.

## THE PARTIES

8. Plaintiff Michiko Stehrenberger ("Michiko") is a creditor in the related Chapter 7 case, number 20-00833-NGH, with three (3) separate Proofs of Claim (claims register numbers 24-26. In November 2016, she received transfer of all right, title, and interest in the claims of former co-plaintiffs Overland Associates, LLC, Francine Yeh, and Ken Hsieh against Tamio Stehrenberger, Anna Stehrenberger, Star Mountain Enterprises, and any related claims, and on February 20, 2019, in the matter of *EAG Investments, LLC v. Tamio Lucien Stehrenberger,* the Third Judicial District Court for the State of Utah in case number 100401172 ordered her substituted as the Successor Judgment Creditor for a judgment originally entered January 4, 2011 in the amount of $548,408.17 and renewed as $1,163,310.92 for the amounts accrued as of December 31, 2018. The transfer documents executed by the predecessor as were filed along with her Proofs of Claim numbers 24-26 in the Chapter 7 case 20-00833-NGH and are incorporated herein by reference.

9. Defendant Tamio Lucien Stehrenberger, one of the debtors in bankruptcy case number 20-00833-NGH, is the younger brother of Plaintiff Michiko, and is or was a Managing Member, Manager, Member, President, officer, partner, director principal, or other person performing a similar function in Star Mountain Enterprises, LLC and he asserted to the Utah court in January 19, 2011 filing that he "played an active role in selling the Star Mountain securities" to the Plaintiff. Tamio earned his business-related degree from Brigham Young University in or before 2006. Tamio is a defendant in Utah state court cases *Overland Associates, et al, v Star Mountain Enterprises, LLC*, Utah Fourth Judicial District related case numbers 080402986, 090401514, 160100092, and 160400620, and is also the judgment debtor in *EAG Investments, LLC v. Tamio Lucien Stehrenberger, et al.*, in the Third Judicial District Court for the State of Utah, case number 100401172, original judgment entered January 4, 2011 in the amount of $548,408.17, and renewed as $1,163,310.92 for the amounts accrued as of December 31, 2018. Defendant Tamio has specified TLS421@gmail.com and michi.court@gmail.com as among his email addresses of record for service in court-related matters.

10. Defendant Anna Christine Stehrenberger is the other debtor in bankruptcy case number 20-00833-NGH, and is the wife or former wife of Tamio Lucien Stehrenberger, with marriage dissolution proceedings filed in Ada County, Idaho during the pendency of the Chapter 7 and this adversary case. Anna is or was a Managing Member, Manager, Member, Vice-President, officer, partner, director, principal, or other person performing a similar function in Star Mountain Enterprises, LLC and she asserted to the Utah court in her January 19, 2011 filing that she "played an active role in selling the Star Mountain securities" to the Plaintiff. Anna has performed risk analysis-related duties with Netco Title and Star Mountain Enterprises, LLC. Anna is a defendant in Utah state court cases *Overland Associates, et al, v Star Mountain Enterprises, LLC*, Utah Fourth Judicial District related case numbers 080402986, 90401514, 160100092, and 160400620.

Defendant Anna has specified Mrs.TLS421@gmail.com and
La_Chica_Anna@hotmail.com are among her email addresses of record for service in
court-related matters.

11. The marital community of debtors Tamio Stehrenberger and Anna Stehrenberger is
comprised of both of their interests and community property during the time of their
marriage.

12. John Doe Defendants 1-100 are parties whose identities are not yet known at this time,
who have transferred assets or property to, or from, the Defendants and/or their various
family members, friends, or shell entities, or are parties who otherwise have an interest,
claim, or an involvement in the property or information related to the bankruptcy case,
the bankruptcy estate, and/or this action.

13. Non-party Star Mountain Enterprises, LLC is an expired Utah entity, Utah Department
of Corporations entity number 6215366-0160 that sold promissory note securities
through its Managers Tamio and Anna to Plaintiff Michiko and other investors Francine
Yeh and Ken Hsieh during a time period including December 23, 2006 through April 23,
2007. Star Mountain Enterprises was organized and registered with the State of Utah on
May 15, 2006 with its filed *Articles of Organization* identifying Tamio and Anna as its
two Managers as of that formation date. The Utah Department of Commerce's
Registered Principal Search results dated April 17, 2009 identify both Tamio and Anna
as Star Mountain Enterprises' two Manages as of that date after the sale dates of each the
promissory note securities. The Fourth Judicial District Court for the State of Utah
entered an August 24, 2017 decision declaring Star Mountain and its Managers and
Members jointly and severally liable for having committed securities fraud and
violations of the Utah Securities Act and awarding statutory damages against Star
Mountain and its Managers and Members. Tamio and Anna caused Star Mountain to file
its Chapter 7 petition in the District of Utah on June 2, 2019 (case no. 19-24015-RKM)
which case was closed on November 13, 2020 and none of Star Mountain's debts
discharged; the automatic stay related to any claims directly or tangentially against Star
Mountain was lifted.

ALLEGATIONS

I. **Defendant's prior judicial admissions filed into the Utah state court case.**

14. Defendants Tamio Stehrenberger, Anna Stehrenberger, Star Mountain Enterprises, and
Taanen, LP filed their September 28, 2016 *Amended Answer* in the Utah state court case
number 160100092 admitting the following paragraphs in Plaintiff's August 15, 2016
*Amended Complaint* (Ex. 1):

¶ 51: "On or about May 15, 2006, Tamio and Anna formed Star Mountain
Enterprises, LLC ('Star Mountain')."

¶ 55: "According to the Utah Department of Commerce's Registered Principal Search . . . Tamio and Anna are identified as [Star Mountain's] only managing members."

¶ 56: "According to [Star Mountain's] Articles of Organization:
> The business . . . purposes for which the Company is organized are . . . to invest and reinvest the assets of the Company in, and to purchase or otherwise buy, acquire, hold, sell, transfer, exchange, invest in, manage, finance, exchange or otherwise dispose of, or realize upon, stocks, bonds, mutual funds, partnership interests, certificates of deposit, commodities, and any other interests in business ventures and other securities and investments of all types and descriptions . . ." (emphasis added)

¶ 60: "Certificates obtained from the Utah Division of Securities Custodian of Records indicate that Defendants [Star Mountain], Tamio, and Anna, have 'never been licensed as a broker-dealer, agent, or investment adviser, [or] investment adviser representative in Utah.'"

¶ 249: "Defendants Tamio, Anna, [and] Star Mountain . . . have never been licensed with the Utah Division of Securities to be able to sell promissory note securities."

¶ 250: "Under Utah Code Ann. § 61-1-3(1): 'It is unlawful for a person to transact business in this state as a[n] . . . agent unless the person is licensed under this chapter.'"

¶ 15: "Tamio did not disclose to Michiko that the State of Utah requires Tamio to have a securities license to be able to lawfully 'pool' the funds of multiple investors."

¶ 67: "Tamio, Anna, and/or [Star Mountain] considered investing in an investment offered by Landmark Venture Capital, LLC ('Landmark')."

¶ 70: "In 2006 Tamio, Anna, and/or [Star Mountain] received written risk disclosures from . . . Landmark related to a new investment offering from Landmark and/or the Bray-Conn entities."

¶ 71: "In these disclosures, Landmark identifies itself as 'high-risk.'"

¶ 72: "Further, Landmark's disclosures indicate a risk of total loss to its investors' money."

¶ 88: "Tamio, Anna, and/or [Star Mountain] also failed to inform Plaintiffs of Landmark's written risk disclosures."

¶ 288: "Utah Code Ann. § 61-1-1 provides that:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly, or indirectly, to:
(1) Employ any device, scheme, or artifice to defraud;
(2) Make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or
(3) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

¶ 304: "Utah Code Ann. § 61-1-22(4)(a) provides:

Every person who directly or indirectly controls a seller or buyer liable under Subsection (1),[1] every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions, every employee of such a seller or buyer who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase are also liable jointly and severally with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that the nonseller or nonpurchaser did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."[2]

¶ 185: "In September 2007, Tamio, Anna, and [Star Mountain] offered by an email written by Tamio to return all of Michiko's $100,000.00 investment to her at once, prior to the June 1, 2008 maturity date on the two April 23, 2007 promissory notes."

¶ 186: "In October 2007, Michiko accepted the offer from Tamio, Anna, and [Star Mountain] to return her $100,000.00 investment, and provided instructions for the financial account into which repayment could be

---

1   Utah Code Ann. § 61-1-22 (1) states: "(a) This Subsection (1) applies to a person who: (i) offers or sells a security in violation of: (A) Subsection 61-1-3(1); (B) Section 61-1-7; (C) Subsection 61-1-17(2); (D) a rule or order under Section 61-1-15, which requires the affirmative approval of sales literature before it is used; or (E) a condition imposed under Subsection 61-1-10(4) or 61-1-11(7); or (ii) offers, sells, or purchases a **security in violation of Subsection 61-1-1(2)**." (emphasis added)

2   This cite to the Utah Securities Act's strict liability provision was cited in the *Amended Complaint,* for the purpose of providing the debtor-defendants with notice in the pleadings of the possible risk of each of them being held jointly and severally liability together with Star Mountain Enterprises under the Utah Securities Act.

made."

¶ 188: "On or about October 17, 2007, an email was sent from Tamio's account stating, in part:

> We won't be refunding your money at this time. We could have offset your funds with incoming funds, but because of the new baby, we won't be focusing on raising funds. If we do get fund in that will complete your request, we will let you know. We'd love nothing more than to refund you your money, but we'd recommend planning on it being refunded on it's [sic] completion date."

¶ 189: "Michiko offered to accept installment payments as long as the unpaid portions were collateralized against tangible property, if Tamio and Anna did not have the full amounts to repay her immediately."

¶ 195: "In March 2008, Michiko requested an official Verification of Deposit of her $100,000.00, which she had been led to believe was held under the control of Tamio, Anna, and [Star Mountain]."

¶ 198: "Michiko demanded that Tamio and Anna repay all principal and accrued interest to her no later than by March 14, 2008.

¶ 199: "Tamio and/or Anna did not repay the $100,000.00 to Michiko on the specified March 14, 2008 due date, again refusing to repay Michiko's $100,000.00 until the June 1, 2008 due date on the promissory notes."

¶ 203: "In June of 2008, Tamio, Anna, and [Star Mountain] ceased making any further payments to all Plaintiffs."

¶ 214-215: "Tamio formally certified to the Securities and Exchange Commission, and to the public at large, that there was no pending litigation against him. During 2013 and 2014, Tamio failed to disclose to the SEC, and to the public at large, his knowledge of the existence of the securities fraud litigation pending against him in Utah County case number 080402986."

15. On January 19, 2011, Tamio and Anna filed into Utah state court case number 080402986 a document titled *Memorandum in Support of Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment, Ex. 4*, and specifically stating that the following facts are "undisputed" by them:

¶ 5: "Tamio was a manager of Star Mountain during the time it sold securities to Michiko and played an active role in selling the securities to Michiko." [*Defts' Answer at ¶ 6; $65,000 Note and $35,000 Note; Articles of Organization; April 17, 2009 Utah Dept. of Commerce Registered*

*Principal Search.*¹]

¶ 6: "Anna was a manager of Star Mountain during the time it sold securities to Michiko and she played an active role in selling the securities to Michiko." [*Defts' Answer at ¶ 6; $65,000 Note and $35,000 Note; Articles of Organization; April 17, 2009 Utah Dept. of Commerce Registered Principal Search.*¹]

¶ 1: "The [Utah] Securities Division never issued any license to Star Mountain, Tamio, or Anna. Neither Star Mountain, Tamio, no Anna ever operated under a license from the [Utah] Securities Division." [*Defts' Answer to Plaintiff's First Amended Complaint at ¶ 85; Ex. 3, Dept. of Commerce Certificates; Star Mountain responses to request for admission {"RFA") nos. 33-36.*]

¶2: "On or about April 23, 2007, Star Mountain sold two promissory notes to Michiko: (1) a $65,000 promissory note and (2) a $35,000 promissory note (collectively, 'Notes)." [*Defts' Answer at ¶¶ 26-27, 29, 35, 37; $65,000 Note and $35,000 Note; Star Mountain responses to RFA nos.1-14.*]

¶ 3: "In exchange for the Notes, Michiko paid a combined $100,000 to Star Mountain. She invested the money with Star Mountain primarily because of the profit she expected to earn from the Notes." [*Defts' Answer at ¶¶ 26-27, 35, 37; Star Mountain's response to RFA nos. 12-14.*]

¶ 8: "On multiple occasions, Michiko tendered the Notes back to defendants, none of whom ever accepted the tender." [*Defts' Answer at ¶ 97*]

¶ 9: "Defendants have not returned to Michiko the $100,000 of money she invested."

16. Defendant Tamio's and Anna's *Answer* filed October 27, 2008 in related Utah state court case number 080402986 admitted the following paragraphs in Plaintiff's September 17, 2008 *Complaint* commencing the first of the related cases:³

¶ 28: "Defendants admit that, sometime in early 2007, Star Mountain offered to pay the interest rate set forth in the promissory notes dated April 23, 2007, the terms of which speak for themselves."

¶ 37: "Defendants admit that, on or about April 23, 2007, Michiko loaned

_____

3   The *Complaint* and *Answer* in the Utah state court case number 080402986 are incorporated herein by reference; and can be filed upon the Court's' request.

funds in the amount of $35,000.00 to Star Mountain, bringing the total amount to $100,000.00."

¶ 40: "Defendants admit that, in certain conversations, Star Mountain indicated that it kept reserves."

¶ 57: "Defendants admit that Star Mountain indicated it would pay the funds on maturity [of the promissory notes]."

¶ 65: "Defendants admit that Star Mountain has not paid certain funds."

17. Defendant Tamio's and Anna's October 2, 2009 *Answer* to Plaintiff's September 9, 2009 *First Amended Complaint* in related Utah state court case number 080402986 admitted the following paragraphs:[4]

¶ 67: "Defendants admit that Tamio accompanied Yeh to a bank and that funds were eventually acquired for a loan."

¶ 69: "Defendants admit that, from approximately October 2005 to December 2006, funds in the approximate amount of $750 were sent to Yeh."

¶ 71: "Defendants admit that, in or about December 2006, Yeh loaned an additional $3,500."

¶ 73: "Defendants admit that, or on about January 25, 2007, Star Mountain executed a promissory note in the amount of $100,000.00."

¶ 74: "Defendants admit that Yeh is a not a native English speaker."

¶ 75: "Defendants admit that, on or about February 23, 2007, Star Mountain executed a promissory note int he amount of $5,000.00."

¶ 77: "Defendants admit that, at certain times in 3007 and 2008, funds in the approximate amount of $3,070 were sent to Yeh."

¶ 79: "Defendants admit that Star Mountain did not pay certain amounts."

¶ 82: "Defendants admit that certain funds were placed with Bray-Conn."

¶ 83: "Defendants admit that, in or about November 2008, a meeting was held with a bishop. Defendants further admit that, after the meeting, Yeh

---

4   The *First Amended Complaint* and *Answer* to the *First Amended Complaint* in the Utah state court case number 080402986 are incorporated herein by reference, and can filed upon the Court's' request.

was given a check for $1,000."

¶ 85: "Defendants admit that Tamio and Anna moved the automotive business to Florida."

¶ 86: "Defendants admit that Star Mountain indicated it could not make payments."

## II.   The Utah state court's determination on joint and several liability for securities fraud and violations of the Utah Securities Act and award under the statutory damages formula

18. On or about May 15, 2006, Tamio Stehrenberger and Anna Stehrenberger formed Star Mountain Enterprises, LLC by filing a copy of Star Mountain's *Articles of Organization* with the State of Utah. Ex. 2, *Star Mountain documents.*

19. Star Mountain's *Articles of Organization* identify Tamio Stehrenberger and Anna Stehrenberger as its Managers on the May 15, 2006 date of its formation. Ex. 2.

20. For tax year 2007, Star Mountain Enterprises, LLC filed an IRS partnership tax return and identified Tamio Stehrenberger and Anna Stehrenberger as Star Mountain's two Partners. Ex. 2.

21. Star Mountain Enterprises, LLC is a limited liability company, and as an entity comprised of two or more partners, is also a partnership.

22. On August 24, 2017, the Utah state court in the matter of *Overland Associates v. Star Mountain Enterprises*, case 16010092, determined that five (5) promissory notes ("Notes") issued by Star Mountain Enterprises, LLC, meet the definition of "securities" under Utah Code Ann. § 61-1-13(1)(ee) and are governed by the Utah Securities Act, Utah Code Ann§ 61-1-1, *et seq..* Ex. 3 at ¶ 1.

23. The Utah state court also stated in its August 24, 2017 order, Ex. 3 at ¶ 3, 6-7:

¶ 3: [T]he Court hereby declares that defendant[] Star Mountain Enterprises, LLC [has] violated the Utah Uniform Securities Act, Utah Code § 61-1-1, *et seq.*, including the Utah Securities Act's "anti-fraud" provision pertaining to Defendant [] Star Mountain Enterprises, LLC's omission of material facts made in connection with the sale of the securities in this case, in the manner of failing to disclose the "high-risk" warnings of the Landmark Venture Capital, LLC investment offering in connection with the sale of the Star Mountain-issued promissory notes [filed along with Plaintiff's August 15, 2016 *Second Amended Adversary Complaint* in that case as Ex. 4-8].

¶ 6: [T]he Court concludes that Defendants Tamio Stehrenberger and Anna Stehrenberger are specifically identified by name as the two Managers of Star Mountain Enterprises, LLC during the time period relevant to this case []

¶ 7: [T]he two Managers of Star Mountain Enterprises, LLC are persons who are jointly and severally liable together with Defendant Star Mountain Enterprises, LLC for the Utah Securities Act violations committed and the money owed.

24. In its August 24, 2017 order, the Utah state court awarded Plaintiff Michiko treble damages, interest, fees, and costs against Star Mountain Enterprises and its jointly and severally liable Managers under the Utah Securities Act's statutory damages formula (Utah Code Ann. § 61-1-22(1) and (2)). Ex. 3 ¶ 5.

25. The Utah state court's August 24, 2017 deemed admitted *Amended Complaint* ¶ 303 regarding the "reckless and intentional" elements were met for the purpose of establishing treble damages for the joint and several liability of Star Mountain and its Managers and Members. Ex. 3.

26. The Utah state court's August 24, 2017 findings and conclusions, Ex. 3 ¶ 5, 8-10 awarded to Plaintiff Michiko Stehrenberger statutory damages, including treble damages, under the Utah Securities Act's statutory damages formula, plus other statutorily-allowed amounts traceable to the securities fraud and Securities Act violations based upon the Star Mountain-issued promissory notes, as were attached as her *Exhibits 4-8* to her Utah state court *Amended Complaint*.

27. The Utah state court's August 24, 2017 findings and conclusions, Ex. 3, state:

¶ 5: . . . Plaintiff Michiko Stehrenberger is to be awarded Default Judgment, of an amount to be determined separately . . . as authorized under the statutory formula set forth in the Utah Uniform Securities Act, Utah Code Ann. § 61-1-22, of: [1] treble damages to be calculated upon the total amount paid upon the promissory note securities filed with Plaintiff's *Amended Complaint* as *Exhibits 4-8;* [2] plus pre-judgment interest accrued as of the calendar date of entry of judgment; [3] plus attorney fees and costs inclusive of those incurred in this case and in the related Provo District case, number 080402986; [4] minus reductions for amounts repaid on the securities - the accounting of such damages and dollar amounts to be determined in separate proceedings under Rule 55(b) (2);

¶ 8: [...P]ost-judgment interest on the total judgment shall accrue daily at the statutory rate of 12% per annum (1% per month) under Utah Code Ann. [§] 61-1-22(c)(ii)(B), for which these . . . defaulted Defendants,

along with their Managers of public record are likewise jointly and severally liable for the securities violations committed and for money owed under Utah Code Ann. §61-1-22(4)(a), as pled in the Amended Complaint at ¶ 281-301 and § 303-305;

¶ 9: "The accounting of all such dollar amounts and damages, and the identity of any additional liable Managers and Partner(s) of the defaulted entity ¶ 9: "The accounting of all such dollar amounts and damages, and the identity of any additional liable Managers and Partner(s) of the defaulted entity defendants Star Mountain Enterprises, LLC and Taanen, LP, are to be determined in separate proceedings under Rule 55(b)(2); and

¶ 10: "Upon appropriate application to the Court, Plaintiff Michiko Stehrenberger shall be entitled to further damages, fee[s], costs and any other appropriate relief related to any appeal or enforcement and collection of this Judgment, as permitted by law or contract.

28. The Utah state court stated in its order, Ex. 3 ¶ 9, that the final dollar amount of damages would be determined by separate proceedings under Utah R. Civ. P. 55(b)(2) and that:

¶ 9: "Plaintiff Michiko Stehrenberger shall be entitled to further damages, fee[s], cost and any other appropriate relief related to any appeal or enforcement and collection of this Judgment, as permitted by law or contract."

29. The Utah state court certified its August 24, 2017 decision as a final order in accordance with Utah R. Civ., P. 54(b), Ex. 1 ¶ 11, stating:

In accordance with Utah R. Civ. P. 54(b), the Court expressly determines that there is no just reason for delay in the entry of judgment, in that the Plaintiff's claims against the defaulted defendants (including the totality of claims against Star Mountain Enterprises on the five (5) Star Mountain-issued promissory notes on file with the court August 15, 2016 as *Plaintiffs' Amended Complaint* as *Exhibits 4-8*) are claims separate and distinct from the remaining claims against the remaining defendants, and the prompt entry of judgment against these defaulted defendants therefore best serves the interest of justice by allowing the Plaintiff to present her damages in supplemental proceedings under Utah R. Civ. P. 55(b)(2) and the Court to derive a final sum certain as to these separate claims, thereby allowing the separate claims against the remaining participating defendants to be separately adjudicated.

30. The Utah state court's August 24, 2017 decision determining the joint and several liability of Star Mountain Enterprises, LLC and its Managers, Ex. 3 ¶ 7, was entered as a final order under Utah R. Civ. P. 54(b), and none of the defendants appealed.

31. The Utah state court's August 24, 2017 decision determining the joint and several liability of Star Mountain Enterprises, LLC and its Managers under Utah Code Ann. § 61-1-22(4)(a) was entered as a final order under Utah R. Civ. P. 54(b), and none of the defendants appealed within 30 days.

32. The Utah state court's August 24, 2017 decision determining that Tamio Stehrenberger is a Manager of Star Mountain Enterprises, LLC, Ex. 3 ¶ 6, was entered as a final order under Utah R. Civ. P. 54(b), and Tamio did not appeal that decision within 30 days.

33. The Utah state court's August 24, 2017 decision determining that Anna Stehrenberger is a Manager of Star Mountain Enterprises, LLC, Ex. 3 ¶ 6, was entered as a final order under Utah R. Civ. P. 54(b), and Anna did not appeal that decision within 30 days.

34. The Utah state court's August 24, 2017 decision awarding damages under the Utah Securities Act's statutory damages formula, including treble damages, Ex. 3 ¶ 5, was entered as a final order under Utah R. Civ. P. 54(b), and none of the defendants appealed within 30 days.

35. The Utah state court titled its August 24, 2017 decision as "findings and conclusions" and also specifically refers to this August 24, 2017 decision as a "Judgment," Ex. 2 ¶ 10, and specifies that "the Court expressly determines that there is no just reason for delay in the entry of judgment," Ex. 3, ¶ 11.

36. The Utah state court entered a minute ruling on November 28, 2018 in case 160100092 replacing references to Tamio Stehrenberger and Anna Stehrenberger as the jointly and severally liable parties and replaced the language with the "Managers" and "Members" of Star Mountain as the jointly and severally liable parties. Ex. 3, *minute ruling*.

37. The Utah state court's November 28, 2018 minute ruling states at (4.12) that ""The court notes the individual defendants need to be held responsible." Ex. 3, *minute ruling*.

38. The Utah state court clerk entered the court's November 28, 2018 minute ruling on the same date. Ex. 3, *minute ruling*.

39. Defendant Tamio did not cause Star Mountain to appeal within 180 days the Utah state court's November 28, 2018 decision ordering the joint and several liability of Star Mountain Enterprises and its "Managers" and "Members."

40. Defendant Anna did not cause Star Mountain to appeal within 180 days the Utah state court's November 28, 2018 decision ordering the joint and several liability of Star Mountain Enterprises and its "Managers" and "Members."

41. None of the defendants appealed within 180 days the Utah state court's November 28, 2018 minute ruling ordering the joint and several liability of Star Mountain Enterprises and its "Managers" and "Members."

42. Plaintiff Michiko's securities-related claims against Defendants Tamio Stehrenberger and Anna Stehrenberger are based in part upon five (5) promissory notes ("Notes") for which Tamio signed as "President" on behalf of "Borrower" Star Mountain Enterprises, LLC. Ex. 4, *Star Mountain promissory notes; Tamio's and Anna's admissions to involvement.*

43. Defendant Tamio Stehrenberger admitted in the Utah state court case or its related cases that the Star Mountain Enterprises promissory notes are "securities."

44. Defendant Anna Stehrenberger admitted in the Utah state court case or its related cases that the Star Mountain Enterprises promissory notes are "securities."

45. The five Star Mountain Notes specify that each of the Notes "shall be governed by and construed in accordance with the laws of the State of Utah." Ex. 4 ("Lender's Rights")

46. Defendant Tamio caused to be filed into Utah state court case number 080402986 a statement dated January 19, 2011, Ex. 4 ¶ 5, stating:

> Tamio was a manager of Star Mountain during the time it sold securities to Michiko, and he played an active role in selling the securities to Michiko.

47. Defendant Anna caused to be filed into Utah state court case number 080402986 a statement dated January 19, 2011, Ex. 4 ¶ 6, stating:

> Anna was a manager of Star Mountain during the time it sold securities to Michiko, and she played an active role in selling the securities to Michiko.

48. Defendants Tamio and Anna are listed as the two Managers of Star Mountain based upon Star Mountain's *Articles of Organization,* Ex. 2, as filed with the Utah Department of Commerce on May 15, 2006, prior to the relevant December 23, 2006-April 23, 2007 sale dates of the promissory note securities.

49. Star Mountain Enterprises, LLC, as an entity, can only act through natural persons authorized to act on its behalf, such as its Managers or Members.

50. The Utah Department of Commerce's Registered Principal Search results identify Tamio Stehrenberger as one of the "Managers" of Star Mountain Enterprises as of April 17, 2009. Ex. 2.

51. The Utah Department of Commerce's Registered Principal Search results identify Anna Stehrenberger as one of the "Managers" of Star Mountain Enterprises as of April 17, 2009. Ex. 2.

52. The Utah Department of Commerce's Registered Principal Search results identify Defendants Tamio and Anna as the Managers of Star Mountain on April 17, 2009, a date

after the December 23, 2006-April 23, 2007 sale dates of the promissory note securities. Ex. 2.

53. The Chapter 7 petition of Star Mountain Enterprises, LLC filed in the U.S. Bankruptcy Court for the District of Utah, case number 19-24015-RKM, as signed by Tamio Stehrenberger, identifies Tamio as still being Star Mountain's Manager as of June 2, 2019.

54. Defendant Tamio signed each of the promissory notes on behalf of Star Mountain identifying Tamio as the "President" of Star Mountain. Ex. 4.

55. Defendant Anna signed Star Mountain checks on its behalf, and sent communications identifying herself as the "Vice President" of Star Mountain to Francine Yeh. Ex. 2.

56. Defendant Anna functioned as an officer of Star Mountain Enterprises, LLC in connection with raising money from investors on the Star Mountain promissory notes. Ex. 2.

57. Star Mountain had investors in addition to Plaintiff Michiko, Francine Yeh, and Ken Hsieh.

58. In or about March 2008, the Utah Division of Securities inquired with Star Mountain regarding securities activities and requested a list identifying each of Star Mountain's investors. Ex. 2, *Utah Division of Securities letter*.

59. In or about early 2008, Defendant Tamio caused Star Mountain to respond to the Utah Division of Securities's inquiry and provide to a list of Star Mountain's investors, including those investors in addition to Plaintiff Michiko, Francine Yeh, and Ken Hsieh. Ex. 2, *letter of attorney Luc Nguyen to Utah Division of Securities*.

60. The Utah Division of Securities opened an investigative file on Defendant Tamio and Star Mountain Enterprises, LLC.

61. The Federal Bureau of Investigation took possession of the Utah Division of Securities investigation file related to Star Mountain Enterprises, LLC and Defendant Tamio.

62. As President of Star Mountain, Defendant Tamio functioned in a role to that of an officer, partner, or director of Star Mountain Enterprises, LLC during the time Star Mountain raised money from investors through the Star Mountain promissory notes.

63. As Vice President of Star Mountain, Defendant Anna functioned in a role to that of an officer, partner, or director of Star Mountain Enterprises, LLC during the time Star Mountain raised money from investors through the Star Mountain promissory notes.

64. Defendant Tamio had control over the Star Mountain's activities in the manner of selling

the Star Mountain-issued promissory notes to Plaintiff Michiko and other investors Francine Yeh and Ken Hsieh.

65. Defendant Anna had control over the Star Mountain's activities in the manner of selling the Star Mountain-issued promissory notes to Plaintiff Michiko and other investors Francine Yeh and Ken Hsieh.

66. Defendant Tamio performed "risk management" duties for Star Mountain's investments.

67. Defendant Anna performed "risk management" duties for Star Mountain's investments.

68. As President and Manager of Star Mountain, Defendant Tamio materially aided in the sale of the Star Mountain promissory notes to Plaintiff Michiko, Francine Yeh, and Ken Hsieh.

69. Defendant Tamio materially aided in the sale of the Star Mountain promissory notes to Plaintiff Michiko, Francine Yeh, and Ken Hsieh by, among other things, describing details of the investment such as the type of investment, the risk level of the investment, the guarantee behind the investment, the method of collateral to protect the investment.

70. Defendant Tamio materially aided in the sale of the Star Mountain promissory notes to Plaintiff Michiko, Francine Yeh, and Ken Hsieh by, among other things, describing details of the investment to his mother, Aichu Yeh, such as the type of investment, the risk level of the investment, the guarantee behind the investment, the method of collateral to protect the investment, and being aware that Aichu Yeh would convey the information about the investment to Plaintiff Michiko, Francine Yeh, and Ken Hsieh.

71. Defendant Anna materially aided in the sale of the Star Mountain promissory notes to Plaintiff Michiko, Francine Yeh, and Ken Hsieh by, among other things, describing details of the investment such as the type of investment, the risk level of the investment, the guarantee behind the investment, the method of collateral to protect the investment.

72. Defendant Anna materially aided in the sale of the Star Mountain promissory notes to Plaintiff Michiko, Francine Yeh, and Ken Hsieh by, among other things, describing details of the investment to his mother, Aichu Yeh, such as the type of investment, the risk level of the investment, the guarantee behind the investment, the method of collateral to protect the investment, and being aware that Aichu Yeh would convey the information about the investment to Plaintiff Michiko, Francine Yeh, and Ken Hsieh.

73. As Vice President and Manager of Star Mountain, Defendant Anna materially aided in the sale of the Star Mountain promissory notes to Plaintiff Michiko, Francine Yeh, and Ken Hsieh.

74. The Star Mountain Notes, Ex. 4, specify remedies against the Borrower in bankruptcy proceedings, including attorney fees and costs, as follow:

Lenders Rights: Upon default, or if Lender in good faith deems itself unsecured, Lender may declare the entire unpaid principal balance and accrued interest immediately due, after notice to the Borrower, and Borrower will then pay that amount. Upon default, or if this Note is not paid at maturity, Lender, at its option, may increase the interest rate of this Note 2.000 percentage points. The interest rate shall not exceed the maximum rate permitted by applicable law. Lender may pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and legal expenses, whether or not there is a lawsuit, including attorneys and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appearances, and any anticipated post-judgment collection services. Borrower also will pay any court costs. If there is a lawsuit, Borrower and Lender agree to submit to the jurisdiction of the courts in Utah County, State of Utah. This Note shall be governed and construed in accordance with the laws of the State of Utah.

75. The December 23, 2006 promissory note is between Star Mountain (identified as "Borrower") and Francine Yeh (identified as "Lender") with a dollar amount of $53,500.00.. Ex. 4.

76. The December 23, 2006 promissory note between Star Mountain and Francine Yeh is a "Note" within the definition of a "security" under Utah Code Ann. § 61-1-13(1)(ee)(i) (A)("'Security' means a: (A) note;  . . .").[5]

77. The December 23, 2006 promissory note between Star Mountain and Francine Yeh is an "evidence of indebtedness" within the definition of a "security" under Utah Code Ann. § 61-1-13(1)(ee)(i)(F)("'Security' means a: (F) evidence of indebtedness;  . . .").

78. The December 23, 2006 promissory note between Star Mountain and Francine Yeh is an "investment contract" within the definition of a "security" under Utah Code Ann. § 61-1-13(1)(ee)(i)(K)("'Security' means a: (F) investment contract;  . . .").

79. Investor Francine Yeh paid $53,500.00 in U.S. currency to Star Mountain on or about December 23, 2006 in exchange for the promises contained in the December 23, 2006 Note. Ex. 4; *Declaration of Francine Yeh* at ¶ 9, 11-12, 14, incorporated herein by reference.

80. Investor Francine provided or invested additional money after signing the December 23, 2006 Note, for which Defendant Tamio provided Francine with an additional Note on January 25, 2007.

---

5   For allegations pertaining to definitions under the Utah Uniform Securities Act, please see its definitions section, retrieved September 25, 2021 from: https://le.utah.gov/xcode/Title61/Chapter1/61-1-S13.html?v=C61-1-S13_2020051220200512

81. Star Mountain failed to repay investor Francine Yeh all of the amounts under the terms of the December 23, 2006 Note and has not paid it as of the September 11, 2020 bankruptcy petition date or the date of this *Second Amended Complaint*.

82. The amount of $53,500.00 multiplied times three is $160,500.00.

83. The rate of twelve-percent (12%) interest on $160,500.00 is $19,260.00 per year, and when divided by 365 days in a year, is $52.767 per day.

84. The number of days between December 23, 2006 and September 11, 2020 (inclusive of the last day) is 5,012 days.

85. 5,012 days multiplied times $52.767 daily interest equals $264,468.20 for the period of December 23, 2006 through September 11, 2020.

86. The amount of principal $160,500.00 plus 12% annual interest from December 23, 2006 through September 11, 2020, inclusive of the last day, is $424,968.82.

87. The January 25, 2007 Note is between Star Mountain (identified as "Borrower") and Francine Yeh (identified as "Lender") and is related to Francine providing or investing an additional $100,000.00 in U.S. currency with Star Mountain on or before January 25, 2007. Ex. 4.

88. Investor Francine Yeh paid $100,000.00 in U.S. currency to Star Mountain on or before January 25, 2007, 2006 in exchange for the promises contained in the Note by Star Mountain through its President, Defendant Tamio.

89. The January 25, 2007 promissory note between Star Mountain and Francine Yeh is a "Note" within the definition of a "security" under Utah Code Ann. § 61-1-13(1)(ee)(i) (A)("'Security' means a: (A) note; . . .").

90. The January 25, 2007 promissory note between Star Mountain and Francine Yeh is an "evidence of indebtedness" within the definition of a "security" under Utah Code Ann. § 61-1-13(1)(ee)(i)(F).("'Security' means a: (F) evidence of indebtedness; . . .").

91. The January 25, 2007 promissory note between Star Mountain and Francine Yeh is an "investment contract" within the definition of a "security" under Utah Code Ann. § 61-1-13(1)(ee)(i)(K)("'Security' means a: (F) investment contract; . . .").

92. Star Mountain failed to repay investor Francine Yeh all of the amounts under the terms of the January 25, 2007 Note and has not paid it as of the September 11, 2021 bankruptcy petition date or the date of this *Second Amended Complaint*.

93. The amount of $100,00.00 multiplied times three is $300,000.00.

94. The rate of twelve-percent (12%) interest on $300,000.00 is $36,000.00 per year, and when divided by 365 days in a year, is $98.63 per day.

95. The number of days between January 25, 2007 and September 11, 2020 (inclusive of the last day) is 4,979 days.

96. 4,979 days multiplied times $98.63 daily interest is $491,079.45 for the period of January 25, 2007 through September 11, 2020.

97. The amount of principal $300,000.00 plus 12% annual interest from January, 25, 2007 through September 11, 2020, inclusive of the last day, is $791,079.45.

98. Between December 23, 2006 and June 30, 2008, Star Mountain paid investor Francine Yeh a total of $28,405.00 based on the terms of the December 23, 2006 and January 25, 2007 Notes, Ex. 4. *Declaration of Francine Yeh* at ¶ 23-24, incorporated herein by reference.

99. Defendant Tamio put forth no evidence in the Utah state court case prior to September 11, 2020 to establish that Star Mountain or he personally ever paid Francine Yeh more than $28,405.00 based upon the terms of the Star Mountain December 23, 2006 and January 25, 2007 Notes.

100. Defendant Anna put forth no evidence in the Utah state court case prior to September 11, 2020 to establish that Star Mountain or she personally ever paid Francine Yeh more than $28,405.00 based upon the terms of the Star Mountain December 23, 2006 and January 25, 2007 Notes.

101. Defendant Tamio has no other admissible evidence to establish that either Star Mountain or he personally ever paid Francine Yeh more than $28,405.00 based upon the terms of the December 23, 2006 and January 25, 2007 Notes.

102. Defendant Anna has no other admissible evidence to establish that either Star Mountain or she personally ever paid Francine Yeh more than $28,405.00 based upon the terms of the December 23, 2006 and January 25, 2007 Notes.

103. Star Mountain failed to repay Francine"s $153,500.00 investment by June 30, 2008.

104. As of the date of this filing, Star Mountain has not repaid Francine or Michiko all of the investment money related to the December 23, 2006 and January 25, 2007 Notes.

105. The February 25, 2007 Note between Star Mountain (identified as "Borrower") and Ken Hsieh (identified as "Lender") states a $5,000.00 face value, Ex. 4, but Ken Hsieh provided or invested additional money to Star Mountain after signing the Note for a combined total of $17,000.00. *Declaration of Ken Hsieh* at ¶ 5, incorporated herein by reference.

106.    The February 23, 2007 promissory note between Star Mountain and Ken Hsieh is a "Note" within the definition of a "security" under Utah Code Ann. § 61-1-13(1)(ee)(i)(A)("'Security' means a: (A) note; . . .").

107.    The February 23, 2007 promissory note between Star Mountain and Ken Hsieh is an "evidence of indebtedness" within the definition of a "security" under Utah Code Ann. § 61-1-13(1)(ee)(i)(F)("'Security' means a: (F) evidence of indebtedness; . . .").

108.    The February 23, 2006 promissory note between Star Mountain and Ken Hsieh is an "investment contract" within the definition of a "security" under Utah Code Ann. § 61-1-13(1)(ee)(i)(K)("'Security' means a: (F) investment contract; . . .").

109.    Defendant Tamio did not provide investor Ken Hsieh with an updated Note to reflect the total $17,000.00 Ken provided to Star Mountain.

110.    Defendant Anna did not provide investor Ken Hsieh with an updated Note to reflect the total $17,000.00 Ken provided to Star Mountain.

111.    Defendant Tamio does not dispute that investor Ken Hsieh provided or invested a total of $17,000 through Star Mountain on or after February 23, 2007.

112.    Defendant Anna does not dispute that investor Ken Hsieh provided or invested a total of $17,000 through Star Mountain on or after February 23, 2007.

113.    Between February 23, 2006 and June 30, 2008, Star Mountain paid investor Ken Hsieh a total of $3,825.00 based on the terms of the February 23, 2007 Note, Ex. 4. *Declaration of Ken Hsieh* at ¶ 8-9, incorporated herein by reference.

114.    Defendant Tamio put forth no evidence in the Utah state court case prior to September 11, 2020 to establish that either Star Mountain or he personally ever paid Ken Yeh more than $3,825.00 based upon the terms of the February 23, 2007 Note.

115.    Defendant Anna put forth no evidence in the Utah state court case prior to September 11, 2020 to establish that either Star Mountain or she ever paid Ken Yeh more than $3,825.00 based upon the terms of the February 23, 2007 Note.

116.    Defendant Tamio has no other admissible evidence to establish that Star Mountain or he personally ever paid Ken Hsieh more than $3,825.00 based upon the terms of the February 23, 2007 Note.

117.    Defendant Anna has no other admissible evidence to establish that Star Mountain or she ever paid Ken Hsieh more than $3,825.00 based upon the terms of the February 23, 2007 Note.

118. Star Mountain failed to repay Ken's investment related to the February 23, 2007 Note by June 30, 2008.

119. The amount of $17,000.00 multiplied times three is $51,000.00.

120. The rate of twelve-percent (12%) interest on $51,000.00 is $6,120.00 per year, and when divided by 365 days in a year, is $16.77 per day.

121. The number of days between February 23, 2006 and September 11, 2020 (inclusive of the last day) is 4,952 days.

122. 4,952 days multiplied times $16.77 daily interest equals $82,997.26 for the period of February 23, 2006 through September 11, 2020.

123. The amount of principal $51,000.00 plus 12% annual interest from February 23, 2006 through September 11, 2020, inclusive of the last day, is $133,997.26.

124. As of the date of this filing, Star Mountain has not repaid to Ken or Michiko all of the investment money related to the February 23, 2007 Note.

125. The first April 23, 2007 is between Star Mountain (identified as "Borrower") and Plaintiff Michiko (identified as "Lender") providing or investing $35,000.00 through Star Mountain. Ex. 4.

126. The second April 23, 2007 is between Star Mountain (identified as "Borrower") and Plaintiff Michiko (identified as "Lender") providing or investing $35,000.00 through Star Mountain. Ex. 4.

127. The two April 23, 2007 promissory note between Star Mountain and Michiko Stehrenberger are "Notes" within the definition of a "security" under Utah Code Ann. § 61-1-13(1)(ee)(i)(A)("'Security' means a: (A) note; . . .").

128. The two April 23, 2007 promissory notes between Star Mountain and Michiko Stehrenberger are "evidence of indebtedness" within the definition of a "security" under Utah Code Ann. § 61-1-13(1)(ee)(i)(F)("'Security' means a: (F) evidence of indebtedness; . . .").

129. The two April 23, 2007 promissory note between Star Mountain and Michiko Stehrenberger are "investment contracts" within the definition of a "security" under Utah Code Ann. § 61-1-13(1)(ee)(i)(K)("'Security' means a: (F) investment contract; . . .").

130. Between April 23, 2007 and June 30, 2008, Star Mountain paid Plaintiff Michiko a total of $25,300.00 based on the terms of the two April 23, 2007 and Notes.], Ex. 3. *Declaration of Michiko Stehrenberger,* incorporated herein by reference.

131.  Star Mountain failed to repay Plaintiff Michiko all of the amounts under the terms of the two April 23, 2007 Notes.

132.  The amount of $100,00.00 multiplied times three is $300,000.00.

133.  The rate of twelve-percent (12%) interest on $300,000.00 is $36,000.00 per year, and when divided by 365 days in a year, is $98.63 per day.

134.  The number of days between April 23, 2007 and September 11, 2020 (inclusive of the last day) is 4,891 days.

135.  4,891 days multiplied times $98.63 daily interest is $482,400.00 for the period of April 23, 2007 through September 11, 2020.

136.  The amount of principal $300,000.00 plus 12% annual interest from April 23, 2007 through September 11, 2020, inclusive of the last day, is $782,400.00.

137.  The $24,300.00 amount paid by Star Mountain to Plaintiff Michiko is related only to the two April 23, 2007 Notes between Star Mountain and Michiko, and does not include amounts previously invested or paid under a different agreement (the Holding Account Agreement).

138.  Defendant Tamio put forth no evidence in the Utah state court case prior to September 11, 2020 to establish that either Star Mountain or he personally ever paid Plaintiff Michiko more than $24,300.00 based upon the terms of the two April 23, 2007 Notes.

139.  Defendant Anna put forth no evidence in the Utah state court case prior to September 11, 2020 to establish that either Star Mountain or she personally ever paid Plaintiff Michiko more than $24,300.00 based upon the terms of the two April 23, 2007 Notes.

140.  Defendant Tamio has no other evidence to establish that either Star Mountain or he personally ever paid Plaintiff Michiko more than $24,300.00 based upon the terms of the two April 23, 2007 Notes.

141.  Defendant Anna has no other evidence to establish that either Star Mountain or she ever personally paid Plaintiff Michiko more than $24,300.00 based upon the terms of the two April 23, 2007 Notes.

142.  Star Mountain failed to repay Plaintiff Michiko's $100,000.00 investment by June 30, 2008.

143.  According to documents filed by Star Mountain with the Internal Revenue Service, Star Mountain paid to Aichu Yeh (Plaintiff Michiko's and Defendant Tamio's mother) at least $10,530.00 during tax year 2007.

144. According to documents filed by Star Mountain with the Internal Revenue Service, Star Mountain paid to Pamela E. (Plaintiff Michiko's and Defendant Tamio's stepmother at the time) at least $10,530.00 during tax year 2007.

145. According to documents filed by Star Mountain with the Internal Revenue Service, Star Mountain paid to Stan Lott (Defendant Anna's father) at least $16,850.00 during tax year 2007.

146. According to documents filed by Star Mountain with the Internal Revenue Service, Star Mountain paid to an individual identified as Man-Ying C. at least $6,000.00 during tax year 2007.

147. As of the date of this filing, Star Mountain has not repaid to Francine Yeh the entirety of her $153,500.00 investment related to the December 23, 2006 and January 25, 2007 Notes.

148. As of the date of this filing, Star Mountain has not repaid to Ken Hsieh the entirety of his $17,000.00 investment related to the February23, 2007 Note.

149. As of the date of this filing, Star Mountain has not repaid to Plaintiff Michiko the entirety of her $100,000.00 investment related to the two April 23, 2007 Notes.

150. In or about November 2016, Plaintiff Michiko already had or had already received the transfer of all right, title, and interest in or related to the five (5) Star Mountain promissory notes related to herself, investor Francine Yeh, and Ken Hsieh.

151. Defendant Tamio has no evidence to dispute that Plaintiff Michiko is the transferee of all right, title and interest in or related to to promissory notes executed between Defendant Tamio and investor Francine Yeh and Ken Hsieh.

152. Defendant Anna has no evidence to dispute that Plaintiff Michiko is the transferee of all right, title and interest in or related to to promissory notes executed between Defendant Tamio and investor Francine Yeh and Ken Hsieh.

153. Defendant Tamio has no evidence to dispute that Plaintiff Michiko received all right, title, and interest to the five (5) Star Mountain promissory notes.

154. Defendant Anna has no evidence to dispute that Plaintiff Michiko received all right, title, and interest to the five (5) Star Mountain promissory notes.

155. Defendant Anna has no evidence to dispute that Plaintiff Michiko is the transferee of all right, title and interest in or related to to promissory notes executed between Defendant Tamio and investor Francine Yeh and Ken Hsieh.

156. Prior to commencing the Utah state court lawsuit, Plaintiff Michiko tendered the

securities back to the Star Mountain and the Defendants, none of whom accepted the tender or refunded her investment.

157. In or about 2010, Plaintiff Michiko against tendered the Star Mountain securities back to Star Mountain and the Defendants, none of whom accepted the tender or refunded her investment.

158. In May 2017, Plaintiff Michiko tendered the five (5) Star Mountain promissory note securities back to the Defendants, none of whom accepted the tender or refunded the investment.

159. As of the date of this filing, Star Mountain has not paid to Plaintiff Michiko (as transferee of all right, title, and interest on certain of the Notes) the entirety of the amounts related to the December 23, 2006, January 25, 2007, February 23, 2007, and two April 23, 2007 Notes.

160. The combined principal amount invested on all five (5) Star Mountain promissory notes is $270,500.00 (comprised of the December 23, 2006 Note for $53,500.00; the January 25, 2007 Note for $100,000.00; the February 23, 2007 Note for $17,000.00; and the two April 23, 2007 Notes for $100,000.00).

161. The trebled amount awarded under the Utah state court's August 24, 2017, when applying the steps of statutory damages formula under Utah Code Ann. § 61-1-22(1) and (2) as ($270,500.00 x 3, equals $811,500.00.

162. Principal and interest for each of the Notes accrued through the September 11, 2020 petition date is as follows:

| | |
|---|---|
| December 23, 2007 Note= | $424,968.82 |
| January 25, 2007 Note = | $791,079.45 |
| February 23, 2007 Note = | $133,997.26 |
| Two April 23, 2007 Notes = | $782,400.00 |
| Total principal and interest through 9/11/2020 | $2,132,445.53 |

163. The total attorney fees incurred by Plaintiff Michiko through the September 11, 2020 petition date was $70,649.00 (this includes a $1,500.00 credit to Defendants for attorney fee sanctions paid in 2015).

164. The total costs incurred by Plaintiff Michiko through the September 11, 2020 petition date was $9,783.73.

165. The amounts credited to Defendants under the statutory damages formula payments Star Mountain made on each of the five (5) Notes is as follows:

| | |
|---|---|
| December 23, 2006 and January 25, 2007 Notes combined = | $28,405.00 |
| February 23, 2007 Note = | $3,825.00 |
| Two April 23, 2007 Notes combined = | $25,300.00 |
| Total payments on Notes credited to Defendants = | $57,530.00 |

166. Based upon the statutory damages formula steps within Utah Code Ann. § 61-1-22(1) and (2), the total combined principal, treble, and interest amounts accrued as of the debtors' September 11, 2020 petition date was = $2,155,348.26.

167. The Utah state court's August 24, 2017 decision awarded 12% post-judgment interest.

168. Other authority and provisions of the Utah Securities Act and the Bankruptcy Code may allow for post-petition interest, fees, costs, and other recovery amounts.

169. For the purpose of deriving daily interest after the September 11, 2020 petition date, the combined total of all daily interest rates on the five (5) Star Mountain Notes, at the statutory 12% per annum interest rate, is $266.79 per day (based upon the daily interest rate for the December 23, 2006 Note at $98.63 per day, January 25, 2007 Note at $52.77 per day, plus the February 23, 2007 Note at $16.77 per day, the two April 23, 2007 Notes at $98.63 per day).

**III.    Defendants' intentional failure to disclose the "high-risk" written warnings and other concealment of material facts related to the securities investments.**

170. Defendant Tamio is or was a Manager of Star Mountain and admitted he "played an active role in selling the Star Mountain securities" to Plaintiff. Ex. 4, *January 19, 2011 filing into Utah state court case number 080402986.*

171. Defendant Anna is or was a Manager of Star Mountain and admitted she "played an active role in selling the Star Mountain securities" to Plaintiff. Ex. 4, *January 19, 2011 filing into Utah state court case number 080402986.*

172. Defendants Tamio and Anna paid approximately $7,500.00 to attend an investment training seminar as students of Claud Rick Koerber, who ran the Founders Capital and FranklinSquires family of investment companies.

173. Koerber had previously been sanctioned by the Wyoming securities regulator for unlawfully selling securities without a license, and Koerber was required to repay all the investor's money; due to the sanction, Koerber would never be eligible to obtain a securities license in his own name.

174. Instead, Koerber's plan was to source other individuals to raise the investment money for himself and his companies as "feeder funds."

175. Koerber's scheme involved having his associates and investing "students" purchase properties for less than the appraised value, and then rapidly "equity milling" by obtaining a home equity line of credit (as cash equivalent) up to the full appraised amount to obtain cash to invest with Koerber's other companies; Koerber's scheme required appraisers willing to over-appraise the value and lenders willing to lend on the false appraisals, and having his "feeder fund" managers source unsophisticated new investors unfamiliar with the scheme, frequently family members and church friends, to provide the investment money.

176. In or about 2018-2019, the Department of Justice convicted Koerber for securities fraud and he presently is serving out his sentence.

177. In 2005, Defendant Tamio caused to be explained to investor Francine Yeh (his and Plaintiff Michiko's elderly aunt) that the investment was in a company called Founders Capital and/or FranklinSquires.

178. Investor Francine Yeh, at that time in 2005, was a senior citizen, her native language in Chinese, and she is not a fluent speaker of the English language.

179. Defendant Tamio, through his mother Aichu Yeh (Francine's sister), who spoke investor Francine Yeh's native Chinese language, told investor Francine Yeh in 2005 that the investment would be made into a company called Founders Capital and/or FranklinSquires.

180. Defendant Tamio, through his mother Aichu Yeh, who spoke investor Francine Yeh's native Chinese language, told investor Francine Yeh sometime in or after 2005 that Francine's investment money would be made through Tamio's and Anna's company Star Mountain into the Founders Capital and/or FranklinSquires companies.

181. Defendant Tamio met with investor Francine Yeh on family occasions and told Francine about the investment and that Francine could make money investing through Tamio.

182. Defendant Anna met with investor Francine Yeh on family occasions and told Francine about the investment and that Francine could make money investing through Tamio or Anna.

183. Defendant Tamio told investor Francine Yeh that the entire amount Francine's investment would be personally guaranteed by Tamio.

184. Defendant Anna told investor Francine Yeh that the entire amount of Francine's investment would be personally guaranteed by Anna.

185. Investor Francine relied on Defendant Tamio's promise that the investments Francine made through Tamio would be fully guaranteed to be paid back in full.

186. Investor Francine relied on Defendant Anna's promise that the investments Francine made through Tamio would be fully guaranteed to be paid back in full.

187. In 2005, investor Francine owned her family home free and clear of any loans or mortgages.

188. Defendant Tamio suggested that investor Francine borrow a home equity line of credit against the equity in her family home to invest that borrowed money with Tamio.

189. Defendant Anna suggested that investor Francine borrow a home equity line of credit against the equity in her family home to invest that borrowed bank money with Tamio or Anna.

190. Defendant Tamio did not tell investor Francine that Francine's home could be foreclosed upon if Tamio did not honor his personal guarantee to pay Francine back all of her investment to repay the home equity line of credit.

191. Defendant Anna did not tell investor Francine that Francine's home could be foreclosed upon if Tamio or Anna did not honor the guarantee to pay Francine back all of her investment to repay the home equity line of credit.

192. Defendant Tamio accompanied investor Francine to a local Washington Mutual Bank branch while Francine applied for a home equity line of credit.

193. Defendant Tamio's mother Aichu Yeh translated for investor Francine Tamio's discussions with the Washington Mutual Bank loan officer.

194. Investor Francine relied upon Defendant Tamio's promise that her investment was fully guaranteed and that she would get all of her investment back to be able to repay her Washington Mutual Bank home equity line of credit.

195. Investor Francine relied upon Defendant Tamio's promise that her investment was fully guaranteed and that she would get all of her investment back to be able to repay her Washington Mutual Bank home equity line of credit.

196. Defendant Tamio suggested investor Francine sign the Washington Mutual Bank home equity line of credit application and use the loan proceeds to invest through Tamio.

197. Defendant Tamio made or caused to be made monthly payments to his mother Aichu Yeh based upon a percentage of the dollar amount investor Francine invested through Tamio as a result of Aichu's efforts.

198.   Defendant Anna made or caused to be made monthly payments to his mother Aichu Yeh based upon a percentage of the dollar amount investor Francine invested through Tamio and Anna as a result of Aichu's efforts.

199.   In 2005, investor Ken Hsieh was a senior citizen whose native language is Chinese, and he is not a fluent speaker of the English language.

200.   Defendant Tamio, through his mother Aichu Yeh, explained to investor Ken Hsieh in or about 2006-007 that the investment was in a company called Founders Capital and/or FranklinSquires.

201.   Star Mountain Enterprises acted through Defendant Tamio Stehrenberger in entering into promissory notes and receiving money from Plaintiff Michiko Stehrenberger as Star Mountain Enterprises's investor.

202.   Star Mountain Enterprises acted through Defendant Anna in entering into promissory notes and receiving money from Plaintiff Michiko Stehrenberger as Star Mountain Enterprises's investor.

203.   Defendant Anna described the Star Mountain Enterprises investment to Plaintiff Michiko Stehrenberger and the monthly returns Michiko would receive as a result of investing through the promissory notes.

204.   In or about 2005, Defendant Tamio described the Founders Capital/ FranklinSquires investment to Plaintiff Michiko as "low-risk" because the investment was backed by real estate collateral, and were "guaranteed" to be repaid in full.

205.   As described by Defendant Tamio, the investment would be "low-risk" because investors' money, (including Plaintiff Michiko's money) would be "pooled" together with the money of other investors into a larger amount and then loaned out as a "hard money loan" to third parties at a high interest rate, but only up to a portion of the real property's appraised value, so that in the event of a default by the third-party borrower, the real property collateral could be foreclosed upon and then resold at the higher appraised value to recover for the investors' all of their investment money.

206.   Defendant Tamio was aware but did not disclose to Plaintiff Michiko that the laws of the State of Utah required Tamio to be licensed as a securities agent before "pooling" the money of several investors and putting it into other investments.

207.   Defendant Anna was aware but did not disclose to Plaintiff Michiko that the laws of the State of Utah required Tamio to be licensed as a securities agent before "pooling" the money of several investors and putting it into other investments.

208.   In connection with the sale of the Star Mountain securities for the investment, Defendant Tamio described the Star Mountain Enterprises investment to Plaintiff Michiko and the

monthly returns Michiko would receive as a result of investing through the promissory notes.

209. On or before the date of Plaintiff Michiko's purchase of the Star Mountain securities, Defendant Tamio told Plaintiff Michiko that the Star Mountain investment was "safe" from the loss of the investment.

210. On or before the date of Plaintiff's purchase of the Star Mountain securities, Defendant Anna told Plaintiff Michiko that the Star Mountain investment was "safe" from the risk of loss of the investment.

211. On or before the date of Plaintiff Michiko's purchase of the Star Mountain securities, Defendant Tamio told Michiko that her investment with Star Mountain was "guaranteed" against loss.

212. On or before the date of Plaintiff Michiko's purchase of the Star Mountain securities, Defendant Anna told Michiko that Michiko's investment with Star Mountain was "guaranteed" against loss.

213. Defendant Tamio told Plaintiff Michiko that Tamio, Anna, or Star Mountain kept reserves in the form of "several hundred thousand dollars" in their accounts for the purpose of protecting their investors.

214. Defendant Tamio admitted in the Utah state court case that he had indicated that he or Star Mountain kept these reserves.

215. Defendant Anna told Plaintiff Michiko that Tamio, Anna, or Star Mountain kept reserves in the form of "several hundred thousand dollars" in their accounts for the purpose of protecting their investors.

216. Defendant Anna admitted in the Utah state court case that she had indicated that she or Star Mountain kept these reserves.

217. Defendant Tamio intended that Plaintiff Michiko would rely on Tamio's statements that the Star Mountain investment was guaranteed against loss and that Tamio, Anna, or Star Mountain kept "several hundred thousand dollars" in reserves to protect Michiko's $100,000.00 investment from loss.

218. Defendant Anna intended that Plaintiff Michiko would rely on Tamio's statements that the Star Mountain investment was guaranteed against loss and that Tamio, Anna, or Star Mountain kept "several hundred thousand dollars" in reserves to protect Michiko's $100,000.00 investment from loss.

219. Plaintiff Michiko relied upon Defendants Tamio's and Anna's representations that the Star Mountain was guaranteed against loss and that Tamio, Anna, or Star Mountain kept

"several hundred thousand dollars" in reserves to protect Michiko's $100,000.00 investment from loss.

220. In or about 2006, Defendant Tamio asked Plaintiff Michiko for her permission to invest Michiko's money in a different company from Founders Capital/ FranklinSquires, and instead into a different company to which Tamio referred as "McGuire Funds."

221. "McGuire Funds" was also known as McGuire Financial.

222. In or about 2006, Defendant Tamio Stehrenberger sent Plaintiff Michiko Stehrenberger in an email that the "McGuire Funds" investments was "backed the same way" as the Founders Capital/ FranklinSquires investments.

223. Plaintiff Michiko relied upon Defendant Tamio's representation that any investment she made through Tamio, Anna, or Star Mountain Enterprises would be invested in "McGuire Funds" and "backed the same way" by real property as collateral and therefore also "low-risk" and "guaranteed" to be repaid to Michiko in full.

224. Defendant Tamio concealed the facts that in or about August 2006, Tamio, Anna, or Star Mountain would cause Michiko's money to be provided instead to an entirely different company not disclosed to Michiko, one which Tamio later referred to (in 2008, after Michiko's investment had been lost) as "Landmark Venture Capital" or "Bray-Conn."

225. Defendant Anna concealed the facts that in or about August 2006, Tamio, Anna, or Star Mountain would cause Michiko's money to be provided instead to an entirely different company not disclosed to Michiko, one which Tamio or Anna later referred to (in 2008, after Michiko's investment had been lost) as "Landmark Venture Capital" or "Bray-Conn."

226. Defendant Tamio's May 3, 2010 discovery response to Interrogatory No. 11, incorporated herein by reference, confirms the switch and the intentional commingling of Plaintiff Michiko's money with the money of others:

> Interrogatory No. 11. Identify each method by which you, or any entity in which you had a material interest, accounted for [Michiko's money] and/or money that was ever com[m]ingled with [Michiko's money] after January 18, 2005.

> Response: Simple bookkeeping. Michiko and Francine's Money was put into Founder's Capital and McGuire Financial through Tamio's account with them. This was an opportunity offered to Michiko and Francine to help them. Later, Michiko's and Francine's money was also combined with Tamio's and other people's money into Landmark Venture Capital, LLC again through an account establish[ed] by Tamio.

227. Plaintiff Michiko relied upon Defendants Tamio's and Anna's statements that the Star Mountain investment was "safe," "low-risk," "guaranteed," and collateralized by real property to prevent against loss at the time that Michiko provided her $100,000.00 investment to Tamio, Anna, or Star Mountain Enterprises in exchange for two promissory notes dated April 23, 2007.

228. Defendant Tamio was aware that Plaintiff Michiko would only have agreed to invest her money in a "low-risk, "safe," and "guaranteed" investment backed by real property as collateral, and that Michiko would not have agreed to invest in a "high-risk" investment.

229. Defendant Anna was aware that Plaintiff Michiko would only have agreed to invest her money in a "low-risk, "safe," and "guaranteed" investment backed by real property as collateral, and that Michiko would not have agreed to invest in a "high-risk" investment.

230. Plaintiff Michiko provided $100,000.00 to Star Mountain Enterprises in exchange for two promissory notes dated April 23, 2007 in direct reliance upon Defendant Tamio 's explanation of the "low-risk" of Star Mountain-related investment and that it was collateralized by real property and Tamio's promise that Tamio, Anna, or Star Mountain kept "several thousand dollars in their accounts" in reserves to fund their guarantee.

231. Plaintiff Michiko provided $100,000.00 to Star Mountain Enterprises in exchange for two promissory notes dated April 23, 2007 in direct reliance upon Defendant Anna's explanation of the "low-risk" of Star Mountain-related investment and that it was collateralized by real property and Tamio's promise that Tamio, Anna, or Star Mountain kept "several thousand dollars in their accounts" in reserves to fund their guarantee.

232. On or before the date of Plaintiff Michiko's purchase of the Star Mountain securities, Defendant Tamio concealed from Plaintiff Michiko the fact that Tamio, Anna, or Star Mountain kept the money they described as their "reserves" to protect investors not in an escrow account for safekeeping, but rather in a "high-risk" investment account for which the "reserves" described as part of the "guarantee" were at risk of total loss so that the guarantee would not be honored.

233. On or before the date of Plaintiff Michiko's purchase of the Star Mountain securities, Defendant Anna concealed from Plaintiff Michiko the fact that Tamio, Anna, or Star Mountain kept the money they described as their "reserves" to protect investors not in an escrow account for safekeeping, but rather in a "high-risk" investment account for which the "reserves" described as part of the "guarantee" were at risk of total loss so that the guarantee would not be honored.

234. In or about April 2007, Defendant Anna stated to Plaintiff Michiko Stehrenberger in connection with discussion of the Star Mountain-related investment that "we've done hard money loans."

235. "Hard money loans" are loans backed by real estateas collateral for the loan, made to

third-parties who had low credit scores at a higher interest rate, with the loan amount made at a low "loan-to-value" ratio (such as only 60% of the total appraised value of the real property) so that if the third-party borrower did make payments as agreed, the "hard money lender" could foreclose on the real property with approximately a 40% equity margin to help prevent against loss of the investment money used to fund the loan.

236. Upon information and belief, under Utah law, "hard money loans" and their accompanying higher interest rates are not considered usurious as long as the contracting parties agree to the interest rate for business purposes.

237. In April 2007, on or before the date Plaintiff Michiko provided her $100,000.00 investment, Michiko asked Defendant Anna directly, "is this investment in hard money loans?"

238. In response to Plaintiff Michiko's question about whether the investment was in "hard money loans," Defendant Anna looked to Defendant Tamio, Tamio nodded back at Anna, and Anna stated to Michiko: "We've done hard money loans."

239. At the moment that Defendant Anna told Plaintiff Michiko that Tamio or Anna had done "hard money loans," Anna intended that Michiko would rely on her statement and belief that Michiko's $100,000.00 investment would be made in "hard money loans" that were "low-risk" and "guaranteed" because they were backed by real estate as collateral to prevent against loss of the investment.

240. At the moment that Defendant Tamio nodded to Defendant Anna and observed Anna telling Plaintiff Michiko that Tamio or Anna had done "hard money loans," Tamio intended that Michiko would rely on Anna's statement and belief that Michiko's $100,000.00 investment would be made in "hard money loans" that "low-risk" and "guaranteed" because they were backed by real estate as collateral to prevent against loss of the investment.

241. At the time of the sale of the Star Mountain securities to Plaintiff Michiko, Defendant Tamio concealed the fact from Michiko during this April 2007 conversation regarding "hard money loans" that Tamio, Anna, or Star Mountain had already placed Michiko's other money into a different investment with Landmark/Bray-Conn and that Landmark/Bray-Conn had provided to Tamio pages of written warnings that the Landmark/Bray-Conn investment was "high-risk" and that the entirety of the investment was at risk of loss.

242. At the time of the sale of the Star Mountain securities to Plaintiff Michiko, Defendant Anna concealed the fact from Michiko during this April 2007 conversation regarding "hard money loans" that Tamio, Anna, or Star Mountain had already placed Michiko's other money into a different investment with Landmark/Bray-Conn and that Landmark/Bray-Conn had provided to Tamio, Anna, or Star Mountain pages of written warnings that the Landmark/Bray-Conn investment was "high-risk" and that the entirety

of the investment was at risk of loss.

243. In or about April 2007, Defendant Tamio described the Star Mountain-related investment to Plaintiff Michiko as one that would be collateralized by real estate to make the investment "low-risk."

244. In or about April 2007, Defendant Anna described the Star Mountain-related investment to Plaintiff Michiko as one that would be collateralized by real estate to make the investment "low-risk."

245. In or about August 2006, Defendant Tamio, whether directly or indirectly through his company Star Mountain, caused Plaintiff Michiko's and Francine Yeh's money to be switched into a different investment offered by Landmark Venture Capital, LLC/Bray-Conn Investments. Ex. 5, *documents titled by Tamio as "Trail of Funds," "Paper Trail of Michiko['s] and Francine's Money," "Interest Payment Flow," and account statements; Defendant Tamio's response to Interrogatory No. 12 as filed into Utah state court case 080402986 ("8.28.06 – MICHIKO Money transferred from Star Mountain Bank Account to Landmark Venture Capital Account"), incorporated herein by reference.*

246. In or about August 2006, Defendant Anna, whether directly or indirectly through her company Star Mountain, caused Plaintiff Michiko's and Francine Yeh's money to be switched into a different investment offered by Landmark Venture Capital, LLC/Bray-Conn Investments. Ex. 5, *documents titled by Tamio as "Trail of Funds," "Paper Trail of Michiko['s] and Francine's Money," "Interest Payment Flow," and account statements.*

247. Defendant Tamio had custody or control over the Plaintiff Michiko's, Francine Yeh's and Ken Hsieh's money related to the five (5) Star Mountain promissory notes and caused Star Mountain to invest Michiko's, Francine's and Ken's money into Landmark/Bray-Conn without telling Michiko, Francine, or Ken.

248. According to Landmark/Bray-Conn's May 1, 2008 letter: "One Hundred Percent (100^) of the funds invested by SME [Star Mountain Enterprises, LLC] into LVC [Landmark Venture Capital, LLC] since the fall of 2006 have been invested in Oil & Gas Leases in Texas and Alberta Canada." Ex. 6, *Landmark May 1, 2008 letter.*

249. Defendant Tamio caused Star Mountain to invest in Landmark in August of 2006, prior to the dates of the December 23, 2006-April 2007 Star Mountain promissory notes with Plaintiff Michiko, Francine Yeh, and Ken Hsieh. Ex. 5, *View Accounts of Tamio Stehrenberger, Bates SM 16.*

250. Defendant Anna caused Star Mountain to invest in Landmark in August of 2006, prior to the dates of the December 23, 2006-April 2007 Star Mountain promissory notes with Plaintiff Michiko, Francine Yeh, and Ken Hsieh. Ex. 5, *View Accounts of Tamio Stehrenberger, Bates SM 16.*

251. In connection with the sale of the five (5) Star Mountain promissory note securities, Defendant Tamio did not tell Plaintiff Michiko, Francine Yeh, and Ken Hsieh that once they invested their money with Star Mountain, their investment would be made instead into "Oil & Gas Leases in Texas and Alberta Canada."

252. In connection with the sale of the five (5) Star Mountain promissory note securities, Defendant Anna did not tell Plaintiff Michiko, Francine Yeh, and Ken Hsieh that once they invested their money with Star Mountain, their investment would be made instead into "Oil & Gas Leases in Texas and Alberta Canada."

253. In or about August 2006, Defendant Tamio received or read information from Landmark Venture Capital, LLC titled "Confidential Memorandum" in which the Landmark investment came with a written warning describing it as "high-risk." Ex. 6, *Landmark investment offering documents.*

254. Defendant Tamio admitted in the Utah state court case that in or about August 2006, Tamio received a document from Landmark Venture Capital, LLC titled "Confidential Memorandum" in which the Landmark investment came with a written warning describing it as "high-risk."

255. In or about August 2006, Defendant Anna received or read information from Landmark Venture Capital, LLC titled "Confidential Memorandum" in which the Landmark investment came with a written warning describing it as "high-risk." Ex. 6, *Landmark investment offering documents.*

256. Defendant Anna admitted in the Utah state court case that in or about August 2006, Anna received a document from Landmark Venture Capital, LLC titled "Confidential Memorandum" in which the Landmark investment came with a written warning describing it as "high-risk."

257. In or about August 2006, the Landmark investment offered a 72% annual interest rate (a 6% :earning payment"per month), Ex. 6, *Landmark 72% promissory note,* which was three times or more the percentage that Star Mountain offered to its own investors.

258. Defendant Tamio decided that through Star Mountain Enterprises, he could invest the money of others into Landmark's "high-risk" investment and keep a portion of the difference between the 6% monthly "earnings payment" and the 1.5% to 2% monthly payment that Star Mountain Enterprises owed to its own investors. *Compare interest rates* of Ex. 4, Star Mountain Notes to Ex. 6, *Landmark 72% promissory note.*

259. Defendant Anna decided that through Star Mountain Enterprises, she or Tamio could invest the money of others into Landmark's "high-risk" investment and keep a portion of the difference between the 6% monthly "earnings payment" and the 1.5% to 2% monthly payment that Star Mountain Enterprises owed to its own investors. *Compare interest rates* of Ex. 4, Star Mountain Notes to Ex. 6, *Landmark 72% promissory note.*

260.  In or about 2006, Defendant Tamio signed a "Subscription Agreement" with Landmark, Ex. 6, agreeing to the following:

> ¶ 2: "I have received a copy of the Private Placement Memorandum thereto setting forth information related to the Company [Landmark Venture Capital/Bray-Conn] and the terms and conditions of an investment in the Company and any other information I deemed necessary or appropriate to evaluate the merits and risks of an investment in the Company. I further acknowledge that I have had the opportunity to ask questions of, and to receive answers from, representatives of the Company concerning the terms and conditions of said investment."

> ¶ 4: "I am making investments in the Company for my own account and not for the account of others, . . . ."

> ¶ 12: "I understand that the investment I am making in the Company is high risk and a possible outcome of the investment could be non-profitable, causing me to lose my entire investment made in the Company. . ."

261.  Defendant Tamio did not disclose to Plaintiff Michiko the existence of the Landmark "Confidential Memorandum" or the written warnings that the Landmark investment was "high-risk," or Michiko's money would be invested into "Oil & Gas Leases in Texas and Alberta Canada," Ex. 6, rather than the "guaranteed" real estate-collateralized McGuire Funds (McGuire Financial) investment described by Tamio, prior to Michiko providing her $100,000.00 investment related to the April 23, 2006 promissory notes.

262.  Defendant Anna did not disclose to Plaintiff Michiko the existence of the Landmark "Confidential Memorandum" or the written warnings that the Landmark investment was "high-risk," or Michiko's money would be invested into "Oil & Gas Leases in Texas and Alberta Canada," Ex. 6, rather than the "guaranteed" real estate-collateralized McGuire Funds (McGuire Financial) investment described by Tamio, prior to Michiko providing her $100,000.00 investment related to the April 23, 2006 promissory notes.

263.  Prior to the sale of the securities to Plaintiff Michiko, Defendant Tamio did not disclose to Michiko that the "reserves" of "several hundred thousand dollars" that Tamio had described as the basis for the "guarantee" of the investment would actually also be put at risk in the same Landmark "high-risk" investment into "Oil & Gas Leases in Texas and Alberta Canada" and that the funds were not in an escrow account for safekeeping to be able to honor the guarantee.

264.  Prior to the sale of the securities to Plaintiff Michiko, Defendant Anna did not disclose to Michiko that the "reserves" of "several hundred thousand dollars" that Tamio had described as the basis for the "guarantee" of the investment would actually also be put at risk in the same Landmark "high-risk" investment into "Oil & Gas Leases in Texas and

Alberta Canada" and that the funds were not in an escrow account for safekeeping to be able to honor the guarantee.

265.   Defendant Tamio concealed from Plaintiff Michiko the fact that Michiko's investment money was instead in a "high-risk" investment without Michiko's permission.

266.   Defendant Anna concealed from Plaintiff Michiko the fact that Michiko's investment money was instead in a "high-risk" investment without Michiko's permission.

267.   Defendant Tamio was aware that Plaintiff Michiko would not have given permission for Tamio, Anna, or Star Mountain to place Michiko's money into a "high-risk" investment.

268.   Defendant Anna was aware that Plaintiff Michiko would not have given permission for Tamio, Anna, or Star Mountain to place Michiko's money into a "high-risk" investment.

269.   Defendant Tamio was aware that he or Star Mountain Enterprises would not be able to receive a 6% "earnings payment" based upon Plaintiff Michiko's $100,000.00 if he disclosed the "high-risk" written warning from Landmark or that Landmark was paying a higher "earning payments" per month than the amount Star Mountain Enterprises would be paying to Michiko on her investment.

270.   Defendant Anna was aware that he or Star Mountain Enterprises would not be able to receive a 6% "earnings payment" based upon Plaintiff Michiko's $100,000.00 if she disclosed the "high-risk" written warning from Landmark or that Landmark was paying a higher "earning payments" per month than the amount Star Mountain Enterprises would be paying to Michiko on her investment.

271.   Plaintiff Michiko considered the "low-risk" level of the Star Mountain Enterprises investment to be material to her decision to invest and provided money to Tamio, Anna, or Star Mountain.

272.   Plaintiff Michiko did not agree to invest her money into any "high-risk" investments through Tamio, Anna, or Star Mountain.

273.   Defendant Tamio considered the risk level of any investments made by Tamio, Anna, or Star Mountain to be a material factor in Tamio's own decision to invest his own money, or to have Star Mountain invest, in any particular investment.

274.   Defendant Anna considered the risk level of any investments made by Tamio, Anna, or Star Mountain to be a material factor in Anna's own decision to invest her own money, or to have Star Mountain invest, in any particular investment.

275.   Defendant Tamio was aware that Plaintiff Michiko, Francine Yeh, and Ken Hsieh were likely inexperienced and "unsophisticated" investors, and not "accredited investors" with

a high net worth, and that Michiko, Francine, and Ken would rely upon the representations made by Defendants Tamio and Anna regarding the Star Mountain investment.

276. Defendant Anna was aware that Plaintiff Michiko, Francine Yeh, and Ken Hsieh were likely inexperienced and "unsophisticated" investors, and not "accredited investors" with a high net worth, and that Michiko, Francine, and Ken would rely upon the representations made by Defendants Tamio and Anna regarding the Star Mountain investment.

277. Plaintiff Michiko, Francine Yeh, and Ken Hsieh relied directly or indirectly upon Star Mountain 's, Tamio's, Anna's, and Aichu Yeh's representations that the Star Mountain investment was collateralized by real estate to prevent against loss, was "low-risk," and "guaranteed."

278. Defendant Tamio was aware that Plaintiff Michiko had little investment experience and Tamio intended that Michiko would rely upon Tamio's misrepresentations regarding the "low-risk," collateralized, and "guaranteed" statements regarding the Star Mountain Enterprise investment.

279. Defendant Anna was aware that Plaintiff Michiko had little investment experience and Anna intended that Michiko would rely upon Tamio's and Anna's misrepresentations regarding the "low-risk," collateralized, and "guaranteed" statements regarding the Star Mountain Enterprise investment.

280. At the time Plaintiff Michiko purchased the Star Mountain securities, Defendant Tamio believed the risk level of any investments related to Star Mountain Enterprises to be material to a relatively inexperienced investor such as Michiko's decision whether or not to invest money with or provide money to Star Mountain Enterprises.

281. At the time Plaintiff Michiko purchased the Star Mountain securities, Defendant Anna believed the risk level of any investments related to Star Mountain Enterprises to be material to a relatively inexperienced investor's decision whether or not to invest money with or provide money for the investment.

282. On or about December 23, 2006, Star Mountain Enterprises received approximately $53,500.00 in U.S. currency from Francine Yeh related to a December 23, 2006 Star Mountain promissory note. Ex. 4.

283. Francine Yeh is Defendant Tamio's and Plaintiff's Michiko's elderly aunt, who was a senior citizen past normal retirement age at the time of her investment.

284. Francine Yeh, is primarily a speaker of the Mandarin Chinese language, is not able to understand complex investment documents written in English and had little prior investment experience, and relied upon Tamio's explanations regarding the "low-risk" of

the Star Mountain Enterprises-related promissory note when Francine made her decision to provide money.

285.  In 2005, Defendant Tamio encouraged Francine Yeh to borrow a home equity line of credit against Francine's family home to invest with Tamio, Anna, or Star Mountain.

286.  Defendant Tamio was aware that Francine Yeh was a senior citizen who borrowed a home equity line of credit against the value in Francine's family home in Provo to be able invest money with Star Mountain Enterprises.

287.  Defendant Anna was aware that Francine Yeh was a senior citizen who borrowed a home equity line of credit against the value in Francine's family home in Provo to be able invest money with Star Mountain Enterprises.

288.  At the time Defendant Tamio discussed the Star Mountain investments with Tamio's and Michiko's mother, Aichu Yeh, with the understanding that Aichu would discuss the Star Mountain investment with Francine Yeh, Tamio was aware that Francine did not qualify as a "sophisticated" investor or an "accredited investor" under securities regulation definitions and requirements.

289.  At the time Defendant Anna discussed the Star Mountain investments with Tamio's and Michiko's mother, Aichu Yeh, with the understanding that Aichu would discuss the Star Mountain investment with Francine Yeh, Tamio was aware that Francine did not qualify as a "sophisticated" investor or an "accredited investor" under securities regulation definitions and requirements.

290.  Defendant Tamio was aware that Francine would not have borrowed a home equity line of credit and would not have invested any money with Tamio, Anna, or Star Mountain unless the investment was "safe" and "guaranteed."

291.  Defendant Anna was aware that Francine would not have borrowed a home equity line of credit and would not have invested any money with Tamio, Anna, or Star Mountain unless the investment was "safe" and "guaranteed."

292.  Defendant Tamio accompanied Francine Yeh to the local Washington Mutual bank in Provo to arrange for her to borrow the home equity line of credit against her family home to invest it through Tamio and Star Mountain Enterprises.

293.  Defendant Anna Stehrenberger was aware that Defendant Tamio accompanied Francine Yeh to the local Washington Mutual bank in Provo to arrange for her to borrow the home equity line of credit against her family home to invest it through Tamio, Anna, and Star Mountain Enterprises.

294.  Defendant Tamio Stehrenberger was aware that Francine Yeh was worried about the risk to her family home, and that Francine had not given permission to invest Francine's

money in any "high-risk" investment.

295. Defendant Anna Stehrenberger was aware that Francine Yeh was worried about the risk to her family home, and that Francine had not given permission to invest Francine's money in any "high-risk" investment.

296. Defendant Tamio admits that Star Mountain received a document from Landmark/ Bray-Conn titled "Confidential Memorandum." Ex. 6.

297. Star Mountain received the Landmark "Confidential Memorandum," Ex. 6, in or about July-August 2006.

298. Defendant Tamio read a document related to the Landmark/ Bray-Conn investment in or about July-August 2006 titled "Confidential Memorandum" prior to investing any money into Landmark/Bray-Conn. Ex. 6.

299. Defendant Anna read a document related to the Landmark/ Bray-Conn investment in or about July-August 2006 titled "Confidential Memorandum" prior to investing any money into Landmark/Bray-Conn. Ex. 6.

300. The Landmark "Confidential Memorandum," Ex. 6, prominently warns prospective investors of its high degree of risk of loss of the entire investment, as follows:

> Summary of the Offering. Risk Factors: The Company [Landmark] Notes (referred to hereafter as "Investment") being offered hereby (hereafter, the "Offering) involve a speculative investment with substantial risks. If the assets of the Company are diminished, the Investor may lose his or her entire investment. Persons who are not sophisticated in these types of offerings and who cannot afford the loss of their entire investment should not purchase the Investment offered hereby.

> Risk Factors. The purchase of the securities offered hereby is subject to a high degree of risk. Prospective investors should consider the following factors, among others, before investing. Prospective investors are urged to consult their own financial, tax and legal counsel in connection with the possible purchase of any securities and to conduct their own due diligence.

301. In Utah state court case 160100092, Tamio and Anna each admitted as true in their September 28, 2016 *Amended Answer* at ¶ 88 that:

> Tamio, Anna, and/or Star Mountain also failed to inform [plaintiffs in the Utah state court case Michiko Stehrenberger, Francine Yeh, and Ken Hsieh] of Landmark's written risk disclosures.

302.   In or about 2006, Defendant Tamio either in his individual capacity or on behalf of Star
Mountain Enterprises or another entity, signed a promissory note with Landmark in or
about August 2006 with a 72% annual return.

303.   In or about 2006, Defendant Anna either in he individual capacity or on behalf of Star
Mountain Enterprises or another entity, signed a promissory note with Landmark in or
about August 2006 with a 72% annual return.

304.   Defendant Tamio did not tell Plaintiff Michiko or investors Francine Yeh and Ken Hsieh
in connection with the sale of the securities even about the very existence of the written
"Risk Factors" in the Landmark "Confidential Memorandum" or the warning that they
could lose their entire investment.

305.   Defendant Anna did not tell Plaintiff Michiko or investors Francine Yeh and Ken Hsieh
in connection with the sale of the securities even about the very existence of the written
"Risk Factors" in the Landmark "Confidential Memorandum" or the warning that they
could lose their entire investment.

306.   The Landmark investment was in "Oil & Gas Leases in Texas and Alberta Canada" and
was not actually backed by any real property as collateral to protect the investors' money.

307.   Defendant Tamio was aware before the Star Mountain securities were sold to Plaintiff
Michiko, Francine Yeh, and Ken Hsieh, that the Landmark investment was in "Oil &
Gas Leases" and was not actually backed by any real property as collateral to protect the
investors' money.

308.   Defendant Anna was aware before the Star Mountain securities were sold to Plaintiff
Michiko, Francine Yeh, and Ken Hsieh, that the Landmark investment was in "Oil &
Gas Leases" and was not actually backed by any real property as collateral to protect the
investors' money.

309.   The Landmark investment, without any real property backing it as collateral to protect
any loaned funds, was therefore an "unsecured" investment.

310.   The Landmark investment, being in "Oil & Gas Leases" and not actually backed by real
property as collateral, was higher-risk, and materially different, from the type of
investment described by Defendant Tamio in connection with the sale of the Star
Mountain promissory note securities.

311.   The Landmark investment, being in "Oil & Gas Leases" and not actually backed by real
property as collateral, was higher-risk, and materially different, from the type of
investment described by Defendant Anna in connection with the sale of the Star
Mountain promissory note securities.

312.   Defendant Tamio fraudulently misrepresented the risk nature of the investment prior to

and from the very first moment he or Star Mountain obtained custody or control over Plaintiff's and other investors' money, in connection with the sale of the Star Mountain-issued promissory note securities.

313. Defendant Anna fraudulently misrepresented the risk nature of the investment prior to and from the very first moment she or Star Mountain obtained custody or control Plaintiff's and other investors' money, in connection with the sale of the Star Mountain-issued promissory note securities.

314. Landmark/ Bray-Conn required all of its investors to receive the "Confidential Memorandum" and its "high degree of risk of loss of the entire investment" written warnings prior to investing any money with Landmark/ Bray-Conn. Ex. 6.

315. Landmark/ Bray-Conn offered a much higher interest rate on its investment because the Landmark was a "high-risk" investment and not secured by collateral. Ex. 6.

316. According to the deposition transcript of Mr. Cary Valerio as the Managing Member of Landmark Venture Capital, LLC/Bray-Conn, incorporated herein by reference, in describing the Landmark investment in another securities fraud case, Mr. Valerio stated:

> [W]e knew our interest rate at the time for Landmark was 72 percent a year" and "If you're going to secure it, then you're not going to get anybody to do 6 percent a month."

317. The annual 72 percent return is equivalent to a 6 percent return each month on the invested principal dollar amount.

318. Defendant Tamio was aware that Landmark/ Bray-Conn was paying a higher interest rate because the Landmark/ Bray-Conn investment was "high-risk" and that there was a risk of total loss of the investors' money.

319. Defendant Tamio was aware that Landmark/ Bray-Conn was paying a higher interest rate because the Landmark/ Bray-Conn investment was "high-risk" and that there was a risk of total loss of the investors' money, including the money of Plaintiff Michiko, Francine Yeh, and Ken Hsieh, prior to the dates that Tamio signed the December 2006-April 2007 Star Mountain promissory notes with Michiko, Francine, and Ken.

320. Defendant Anna was aware that Landmark/ Bray-Conn was paying a higher interest rate because the Landmark/ Bray-Conn investment was "high-risk" and that there was a risk of total loss of the investors' money.

321. Defendant Anna was aware that Landmark/ Bray-Conn was paying a higher interest rate because the Landmark/ Bray-Conn investment was "high-risk" and that there was a risk of total loss of the investors' money, including the money of Plaintiff Michiko, Francine Yeh, and Ken Hsieh, prior to the dates that Star Mountain entered into the December

2006-April 2007 Star Mountain promissory notes with Michiko, Francine, and Ken.

322. Defendant Tamio did not tell Plaintiff Michiko, Francine Yeh, or Ken Hsieh about the 72% interest rate that Tamio or Star Mountain had contracted to receive from Landmark in exchange for Star Mountain providing the investment money of Michiko, Francine, and Ken to Landmark.

323. Defendant Anna did not tell Plaintiff Michiko, Francine Yeh, or Ken Hsieh about the 72% interest rate that Tamio or Star Mountain had contracted to receive from Landmark in exchange for Star Mountain providing the investment money of Michiko, Francine, and Ken to Landmark.

324. Defendant Tamio did not tell Plaintiff Michiko, Francine Yeh, or Ken Hsieh about the 72% interest rate that Tamio or Star Mountain had contracted to receive from Landmark in exchange for Star Mountain providing the investment money of Michiko, Francine, and Ken to Landmark because Tamio intended that he or Star Mountain intended to keep the difference between the interest rate paid by Landmark and the 18%-24% interest rate required to be paid by Star Mountain to Michiko, Francine, and Ken based on the Star Mountain promissory notes.

325. Defendant Anna did not tell Plaintiff Michiko, Francine Yeh, or Ken Hsieh about the 72% interest rate that Tamio or Star Mountain had contracted to receive from Landmark in exchange for Star Mountain providing the investment money of Michiko, Francine, and Ken to Landmark because Tamio intended that he or Star Mountain intended to keep the difference between the interest rate paid by Landmark and the 18%-24% interest rate required to be paid by Star Mountain to Michiko, Francine, and Ken based on the Star Mountain promissory notes.

326. Defendant Tamio intended for himself or his companies to take approximately 4% each month of the 6% received from Landmark/ Bray-Conn based upon portions of the commingled money invested by Plaintiff Michiko and Francine Yeh, and pay Michiko and Francine 2% each month based on the interest rate in the Star Mountain promissory notes.

327. Defendant Anna intended for herself or her companies to take approximately 4% each month of the 6% received from Landmark/ Bray-Conn based upon portions of the commingled money invested by Plaintiff Michiko and Francine Yeh, and pay Michiko and Francine 2% each month based on the interest rate in the Star Mountain promissory notes.

328. Defendant Tamio intended for himself or his companies to take approximately 4.5% each month of the 6% received from Landmark/ Bray-Conn based upon portions of the commingled money invested by Ken Hsieh, and pay Ken 1.5% each month based on the interest rate in the Star Mountain promissory notes.

329. Defendant Anna intended for herself or her companies to take approximately 4.5% each month of the 6% received from Landmark/ Bray-Conn based upon portions of the commingled money invested by Ken Hsieh, and pay Ken 1.5% each month based on the interest rate in the Star Mountain promissory notes.

330. Defendant Tamio or his companies received remuneration in the form of earnings payments based upon this difference between the Landmark/ Bray-Conn promissory note interest rate with Star Mountain, and the Star Mountain promissory note interest rates.

331. Defendant Tamio or his companies received remuneration in the form of earnings payments based upon this difference between the Landmark/ Bray-Conn promissory note interest rate with Star Mountain, and the Star Mountain promissory note interest rates with Plaintiff Michiko, Francine Yeh, and Ken Hsieh, based upon a percentage of the dollar amounts invested by Michiko, Francine, and Ken in connection with the sale of the Star Mountain securities.

332. Defendant Anna or her companies received remuneration in the form of earnings payments based upon this difference between the Landmark/ Bray-Conn promissory note interest rate with Star Mountain, and the Star Mountain promissory note interest rates.

333. Defendant Anna or her companies received remuneration in the form of earnings payments based upon this difference between the Landmark/ Bray-Conn promissory note interest rate with Star Mountain, and the Star Mountain promissory note interest rates with Plaintiff Michiko, Francine Yeh, and Ken Hsieh, based upon a percentage of the dollar amounts invested by Michiko, Francine, and Ken in connection with the sale of the Star Mountain securities.

334. Defendant Tamio was not licensed as a securities agent in the State of Utah during the time of selling the Star Mountain securities (December 23, 2006 through April 23, 2007).

335. Defendant Anna was not licensed as a securities agent in the State of Utah during the time of selling the Star Mountain securities (December 23, 2006 through April 23, 2007).

336. Defendant Tamio was aware of the Utah Securities Act statutes, through which it is unlawful for Tamio or Star Mountain to receive remuneration or compensation directly or indirectly related to the sale of the Star Mountain promissory note securities, prior to the December 2006-April 2007 sales of the Star Mountain securities to Plaintiff Michiko, Francine, and Ken.

337. Defendant Anna was aware of the Utah Securities Act statutes, through which it is unlawful for Anna or Star Mountain to receive remuneration or compensation directly or indirectly related to the sale of the Star Mountain promissory note securities, prior to the December 2006-April 2007 sales of the Star Mountain securities to Plaintiff Michiko,

Francine, and Ken.

338. Prior to the December 2006-April 2007 sale of the Star Mountain securities, Defendant Tamio did not tell Plaintiff Michiko, Francine, or Ken about Landmark/ Bray-Conn's higher interest rate or that the difference between the Landmark interest rate and Star Mountain interest rate was intended to be kept by Star Mountain or Tamio.

339. Prior to the December 2006-April 2007 sale of the Star Mountain securities, Defendant Tamio did not tell Plaintiff Michiko, Francine, or Ken about Landmark/ Bray-Conn's higher interest rate or that the difference between the Landmark interest rate and Star Mountain interest rate was intended to be kept by Star Mountain or Tamio.

340. Defendant Tamio concealed the fact from Plaintiff Michiko, Francine Yeh, and Ken Hsieh of the difference in percentages between the Landmark interest rate and the Star Mountain interest rate (based upon the money invested by Michiko, Francine, and Ken) so that Tamio or Star Mountain could take or embezzle the difference each month.

341. Defendant Anna concealed the fact from Plaintiff Michiko, Francine Yeh, and Ken Hsieh of the difference in percentages between the Landmark interest rate and the Star Mountain interest rate (based upon the money invested by Michiko, Francine, and Ken) so that Tamio, Anna, or Star Mountain could take or embezzle the difference each month.

342. Defendants Tamio and Anna each stated in their discovery responses filed into Utah state court case 080402986 on or about May 3, 2010, that "Star Mountain would receive compensation above that which was paid out to interest payments. Tamio and Anna would receive reasonable compensation for managing Star Mountain." *Defendants' May 3, 2020 discovery responses*, incorporated herein by reference.

343. Defendant Tamio intended that he or Star Mountain would deprive Plaintiff Michiko, Francine Yeh, and Ken Hsieh of the amount constituting the difference between the Landmark interest rate and the Star Mountain interest rate by "skimming" or embezzling it each month.

344. Defendant Anna intended that she or Star Mountain would deprive Plaintiff Michiko, Francine Yeh, and Ken Hsieh of the amount constituting the difference between the Landmark interest rate and the Star Mountain interest rate by "skimming" or embezzling it each month.

345. The difference between the Landmark interest rate and the Star Mountain interest rate each month (based upon a percentage of the dollar amount constituted by Plaintiff Michiko, Francine Yeh, and Ken Hsieh in connection with the December 2006-April 2007 Star Mountain securities) constitute the actual return on investment that belonged to Michiko, Francine, and Yeh.

346. The difference between the Landmark interest rate and the Star Mountain interest rate each month (based upon a percentage of the dollar amount constituted by Plaintiff Michiko, Francine Yeh, and Ken Hsieh in connection with the December 2006-April 2007 Star Mountain securities) constitute the actual return on investment that belonged to Michiko, Francine, and Yeh, but which Tamio had concealed from them at the time that they each invested with Star Mountain.

347. The difference between the Landmark interest rate and the Star Mountain interest rate each month (based upon a percentage of the dollar amount constituted by Plaintiff Michiko, Francine Yeh, and Ken Hsieh in connection with the December 2006-April 2007 Star Mountain securities) constitute the actual return on investment that belonged to Michiko, Francine, and Yeh, but which Anna had concealed from them at the time that they each invested with Star Mountain.

348. Plaintiff Michiko, Francine Yeh, and Ken Hsieh relied upon the (mis)representations, omissions, and concealments by Defendants Tamio and Anna in providing investment money to Star Mountain in connection with the purchase of December 2006-April 2007 Star Mountain securities.

349. Plaintiff Michiko, Francine Yeh, and Ken Hsieh were damaged as direct result of the misrepresentations, omissions, and concealments by Defendants Tamio and Anna in connection with the purchase of the December 2006-April 2007 Star Mountain securities.

350. Defendant Tamio intended that Plaintiff Michiko, Francine Yeh, and Ken Hsieh would be deprived of and damaged by the undisclosed extra return on their investment that Tamio or Star Mountain intended to "skim," and indeed "skimmed" from the total earnings payment made by Landmark each month.

351. Defendant Anna intended that Plaintiff Michiko, Francine Yeh, and Ken Hsieh would be deprived of and damaged by the undisclosed extra return on their investment that Tamio or Star Mountain intended to "skim," and indeed "skimmed" from the total earnings payment made by Landmark each month.

352. Defendant Tamio considers the fact of "high degree of risk of loss of the entire investment" to be a material fact to his and Star Mountain's decisions to invest in a particular investment.

353. Defendant Anna considers the fact of "high degree of risk of loss of the entire investment" to be a material fact to his and Star Mountain's decisions to invest in a particular investment.

354. Prior to the December 23, 2006 Note and January 25, 2007 Note being signed and the combined $153,500.00 being provided by Francine Yeh to Star Mountain or Tamio or Anna, Defendant Tamio did not tell Francine that: (1) the $153,500.00 would be put into

Landmark Venture Capital; (2) Landmark Venture Capital had provided written risk disclosure documents to Tamio or Star Mountain that described the Landmark investment as high-risk of a total loss of her investment; (3) Star Mountain had contracted to receive 72% annual interest or other payments from Landmark in exchange for Star Mountain providing that money for Landmark's "high-risk" investment; and (4) a license was required to sell securities such as the December 23, 2007 Note and January 25, 2007 Note; and (5) Tamio did not have any securities license.

355.    Prior to the December 23, 2006 Note and January 25, 2007 Note being signed and the combined $153,500.00 being provided by Francine Yeh to Star Mountain or Tamio or Anna, Defendant Anna did not tell Francine that: (1) the $153,500.00 would be put into Landmark Venture Capital; (2) Landmark Venture Capital had provided written risk disclosure documents to Tamio or Star Mountain that described the Landmark investment as high-risk of a total loss of her investment; (3) Star Mountain had contracted to receive 72% annual interest or other payments from Landmark in exchange for Star Mountain providing that money for Landmark's "high-risk" investment; and (4) a license was required to sell securities such as the December 23, 2007 Note and January 25, 2007 Note; and (5) Tamio did not have any securities license.

356.    At the time of providing the combined $153,500.00 to Star Mountain or Tamio or Anna, Francine Yeh did not know that: (1) the $153,500.00 would be put into Landmark Venture Capital; (2)Landmark Venture Capital had provided written risk disclosure documents to Tamio or Star Mountain that described the Landmark investment as high-risk of a total loss of her investment; (3)Star Mountain had contracted to receive 72% annual interest or other payments from Landmark in exchange for Star Mountain providing that money for Landmark's "high-risk" investment; and (4) a license was required to sell securities such as the December 23, 2007 Note and January 25, 2007 Note; and (5) Tamio and Anna did not have any securities license.

357.    Prior to the February 23, 2007 Note being signed and the combined $17,000.00 being provided by Ken Hsieh to Star Mountain, Tamio, Anna, or Aichu Yeh, Defendant Tamio did not tell Ken that: (1) the $17,000.00 would be put into Landmark Venture Capital; (2) (3) Star Mountain had contracted to receive 72% annual interest or other payments from Landmark in exchange for Star Mountain providing that money for Landmark's "high-risk" investment; and (4) a license was required to sell securities such as the February 23, 2007 Note; and (5) Tamio and Anna did not have any securities licenses.

358.    Prior to the February 23, 2007 Note being signed and the combined $17,000.00 being provided by Ken Hsieh to Star Mountain, Tamio, Anna, or Aichu Yeh, Defendant Anna did not tell Ken that: (1) the $17,000.00 would be put into Landmark Venture Capital; (2) Landmark Venture Capital had provided written risk disclosure documents to Tamio or Star Mountain that described the Landmark investment as high-risk of a total loss of her investment; (3) Star Mountain had contracted to receive 72% annual interest or other payments from Landmark in exchange for Star Mountain providing that money for Landmark's "high-risk" investment; and (4) a license was required to sell securities such

as the February 23, 2007 Note; and (5) Tamio and Anna did not have any securities licenses.

359. At the time of providing the combined $17,000 to Star Mountain, Tamio, Anna, or Aichu Yeh, Ken Hsieh did not know that: (1) the $17,000.00 would be put into Landmark Venture Capital; (2) Landmark Venture Capital had provided written risk disclosure documents to Tamio or Star Mountain that described the Landmark investment as high-risk of a total loss of her investment; (3) Star Mountain had contracted to receive 72% annual interest or other payments from Landmark in exchange for Star Mountain providing that money for Landmark's "high-risk" investment; and (4) a license was required to sell securities such as the February 23, 2007 Note; and (5) Tamio and Anna did not have any securities licenses.

360. Prior to the two April 23, 2007 Notes being signed and the combined $100,000.00 being provided by Plaintiff Michiko to Star Mountain, Defendant Tamio did not tell Michiko that: (1) the $100,000.00 would be put into Landmark Venture Capital; (2) Landmark Venture Capital had provided written risk disclosure documents to Tamio or Star Mountain that described the Landmark investment as high-risk of a total loss of her investment; (3) Star Mountain had contracted to receive 72% annual interest or other payments from Landmark in exchange for Star Mountain providing that money for Landmark's "high-risk" investment; and (4) a license was required to sell securities such as the two April 23, 2007 Notes; and (5) Tamio and Anna did not have any securities licenses.

361. Prior to the two April 23, 2007 Notes being signed and the combined $100,000.00 Notes being provided by Plaintiff Michiko to Star Mountain, Defendant Anna did not tell Michiko that: (1) the $100,000.00 would be put into Landmark Venture Capital; (2) Landmark Venture Capital had provided written risk disclosure documents to Tamio or Star Mountain that described the Landmark investment as high-risk of a total loss of her investment; (3) Star Mountain had contracted to receive 72% annual interest or other payments from Landmark in exchange for Star Mountain providing that money for Landmark's "high-risk" investment; and (4) a license was required to sell securities such as the two April 23, 2007 Notes; and (5) Tamio and Anna did not have any securities licenses.

362. At the time of providing the combined $100,000.00 to Star Mountain, Plaintiff Michiko did not know that: (1) the $100,00.00 would be put into Landmark Venture Capital; (2) Landmark Venture Capital had provided written risk disclosure documents to Tamio or Star Mountain that described the Landmark investment as high-risk of a total loss of her investment; (3) Star Mountain had contracted to receive 72% annual interest or other payments from Landmark in exchange for Star Mountain providing that money for Landmark's "high-risk" investment; and (4) a license was required to sell securities such as the two April 23, 2007 Notes; and (5) Tamio and Anna did not have any securities licenses.

363. Star Mountain paid to Aichu a recurring amount based upon a percentage based upon the money invested by Francine Yeh and Ken Hsieh with Star Mountain for certain months in exchange for Aichu telling Francine and Ken about the Star Mountain investment.

364. Aichu Yeh acted as an agent on behalf of Star Mountain as the principal in selling the December 23, 2006, January 25, 2007, and February 23, 2007 promissory note securities to Francine and Ken.

365. Aichu Yeh was not licensed as a securities agent at the time of the sale of the Star Mountain securities (December 23, 2006 through April 23, 2007).

366. Defendant Tamio knew that Aichu Yeh was not licensed as a securities agent to assist in selling promissory note securities on behalf of Star Mountain, Tamio, or Anna.

367. Defendant Anna knew that Aichu Yeh was not licensed as a securities agent to assist in selling promissory note securities on behalf of Star Mountain, Tamio, or Anna.

368. Defendant Tamio caused the investment money from Plaintiff Michiko, Francine Yeh, and Ken Hsieh to be invested in the "high-risk" Landmark Venture Capital investment without telling Michiko, Francine, or Ken.

369. Defendant Anna caused the investment money from Plaintiff Michiko, Francine Yeh, and Ken Hsieh to be invested in the "high-risk" Landmark Venture Capital investment without telling Michiko, Francine, or Ken.

370. Defendant Tamio misrepresented his status as an "Accredited Investor" and the value of his personal assets to be able to invest the "pooled" money of multiple investors in the Landmark "high-risk" investment under Tamio's or Star Mountain's own name.

371. Defendant Tamio concealed from Plaintiff Michiko, Francine Yeh, and Ken Hsieh the fact that Tamio misrepresented his status as an "Accredited Investor" and the value of his personal assets to be able to invest the "pooled" money of multiple investors in the Landmark "high-risk" investment under Tamio's or Star Mountain's own name.

372. Defendant Anna concealed from Plaintiff Michiko, Francine Yeh, and Ken Hsieh the fact that Tamio misrepresented his status as an "Accredited Investor" and the value of his personal assets to be able to invest the "pooled" money of multiple investors in the Landmark "high-risk" investment under Tamio's or Star Mountain's own name.

373. In or about July 2007, Defendant Tamio received information from Landmark Venture Capital that Landmark and its related individuals and companies were being investigated by securities regulators related to Landmark improperly counting the number of "accredited investors" in the investment by counting each entity as one investor, rather than counting the individuals within that entity.

374.   In or about July 2007, Defendant Anna received information from Landmark Venture Capital that Landmark and its related individuals and companies were being investigated by securities regulators related to Landmark improperly counting the number of "accredited investors" in the investment by counting each entity as one investor, rather than counting the individuals within that entity.

375.   Securities regulations were among the list of possible risks of investor money described within the five pages of risks contained within the Landmark Venture Capital Memorandum received by Star Mountain and the defendants. Ex. 6, *Landmark Confidential Memorandum pages of risk disclosures.*

376.   Defendant Tamio and failed to disclose to Plaintiff Michiko, Francine Yeh, and Ken Hsieh the existence of the Landmark Memorandum and the five pages of written "high-risk" warnings contained within them, including the securities regulation risks that caused Landmark to fail.

377.   Defendant Anna and failed to disclose to Plaintiff Michiko, Francine Yeh, and Ken Hsieh the existence of the Landmark Memorandum and the five pages of written "high-risk" warnings contained within them, including the securities regulation risks that caused Landmark to fail.

378.   As a result, Landmark offered to Defendant Tamio or Star Mountain a rescission in the form of repaying back the principal to all of its investors to cure the illegality/illegalities. Ex. 6.

379.   As a result, Landmark offered to Defendant Anna or Star Mountain a rescission in the form of repaying back the principal to all of its investors to cure the illegality/illegalities. Ex. 7.

380.   The Landmark offer of rescission offered either (1) a full refund of the investment money, or (2) an election to take equity in Landmark and a lower monthly payment at approximately 1%, plus any undefined future profit participation. Ex. 7.

381.   Defendant Tamio was aware of the Landmark offer of rescission and the option to get 100% of the investors' money refunded from Landmark, but Tamio did not tell Plaintiff Michiko, Francine Yeh, and Ken Hsieh that their investment (the undisclosed Landmark investment into "Oil & Gas Leases in Texas and Alberta Canada") would no longer pay as planned and that the investment was at risk of being lost if Tamio or Star Mountain did not immediately take action to rescind and receive a refund from Landmark.

382.   Defendant Anna was aware of the Landmark offer of rescission and the option to get 100% of the investors' money refunded from Landmark, but Anna did not tell Plaintiff Michiko, Francine Yeh, and Ken Hsieh that their investment (the undisclosed Landmark investment into "Oil & Gas Leases in Texas and Alberta Canada") would no longer pay as planned and that the investment was at risk of being lost if Tamio,, Anna or Star

Mountain did not immediately take action to rescind and receive a refund from Landmark.

383.   Defendant Tamio acted intentionally in concealing Landmark's offer of rescission from Plaintiff Michiko, Francine Yeh, and Ken Hsieh because it would have exposed Tamio's earlier concealment of switching the investment money into Landmark's "high-risk" investment, even though Tamio was aware that Michiko, Francine, and Ken would most certainly be harmed by the loss resulting from Tamio's concealment.

384.   Defendant Anna acted intentionally in concealing Landmark's offer of rescission from Plaintiff Michiko, Francine Yeh, and Ken Hsieh because it would have exposed Anna's earlier concealment of switching the investment money into Landmark's "high-risk" investment, even though Tamio was aware that Michiko, Francine, and Ken would most certainly be harmed by the loss resulting from Anna's concealment.

385.   Ultimately, Landmark was unable to repay all of its investors the entirety of their investments, and Plaintiff Michiko, Francine Yeh, and Ken Hsieh lost their investment money.

386.   Defendant Tamio concealed the fact from Plaintiff Michiko, Francine Yeh, or Ken Hsieh that their money had been invested by Star Mountain into the "high-risk" Landmark Venture Capital investment until after June 1, 2008, after Star Mountain had failed to repay Michiko's, Francine's, and Ken's investments.

387.   Defendant Anna concealed the fact from Plaintiff Michiko, Francine Yeh, or Ken Hsieh that their money had been invested by Star Mountain into the "high-risk" Landmark Venture Capital investment until after June 1, 2008, after Star Mountain had failed to repay Michiko's, Francine's, and Ken's investments.

388.   Plaintiff Michiko and investors Francine Yeh and Ken Hsieh relied upon Tamio and Anna, and did not know that Tamio had concealed the existence of Landmark's "high-risk" written warnings in connection with providing the investment money to Star Mountain.

389.   Plaintiff Michiko and investors Francine Yeh and Ken Hsieh relied upon Tamio and Anna, and did not know that Anna had concealed the existence of Landmark's "high-risk" written warnings in connection with providing the investment money to Star Mountain.

390.   Defendant Tamio intended harm or financial injury to Plaintiff Michiko and investors Francine Yeh and Ken Hsieh when Tamio concealed the fact of the existence of the Landmark "high-risk" written warnings because Tamio believed that Plaintiff and the investors would not invest if they knew about the true "high-risk" of the investment, and Star Mountain would not be able to skim the higher percentage from the monthly earnings payments made by Landmark each month.