FILED

**ORDERED PUBLISHED**

NOV 25 2024

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>TAMIO LUCIEN STEHRENBERGER<br>and ANNA CHRISTINE<br>STEHRENBERGER,<br>　　　　　　　Debtors. | BAP No. ID-23-1207-FBL<br><br>Bk. No. 20-00833-NGH<br><br>Adv. No. 20-06044-NGH |
| MICHIKO STEHRENBERGER,<br>　　　　　　Appellant,<br>v.<br>TAMIO LUCIEN STEHRENBERGER;<br>ANNA CHRISTINE STEHRENBERGER,<br>　　　　　　Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Idaho
Noah G. Hillen, Chief Bankruptcy Judge, Presiding

APPEARANCES

Appellant Michiko Stehrenberger argued pro se; appellee Tamio Lucien
Stehrenberger argued pro se; Alexandra O. Caval of Caval Law Office
argued for appellee Anna Christine Stehrenberger.

Before: FARIS, BARASH,* and LAFFERTY, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

─────────────

\* Hon. Martin R. Barash, United States Bankruptcy Judge for the Central District
of California, sitting by designation.

## INTRODUCTION

Appellant Michiko Stehrenberger gave money to her brother and his wife, chapter 7[1] debtors Tamio Lucien Stehrenberger and Anna Christine Stehrenberger, to invest. When the investment proved unsuccessful, Michiko[2] sued Tamio and Anna for securities fraud. Tamio and Anna sought bankruptcy protection, and Michiko filed an adversary complaint to have the debt declared nondischargeable under § 523(a)(2), (4), (6), and (19). She also asserted a claim against Tamio, based on a separate obligation, for fraud with respect to a loan application. After a trial, the bankruptcy court determined that Michiko could not establish any of her claims and dismissed the complaint.

The bankruptcy court did not clearly err when it held that Michiko failed to carry her burden of proof under § 523(a)(2), (4), and (6). We therefore AFFIRM those rulings. We also AFFIRM the bankruptcy court's decision to deny Michiko permission to file documents electronically.

Michiko challenges the bankruptcy court's determination that § 523(a)(19) requires a judgment or order from a forum other than the bankruptcy court. On this point, we agree with Michiko. We hold that the bankruptcy court may render the judgment, order, or decree that is an

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We refer to the parties by their first names solely for ease of reference. We intend no disrespect.

2

element of a claim under § 523(a)(19)(B). Therefore, we VACATE and

REMAND as to the § 523(a)(19) claim.

We publish because there is no binding appellate precedent in this

circuit on the § 523(a)(19)(B) question.

## FACTS

### A.    The parties' investment activities

Michiko and Tamio are siblings. In 2005, Michiko gave Tamio $30,733

to invest, and Tamio personally guaranteed the principal investment and

interest at 1.5 percent per month.

The following year, Tamio and his then-wife, Anna, formed Star

Mountain Enterprises, LLC ("Star Mountain"). Tamio and Anna were the

managers of Star Mountain.

In 2007, Michiko and Tamio entered into a new agreement. Michiko

drafted and executed two promissory notes with Star Mountain that

superseded the earlier agreement and brought her total investment to

$100,000. Under the new promissory notes, the loan would accrue interest

at a rate of two percent per month; Tamio did not, however, personally

guarantee the notes. Moreover, the notes did not require Star Mountain to

invest the funds in a specific manner.

Star Mountain invested funds with Landmark Bray-Conn, which

acquired interests in oil and gas leases and paid out returns of six percent

per month. Star Mountain's total investment with Landmark Bray-Conn,

including funds contributed by Tamio, Anna, and later Michiko, totaled

3

$2,213,500.

By late 2007, the Landmark Bray-Conn investment was in distress. Star Mountain requested a withdrawal of its entire investment, and Tamio attempted to withdraw some funds early. Ultimately, Landmark Bray-Conn did not meet Star Mountain's demand to pay out the funds.

## B.    Tamio's loan with EAG Investments

In May 2008, Tamio applied for a short-term "bridge loan" with EAG Investments ("EAG") to purchase real property. Tamio signed a loan application that contained a false statement: Tamio represented that he had $2.2 million in a savings account, but the account was Star Mountain's Landmark Bray-Conn account (which contained funds from various investors), not his personal account.

EAG loaned Tamio $590,000 at fourteen percent interest per annum. He defaulted, and EAG obtained a default judgment against him in Utah state court. EAG later assigned that judgment to Michiko.

## C.    The state court action

Meanwhile, Michiko sued Star Mountain, Tamio, and Anna in Utah state court for violation of state securities law.

The state court entered default against Anna and Star Mountain. In its findings of fact, the state court concluded that Tamio and Anna were managers of Star Mountain and were jointly and severally liable. But the following year, it set aside the default as to Anna and indicated that it would remove reference to Anna's and Tamio's personal liability in the

4

default judgment against Star Mountain. It said it would later schedule trial on the issue of their liability and allow Tamio and Anna to raise defenses.

**D.    Chapter 7 bankruptcy case and adversary proceeding**

In September 2020, Tamio and Anna filed a joint chapter 7 petition. The bankruptcy filing stayed the state court action.

Michiko filed an adversary proceeding against Tamio, Anna, and others,[3] seeking to have certain debts declared nondischargeable under § 523(a)(2), (4), (6), and (19). After a flurry of motions,[4] the operative complaint asserted claims including nondischargeability under § 523(a)(19); joint and several liability against Tamio and Anna and piercing of the corporate veil; nondischargeability against Tamio and Anna under § 523(a)(2)(A), (4), and (6) as to the Star Mountain debt; and nondischargeability against Tamio under § 523(a)(2)(B) and (6) as to the EAG loan.

In January 2022, Michiko requested leave to file documents electronically and receive electronic service notifications in the bankruptcy case and adversary proceeding. The bankruptcy court allowed her to receive e-service notifications but otherwise denied her motion.

---

[3] The bankruptcy court later dismissed those other defendants. Michiko does not challenge that decision on appeal.

[4] Among other things, Tamio and Anna argued that § 523(a)(19) requires that the creditor must show that the debt was memorialized in an order originating from a forum other than the bankruptcy court. They contended that the state court default judgment against Star Mountain was not a final judgment or order and did not satisfy § 523(a)(19).

In the meantime, Tamio and Anna received their discharge. The chapter 7 trustee filed a report of no distribution, and the bankruptcy court closed the chapter 7 case in June 2022.

Three months before trial, Michiko filed a motion for partial summary judgment on her § 523(a)(19) claim. She asked that the bankruptcy court apply issue preclusion to find that Tamio and Anna were Star Mountain's managers and enter a money judgment against them. She also requested that the bankruptcy court abstain from deciding the § 523(a)(19) nondischargeability claim to allow her to pursue her claim for securities law violations against Tamio and Anna in state court. The court denied her request and a subsequent motion for reconsideration.

In its oral ruling denying abstention, the bankruptcy court acknowledged that courts are divided as to whether § 523(a)(19) allows the bankruptcy court to determine liability for a violation of state or federal securities law, or whether only a non-bankruptcy tribunal can make that decision. It stated that *Ellsworth v. Anderson (In re Anderson)*, Case no. 10-20651-TLM, 2012 WL 3133827 (Bankr. D. Idaho Aug. 1, 2012), determined that "such a liability determination must be made in a non-bankruptcy forum and precede this court's nondischargeability determination." The bankruptcy court rejected authority to the contrary, seeing "no compelling reason" to differ from *Anderson*. The court recognized that the denial of abstention made it "less likely" that Michiko would prevail, due to the requirement that "a non[]-bankruptcy court [must] enter an order

6

determining liability based on securities violations." It also cited Michiko's late request for abstention as a reason to deny her motions, noting that she "was put on notice over two years ago of the case law that requires a non-bankruptcy court to make a liability determination for purposes of Section 523(a)(19) . . . ."

**E.     The trial**

The bankruptcy court held a trial on the second amended complaint. Prior to the start of testimony, Michiko renewed her request that the bankruptcy court abstain from deciding the § 523(a)(19) claim. She argued that, even though the *Anderson* court ruled that it could not decide the liability for the alleged securities violation, it abstained to allow the state court to do so; Michiko urged the bankruptcy court to do the same.

During trial, Hal Rosen, manager of EAG, testified as to EAG's loan to Tamio. He testified that EAG believed Tamio's assets to be $2.2 million. He said that, if he knew that the representation was not accurate, it "would have changed our perspective definitely." Although Mr. Rosen testified that he did not verify the funds, he said that EAG would not have made the loan if he had known the truth because the untruthful statement went to Tamio's credibility. However, he also stated that the collateral was the most important factor in EAG's decision to issue the loan.

Tamio, Anna, and Michiko testified. Michiko recounted how Tamio and Anna convinced her to invest with Star Mountain with the promise of higher returns, but she claimed that they did not warn her of the risks of

7

the new investments or inform her that Tamio would no longer personally guarantee the investment. She claimed that she was unaware that Star Mountain was getting a larger return on its investments (six percent per month) than she was receiving (two percent per month) and that Tamio and Anna were "skimming" an extra four percent from her investment. She also claimed that she was initially unaware that her money was invested in oil. Additionally, Michiko testified that her damages under the § 523(a)(19) claim were over $2.2 million.

**F.    The bankruptcy court's memorandum of decision and judgment**

After the parties submitted their written closing statements, the bankruptcy court entered its memorandum of decision. It evaluated the nondischargeability claims concerning Tamio's and Anna's actions related to Star Mountain and Tamio's actions related to the EAG loan and dismissed all of the claims.

### 1.    Star Mountain – § 523(a)(2)(A)

First, the bankruptcy court stated that Michiko failed to carry her burden to prove that Tamio and Anna made false representations to induce Michiko to invest with Star Mountain. It was unconvinced that Tamio misled Michiko into signing the promissory notes and found that Michiko offered a "sparse record" concerning the allegedly false statements. The court also did not believe that Michiko relied on such statements.

### 2.    Star Mountain – § 523(a)(4)

Second, as to Michiko's embezzlement allegation, the court ruled that

Michiko failed to establish that her money was used for a purpose other
than for what it was entrusted. The bankruptcy court was similarly
unpersuaded by Michiko's assertion that the discrepancy in the monthly
interest payments constituted embezzlement. The bankruptcy court found
that Tamio and Anna were not misappropriating funds.

The court was also unconvinced by Michiko's argument that Tamio's
and Anna's lack of a license to sell securities in Utah established fraud
under § 523(a)(4). It found that Michiko failed to present evidence that
Tamio and Anna were required to be licensed; even if she did, there was no
evidence that Tamio or Anna acted with any wrongful intent.

### 3.    Star Mountain – § 523(a)(6)

Third, the court found that Michiko failed to establish that Tamio or
Anna inflicted a willful or malicious injury on Michiko. It stated that the
investment in the high-risk account may have been reckless, but
recklessness did not satisfy the intent standard under § 523(a)(6).

### 4.    Star Mountain – § 523(a)(19)

Fourth, the bankruptcy court considered whether Michiko had
established that Tamio's and Anna's operation of Star Mountain gave rise
to a nondischargeable securities violation claim under § 523(a)(19). Under
that subsection, a debt is nondischargeable if it is for a violation of any state
or federal securities law and it "results, before, on, or after the date on
which the petition was filed, from . . . any judgment, order, consent order,
or decree entered in any Federal or State judicial or administrative

9

proceeding . . . ."

The bankruptcy court concluded that the requisite order or judgment must originate in a non-bankruptcy forum. In reaching this conclusion, it relied on *Anderson*, while recognizing a split of authority on this issue.

The bankruptcy court rejected Michiko's assertion that the default judgment against Star Mountain satisfied § 523(a)(19). Additionally, the bankruptcy court held that, because the state court did not liquidate or memorialize Michiko's damages as to Tamio and Anna, Michiko "does not have a non-bankruptcy forum judgment against Tamio and Anna for the violation of Utah securities law that satisfies § 523(a)(19)(B)," and that, under *Anderson*, a bankruptcy court could not make that determination. The bankruptcy court also stated that it "never limited Michiko from presenting evidence concerning Tamio or Anna's liability under Utah securities law, and the trial was her time to do so."

### 5.    EAG loan – § 523(a)(2)(B)

The bankruptcy court next considered Michiko's nondischargeability claims concerning the EAG judgment debt.

The bankruptcy court found that Michiko had failed to establish Tamio's knowledge and intent to defraud EAG under § 523(a)(2)(B). Additionally, it found that Michiko did not prove that EAG actually or reasonably relied on Tamio's misstatement.

### 6.    EAG loan – § 523(a)(6)

Finally, the bankruptcy court considered whether the EAG debt was

nondischargeable under § 523(a)(6). The court reiterated that Michiko did not present sufficient evidence to establish that Tamio acted with intent to injure when he included false information on the EAG loan application.

Accordingly, the bankruptcy court concluded that Michiko had not met her burden to establish that any of the debts were nondischargeable. It entered a judgment dismissing the complaint.

Michiko filed a motion to alter or amend judgment and a motion to reopen the bankruptcy case. The bankruptcy court denied both motions.

Michiko timely appealed.[5]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in holding that § 523(a)(19) requires a determination of a securities law violation in a non-bankruptcy court.

(2) Whether the bankruptcy court should have applied a "heightened standard" based on state law for securities violations under § 523(a)(2), (4), and (6).

---

[5] Michiko timely filed her opening brief and excerpts of record but, due to problems printing the documents, served Tamio by mail a few days late. We GRANT Michiko's motion to retroactively extend the time to serve Tamio and DENY Tamio's motion to strike the opening brief. Michiko's failure to timely serve Tamio was the result of excusable neglect, and Tamio did not suffer any prejudice. *See* Rule 9006(b)(1).

11

(3) Whether the bankruptcy court clearly erred in its factual findings as to the EAG loan under § 523(a)(2)(B).

(4) Whether the bankruptcy court abused its discretion in denying Michiko's request to file documents on CM/ECF.

## STANDARDS OF REVIEW

"Because the bankruptcy court entered its judgment after trial, we review the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo." *Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 426-27 (9th Cir. BAP 2002). Similarly, the bankruptcy court's conclusions of law regarding nondischargeability, as well as its interpretation of state law, are reviewed de novo. *Id.* at 427; *see also Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002) ("Whether a claim is nondischargeable presents mixed issues of law and fact and is reviewed de novo."). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

Factual findings, including findings about a person's state of mind, are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010); *see Hamilton v. Elite of L.A., Inc. (In re Hamilton)*, 584 B.R. 310, 318 (9th Cir. BAP 2018) ("The clear error standard applies to the bankruptcy court's factual findings about the Debtors' mental state."), *aff'd*, 785 F. App'x 438 (9th Cir. 2019). "Review for clear error is 'significantly deferential.'" *Roth v.*

12

*Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R. 908, 915 (9th Cir. BAP 2013)
(citation omitted). If two views of the evidence are possible, the court's
choice between them cannot be clearly erroneous. *Anderson v. City of
Bessemer City*, 470 U.S. 564, 573-74 (1985).

We review for abuse of discretion the bankruptcy court's decisions
concerning its management of litigation, including its decision to allow pro
se litigants to use the CM/ECF filing system. *See Preminger v. Peake*, 552 F.3d
757, 769 n.11 (9th Cir. 2008). To determine whether the bankruptcy court
has abused its discretion, we conduct a two-step inquiry: (1) we review de
novo whether the bankruptcy court "identified the correct legal rule to
apply to the relief requested" and (2) if it did, we consider whether the
bankruptcy court's application of the legal standard was illogical,
implausible, or without support in inferences that may be drawn from the
facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 (9th Cir.
2009) (en banc).

## DISCUSSION[6]

### A. The bankruptcy court erred in concluding that § 523(a)(19)(B) requires an order or judgment in a non-bankruptcy forum.

Michiko argues that the bankruptcy court erred in holding that it did

---

[6] Michiko seeks to "supplement" her arguments on appeal with arguments she
made in the bankruptcy court, including the arguments she unsuccessfully tried to raise
in an amended closing brief and rebuttal brief that the bankruptcy court declined to
consider. We will not consider such supplemental arguments, because she did not
specifically and distinctly raise these arguments in her opening brief. *Christian Legal*

not have jurisdiction[7] to impose liability against Tamio and Anna under
Utah securities law and enter a money judgment against them in
accordance with § 523(a)(19)(B). We agree with Michiko that the requisite
order or judgment can emanate from the bankruptcy court.

Section 523(a)(19) excepts from discharge any debt that is for the
violation of any state or federal securities law and that

> (B) results, before, on, or after the date on which the petition
> was filed, from –
>
> > (i) any judgment, order, consent order, or decree entered
> > in any Federal or State judicial or administrative
> > proceeding . . . .

§ 523(a)(19)(B). This exception to discharge thus has two basic
requirements: that the debt is "for" the violation of a securities law; and
that the debt resulted from "any judgment [or] order" entered in "any"
federal or state judicial or administrative proceeding. This dispute concerns
the latter requirement.

There is a split of authority both inside and outside of this circuit
over whether the bankruptcy court may enter the judgment or order
required by subparagraph (B). *See* 4 Collier on Bankruptcy ¶ 523.27[2]
(Richard Levin & Henry J. Sommer eds., 16th ed.) (noting that "some courts

---

*Soc'y v. Wu*, 626 F.3d 483, 487-88 (9th Cir. 2010).

[7] Michiko incorrectly frames the question as a jurisdictional one. She is mistaken:
the question is whether an order of the bankruptcy court can be the order or judgment
that is an element of Michiko's case under § 523(a)(19)(B).

proceed to try the section 523(a)(19) claim . . . on the merits. Other courts have interpreted the requirement in subparagraph (B) . . . to reflect Congress's intent that the liability determination under the common law or federal or state securities laws be made in a nonbankruptcy forum").

Faced with conflicting authority, the bankruptcy court sided with *Anderson*, a decision from the Idaho bankruptcy court which held that the liability on a securities violation must be determined in a non-bankruptcy forum. In that case, the bankruptcy court noted that, prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), § 523(a)(19)(B) required a prepetition order or judgment, which necessarily meant that the order or judgment originated in a non-bankruptcy forum. *In re Anderson*, 2012 WL 3133827, at *2. After the BAPCPA amendment, the statute specified that the order or judgment may be entered pre- or post-petition, thus raising the possibility that the bankruptcy court could enter the order or judgment. *Id.*

The *Anderson* court looked to *Faris v. Jafari (In re Jafari)*, 401 B.R. 494, 496-97 (Bankr. D. Colo. 2009), for guidance. In *Jafari*, the Colorado bankruptcy court compared the subsections of § 523(a). *Anderson* said that *Jafari* explained that,

> when subsections in § 523(a) do not require a judgment or order (i.e., a liability determination), bankruptcy courts are free to determine liability in connection with nondischargeability determinations, subject only to jurisdictional limitations and preclusion doctrines. 401 B.R. at 499 (referencing § 523(a)(1)-

15

(a)(4), (a)(6), (a)(8)-(a)(10), (a)(12), (a)(14) and (a)(18)). . . .

However, when § 523(a) subsections require a
memorialized liability determination, bankruptcy courts do not
litigate the underlying claim. In those situations, the
bankruptcy court merely determines the underlying claim was
established in a non-bankruptcy forum and satisfies any other
requirements found within § 523(a). *See Jafari*, 401 B.R. at 498-99
(reviewing § 523(a)(7), (a)(11), (a)(13), and (a)(17)).

*In re Anderson*, 2012 WL 3133827, at *3-4. The *Anderson* court also stated that
"the BAPCPA amendments did not alter § 523(a)(19)(B)'s references to the
required decree (or judgment or order) or elaborate on the courts allowed
to enter such a decree; it addressed only the timing of such a decree." *Id.* at
*4 (citing *Terek v. Bundy (In re Bundy)*, 468 B.R. 916, 921 (Bankr. E.D. Wash.
2012)).

In the end, *Anderson* concluded that "the reasoning in cases such as
*Jafari* and *Bundy* is compelling. One of the required elements of § 523(a)(19)
is that a liability determination be made in a non-bankruptcy forum
'before, on or after' the date of the filing of a debtor's petition." *Id.*

Other courts take the same view as *Anderson*, *Jafari*, and *Bundy*. *See,
e.g.*, *In re Robben*, 562 B.R. 469, 478 (Bankr. D. Kan. 2017) (agreeing with
*Jafari* that, "[b]ased upon a thorough examination of the legislative history,
the language, and the structure of § 523, . . . '[s]ubsection (B) evidences a
conscious choice to have the liability determination occur outside of the
bankruptcy forum'"); *McGraw v. Collier (In re Collier)*, 497 B.R. 877, 903
(Bankr. E.D. Ark. 2013) (adopting *Jafari* and requiring a document "to

16

evidence a non-bankruptcy forum's determination of the Debtor's having violated securities law"); *Voss v. Pujdak (In re Pujdak)*, 462 B.R. 560, 574 (Bankr. D.S.C. 2011) ("The Court is persuaded by the reasoning set forth in *Jafari*, thereby requiring a non-bankruptcy forum to determine liability on Plaintiff's claim that Defendants violated securities laws.").

On the other hand, many courts have taken the position that the bankruptcy court may enter the order or judgment that § 523(a)(19)(B) requires. *See, e.g.*, *Fuller v. Bae (In re Bae)*, 645 B.R. 272, 288 (Bankr. N.D. Cal. 2022) (holding that "the bankruptcy court itself can be the instigator court" because the statute references "**any**" judgment or order in "**any**" judicial proceeding); *Tradex Glob. Master Fund SPC, Ltd. v. Chui (In re Chui)*, 538 B.R. 793, 807 (Bankr. N.D. Cal. 2015) (surveying cases and holding that, "[g]iven that current Ninth Circuit authority authorizes this court to liquidate claims in conjunction with determining their nondischargeability, and the fact that the plain language of the statute contemplates entry of judgment after the filing of the petition, the more reasonable interpretation of section 523(a)(19)(B) is that this Court may enter a judgment in satisfaction of that section"), *aff'd on other grounds sub nom. Tradex Glob. Master Fund Spc Ltd. v. Chui*, 559 B.R. 520 (N.D. Cal. 2016), *aff'd sub nom. Tradex Glob. Master Fund SPC LTD v. Chui*, 702 F. App'x 632 (9th Cir. 2017); *Williams v. Sato (In re Sato)*, 512 B.R. 241, 252 (Bankr. C.D. Cal. 2014) ("This Court concludes that the language of the provision, as well as the legislative history and policy considerations, warrants the more expanded view. The more expanded

17

approach to § 523(a)(19)(B) is closer in line with the broad language of the Code, the effort to make it even broader by the BAPCPA amendment and the need to litigate all exceptions to discharge in one proceeding."); *Gelber v. Jensen-Ames (In re Jensen-Ames)*, Case No. ADV 10-01684, 2011 WL 1238929, at *9 (Bankr. W.D. Wash. Mar. 30, 2011) ("Based upon the Ninth Circuit's broad interpretation of the bankruptcy court's authority to make determinations of liability in connection with dischargeability determinations, . . . [the bankruptcy court] may enter a summary judgment . . . [regarding] liability for a securities violation.").

We are unaware of any appellate decision directly confronting this question.[8] The Ninth Circuit has declined to rule on this issue. *Tradex Glob. Master Fund SPC LTD*, 702 F. App'x at 634 ("We need not, and do not, determine . . . the question of the bankruptcy court's scope of authority to enter a new independent judgment—apart from the judgment of the non-bankruptcy tribunal—on claims based on violations of securities laws under 11 U.S.C. § 523(a)(19).").[9]

_____

[8] Anna claims that a recently published BAP decision, *Rodriguez v. Hotchkiss (In re Rodriguez)*, 649 B.R. 773 (9th Cir. BAP 2023), supports her position that the bankruptcy court cannot make the requisite determination under § 523(a)(19)(B). In that case, the Panel observed that the statute "sets forth an expedited process that accords preclusive effect to appropriately memorialized judgments arising from liability for securities law violations and securities fraud." *Id.* at 781. The Panel did not discuss whether § 523(a)(19)(B) requires a non-bankruptcy judgment or order and did not say that Congress intended that **only** non-bankruptcy orders and judgments suffice under § 523(a)(19).

[9] In *Reuter v. Cutcliff (In re Reuter)*, 686 F.3d 511 (8th Cir. 2012), the Eighth Circuit

In the absence of controlling authority in the Ninth Circuit, our examination begins with the language of the statute itself. If the words of the statute are unambiguous, our work also ends there. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (holding that the court must first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." (cleaned up)); *see also United States v. Nishiie*, 996 F.3d 1013, 1020 (9th Cir. 2021) ("We begin with the statutory text, and end there as well if the text is unambiguous." (cleaned up)).

A term is ambiguous if it is fairly susceptible to different reasonable interpretations. *Woods v. Carey*, 722 F.3d 1177, 1181 (9th Cir. 2013). To determine whether a statute is ambiguous, we consider "the language itself, the specific context in which that language is used, and the broader

---

affirmed the bankruptcy court's finding that the debtor engaged in the sale of unregistered securities in violation of state securities laws, so the debt could be excepted from discharge under § 523(a)(19). But no one argued in *Reuter* that a court other than the bankruptcy court must make the determination of a securities violation, so there is no holding on that point. *Lunsford v. Process Technologies Services, LLC (In re Lunsford)*, 848 F.3d 963 (11th Cir. 2017), is unhelpful for similar reasons. In that case, the defendant argued on appeal that the bankruptcy court had *not* found that he had personally violated securities laws. The court of appeals rejected that argument, holding that the bankruptcy court had made such a finding. The decision does not hold that a bankruptcy court determination cannot satisfy § 523(a)(19) because no one made that argument. Further, the bankruptcy court's finding of liability rested on a post-bankruptcy arbitration award, so there was a non-bankruptcy determination of the issue.

context of the statute as a whole." *Robinson*, 519 U.S. at 341.

The text of § 523(a)(19) indicates that the bankruptcy court can render the requisite order or judgment. The statute references "any" judgment or order from "any" federal or state judicial proceeding. The modifier "any," "when read naturally, . . . has an expansive meaning, that is, one or some indiscriminately of whatever kind." *Saldivar v. Sessions*, 877 F.3d 812, 816 (9th Cir. 2017) (cleaned up); *see also Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1153 (9th Cir. 2010) ("The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive." (citation omitted)); *accord Bilski v. Kappos*, 561 U.S. 593, 601 (2010) ("In choosing such expansive terms . . . modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope." (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980))); *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978) (stating that Congress's use of the term "any person" should be afforded "its naturally broad and inclusive meaning").

Nothing in the text or context of § 523(a)(19) suggests that we should deviate from the ordinary, broad meaning of the term "any." Thus, a bankruptcy judgment is "any order or judgment," and "any" federal or state proceeding includes a proceeding before a federal bankruptcy court. *See In re Bae*, 645 B.R. at 288-89; *In re Jensen-Ames*, 2011 WL 1238929, at *8-9 (holding that the "unambiguous" and "clear" language of the statute "permits the bankruptcy court to establish the debtor's liability for a securities violation").

If Congress intended that only a non-bankruptcy court could enter the order or judgment, it could easily have said so. For example, in § 523(a)(19)(B)(i), Congress might have referred to "any Federal or State judicial or administrative proceeding **(other than a proceeding in the bankruptcy court)** . . . ." But Congress included no such phrase. Instead, it used the word "any" without qualification or exception. We presume that Congress acted intentionally and intended the plain meaning of the statute. *See Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004) ("[W]e must presume that Congress said what it meant and meant what it said."). Had Congress meant to preclude the bankruptcy court from making an independent determination, it could and would have said so. Generally, unless the Bankruptcy Code explicitly states otherwise, bankruptcy courts may determine both the liability on and amount of nondischargeable debts. Indeed, during oral argument, the Panel asked the appellees if there was any statutory or policy basis for why bankruptcy courts should not be able to make these determinations for purposes of § 523(a)(19), and the appellees did not provide an answer.

The *Anderson* court relied on the difference between the text of § 523(a)(19) before and after the 2005 BAPCPA amendment. We are not persuaded. Before BAPCPA, the section applied only if a federal or state forum entered a judgment or order before the bankruptcy petition. As an inevitable consequence of the temporal requirement, the bankruptcy court could not enter the requisite order or judgment, because before the

bankruptcy petition is filed, there is no case in which the bankruptcy court could act. *Anderson* reasons that, although Congress did away with the temporal requirement, it did not expressly do away with the limitation on the forum rendering the judgment that the temporal restriction created. We respectfully disagree with this inference: instead, it is sensible to infer that, when Congress did away with the temporal limitation, it also meant to do away with all of the necessary implications of the temporal requirement.

*Jafari* relies on the fact that some of § 523's subsections specifically refer to claims that are reduced to judgment and other sections do not. According to *Jafari*, the former category includes § 523(a)(7) (covering non-compensatory fines payable to governmental units), § 523(a)(11) (applicable to [among other things] debts provided in any "final judgment, unreviewable order, or consent or decree entered in any court of the United States or of any State" arising from fraud or fiduciary defalcation with respect to certain depository institutions), § 523(a)(13) (applicable to federal criminal restitution orders), and § 523(a)(17) (applicable to fees assessed against prisoners "by any court"). The *Jafari* court asserts that each of these sections only applies if another court has decided the debtor's liability. We disagree.

In the first place, the *Jafari* court simply assumed, without analysis or citations, that the bankruptcy court cannot enter the order on which those subsections are based. This is only true with respect to § 523(a)(11) and (13). The bankruptcy court would rarely have subject matter jurisdiction

over the kinds of proceedings against depository institutions and insured
credit unions that would give rise to nondischargeability under
§ 523(a)(11). And because the bankruptcy court does not have subject
matter jurisdiction over criminal matters, *see* 28 U.S.C. § 1334(a) & (b)
(granting jurisdiction over "civil" matters); *In re Inglewood Woman's Club,
Inc.*, BAP No. AZ-16-1087-JuLB, 2017 WL 2492530, at *4 (9th Cir. BAP June
7, 2017) ("A bankruptcy court simply lacks any jurisdiction over criminal
proceedings."), *aff'd*, 708 F. App'x 392 (9th Cir. 2017), the bankruptcy court
could not impose a restitution award under title 18 that is the basis for
nondischargeability under § 523(a)(13). But civil claims against the debtor
for securities law violations are within the bankruptcy court's subject
matter jurisdiction.

In the second place, we disagree with the *Jafari* court's unsupported
statement that subsections (7) and (17) require the existence of an order
entered by another court. Subsection (a)(7) does not mention an order at all,
and in fact § 505(a) specifically permits the bankruptcy court to determine
tax-related matters in most circumstances unless that issue was already
determined by a non-bankruptcy tribunal. We see no reason why a
bankruptcy court could not enter an order against a prisoner to which
subsection (a)(17) could apply.

Finally, even if some other subsections of § 523(a) require an order of
a non-bankruptcy forum, nothing in the language of § 523(a)(19) so
provides or suggests.

Therefore, we hold that the text of § 523(a)(19)(B) is unambiguous.[10] An order of the bankruptcy court deciding Tamio's and Anna's liability for a securities violation under Utah law could satisfy § 523(a)(19).

The bankruptcy court's erroneous interpretation of § 523(a)(19) was not harmless because it prevented Michiko from attempting to establish Tamio's and Anna's liability under the Utah securities law in the bankruptcy court. The court stated that, even if its determination of a securities violation would suffice under § 523(a)(19), Michiko did not present any evidence or argument at trial to establish that Tamio and Anna violated Utah securities law. It faulted Michiko for this shortcoming, stating that the court did not prevent her from attempting to prove her case at trial. The bankruptcy court's discussion is accurate in isolation but does not reflect the overall context of the case. It is true that the bankruptcy court did not prevent Michiko from introducing evidence at trial of the defendants' securities violations. However, its rulings before trial made abundantly clear that it would follow *Anderson* and not rule on liability in the first instance. Accordingly, Michiko pursued the only route she thought viable and pressed unsuccessfully to have the court accept the state court's

---

[10] Even if the text was ambiguous and we were compelled to examine legislative history, we would not reach a different conclusion. As we explained in *Rodriguez*, Congress enacted subsection (a)(19) to close loopholes and help victims of fraud. *In re Rodriguez*, 649 B.R. at 781. No one has explained why Congress would have intended to prevent creditors from vindicating their rights in the bankruptcy court or force them to litigate in multiple fora.

rulings in satisfaction of § 523(a)(19)(B). We will not fault Michiko for taking the court at its word and not trying to obtain a judgment or order on a securities violation in the bankruptcy court.

Michiko requests that we enter judgment against Tamio and Anna because the state court determined that Star Mountain violated the state securities law and they are liable as the managers of Star Mountain. We decline to do so in the first instance. So far as we can tell, the state court's order was never reduced to a final judgment, so it lacks preclusive effect. Further, we will not make factual findings on appeal about Tamio's and Anna's status as managers of Star Mountain, particularly where the parties have not comprehensively briefed the issue. Rather, we remand this issue to the bankruptcy court for further proceedings on Michiko's § 523(a)(19) claim.[11]

---

[11] Because we determine that the bankruptcy court incorrectly construed § 523(a)(19), we need not address Michiko's alternative argument that the bankruptcy court was required to abstain to allow the Utah state court to decide liability and to modify the discharge injunction so she could proceed in state court. We leave it to the bankruptcy court to decide how best to address Michiko's claim on remand.

However, we note that this Panel has previously held that the bankruptcy court may not modify the discharge injunction. *See Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 550 (9th Cir. BAP 2002) ("The assumption that the § 524(a)(2) statutory discharge injunction can be modified is incorrect; the discharge injunction is set in statutory concrete. The assumption that the discharge injunction bars actions that could lead to determination of nondischargeable debt is also incorrect; neither the discharge nor the discharge injunction shields a debtor from nondischargeable debt."). Michiko correctly noted during argument that pursuing her claims post-discharge could be risky because, if the court held that her claims were not excepted from discharge, her pursuit of those claims would violate the discharge injunction. But the bankruptcy court cannot protect

**B.    The bankruptcy court did not err in applying the federal nondischargeability standards under § 523(a)(2), (4), and (6).**

Michiko contends that the bankruptcy court erred in failing to apply a "heightened standard" for the nondischargeability claims under § 523(a)(2), (4), and (6). She claims that the bankruptcy court should have applied "'heightened duties to disclose' imposed by the Utah Securities Act." We disagree.

Nondischargeability is a matter of federal law. Michiko offers no authority for the proposition that the bankruptcy court must apply state law when determining dischargeability under the Bankruptcy Code. *Cf. Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 93 (9th Cir. BAP 2000) ("There are two separate and distinct causes of action in a nondischargeability proceeding: one is on the debt, as determined by state law, and the other is on the dischargeability of that debt, as determined by federal law."), *aff'd*, 33 F. App'x 365 (9th Cir. 2002). The bankruptcy court did not err in identifying and applying the proper nondischargeability standards.

**C.    The bankruptcy court did not clearly err in its factual findings under § 523(a)(2)(B).**

Michiko argues that the bankruptcy court erred in evaluating the evidence for the § 523(a)(2)(B) claim related to the EAG loan. In particular, she claims that the bankruptcy court ignored the evidence that Tamio

---

her from this risk by modifying the discharge injunction.

misrepresented his savings account on his loan application. None of the bankruptcy court's factual findings are clearly erroneous.

To prevail on an exception to discharge claim under § 523(a)(2)(B), the creditor must show, by a preponderance of the evidence, that: (1) it provided the debtor with money, property, services, or credit based on a written representation of fact by the debtor as to the debtor's financial condition; (2) the representation was materially false; (3) the debtor knew the representation was false when made; (4) the debtor made the representation with the intention of deceiving the creditor; (5) the creditor relied on the representation; (6) the creditor's reliance was reasonable; and (7) damage proximately resulted from the representation. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

"The scienter requirement for a fraudulent misrepresentation [under § 523(a)(2)(B)] is established by showing 'either actual knowledge of the falsity of a statement, or reckless disregard for its truth . . . .'" *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 167 (9th Cir. BAP 1999) (citation omitted).

Under § 523(a)(2)(B), the creditor's reliance must be both actual and reasonable. *See Heritage Pac. Fin., LLC v. Montano (In re Montano)*, 501 B.R. 96, 115 (9th Cir. BAP 2013).

The bankruptcy court found that Michiko failed to establish that Tamio intended to defraud EAG. It noted that the misstatement appeared only once on the loan application and that it was accompanied by a

27

notation appearing to indicate that the account information referenced the Landmark Bray-Conn account.

Similarly, the bankruptcy court found that Michiko did not carry her burden to prove that EAG actually and reasonably relied on Tamio's statements. The court pointed to Mr. Rosen's testimony that EAG considered foremost the collateral securing the loan (i.e., the $2.2 million Landmark Bray-Conn account), not Tamio's supposed personal assets (i.e., the misrepresented savings account). It also found that EAG did not actually rely on Tamio's representation in deciding to extend the loan. In the end, it was "unconvinced that Tamio's misrepresentation had any significant influence on EAG's decision." Similarly, it held that any reliance was not reasonable, because EAG did not verify the information on the application and "ignored clear warning signs that something was amiss . . . ."

These factual findings are not clearly erroneous. The court simply did not believe Michiko's version of events. The record adequately supports the bankruptcy court's inference that Tamio did not intentionally seek to defraud EAG and that EAG did not actually and reasonably rely on Tamio's representations. *See Baner v. Charles (In re Charles)*, BAP No. NV-23-1081-FBN, 2024 WL 449971, at *9 (9th Cir. BAP Feb. 6, 2024) ("We will not second guess the bankruptcy court's factual finding as to [debtor's] state of mind."); *see also Cooper v. Harris*, 581 U.S. 285, 309 (2017) ("[W]e give singular deference to a trial court's judgments about the credibility of

28

witnesses.").

We reject Michiko's assertions that the bankruptcy court "ignored,"
"disregarded," or "left out" certain testimony. The bankruptcy court
acknowledged Tamio's and Mr. Rosen's testimony; the fact that it did not
reference in its decision every point raised during hours of testimony does
not mean that it ignored that evidence.[12]

## CONCLUSION

The bankruptcy court erred when it ruled that § 523(a)(19)(B)
requires a judgment or order of a forum other than the bankruptcy court.
We VACATE that determination and REMAND for further proceedings by
the bankruptcy court. We AFFIRM as to the bankruptcy court's other
rulings.

---

[12] We also reject Michiko's argument that the bankruptcy court erred in denying
her request to electronically file documents through the court's CM/ECF system. We
discern no abuse of the court's broad discretion. *Sphear Invs., LLC v. Sunglass Int'l, LLC*,
584 F. App'x 602, 603 (9th Cir. 2014) (holding that the district court did not abuse its
discretion in denying the pro se appellant permission to use the CM/ECF system).
Further, Michiko was not prejudiced.