## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| **IN RE:**<br><br>**TAMIO L. STEHRENBERGER and ANNA C. STEHRENBERGER,**<br><br>    **Debtors.** | **Case No. 20-00833-NGH**<br><br>**Chapter 7** |
| **MICHIKO STEHRENBERGER,**<br><br>    **Plaintiff,**<br>**v.**<br><br>**TAMIO L. STEHRENBERGER and ANNA C. STEHRENBERGER,**<br><br>    **Defendants.** | **Adv. No. 20-06044-NGH** |

## MEMORANDUM OF DECISION

On remand from the Bankruptcy Appellate Panel is plaintiff Michiko

Stehrenberger's claim that the debt owed to her by defendants Anna Stehrenberger and

Tamio Stehrenberger (collectively "Defendants")[1] is nondischargeable pursuant to 11

U.S.C. § 523(a)(19).[2]  Section 523(a)(19) excepts from discharge a debt arising from a

---

[1] Given the parties' shared surname, the Court will refer to them using their first names (Michiko, Anna, and Tamio) when discussing them individually.  No disrespect is intended.

[2] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101-1532.  Additionally, all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure and all citations to "Civil Rule" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

violation of securities laws. In its decision, the panel vacated the Court's determination that § 523(a)(19) required a judgment or order establishing the securities law violation from a forum other than the bankruptcy court. *See Stehrenberger v. Stehrenberger*, 665 B.R. 402 (9th Cir. BAP 2024). Accordingly, before determining dischargeability under § 523(a)(19), the Court must first establish whether Defendants are liable to Michiko for violating securities laws. *See In re Valle*, 469 B.R. 35, 43 (Bankr. D. Idaho 2012) (dischargeability is a "two-step process: first, the establishment of the debt itself; and second, a determination as to the nature—dischargeable or nondischargeable—of that debt"). The Court concludes that Tamio is liable to Michiko for violating the Utah Uniform Securities Act, Utah Code §§ 61-1-1 to 61-1-206, by selling unregistered securities, and that this debt is nondischargeable under § 523(a)(19). Anna is not liable.

**BACKGROUND**

This decision incorporates all findings of fact set forth in the Court's Memorandum of Decision entered on September 6, 2023. Doc. No. 313. Michiko executed two promissory notes with Star Mountain Enterprises, LLC ("Star Mountain") on April 23, 2007, for a total investment of $100,000.[3] Michiko was to receive 24% interest per annum or 2% monthly under the notes. Francine Yeh executed promissory notes with Star Mountain on December 23, 2006, for $53,500, and January 25, 2007, for $100,000, for a total investment of $153,500.[4] Yeh was to receive 18% per annum on the December note and 24% per annum on the January note. Ken Hsieh executed a

---

[3] Ex. 8 at 1081-84.
[4] Ex. 8 at 1088-91.

MEMORANDUM OF DECISION - 2

promissory note with Star Mountain on February 23, 2007, for a total investment of $5,000.[5]  Hsieh was to receive 24% interest per annum.  All notes provide that interest would not accrue the first month after deposit.  Yeh and Hsieh assigned their rights under the promissory notes to Michiko.[6]

**PRELIMINARY MATTERS**

Before addressing the merits of Michiko's claims against Defendants, the Court must address the following preliminary matters:  (A) exhibit numbering; (B) Plaintiff Michiko Stehrenberger's Amended Rule 9006(b) Motion to Extend Time to File Pre-Trial Brief, Witness List, Plus Exhibit List (the "Amended Motion to Extend") (Doc. No. 480); (C) Plaintiff's Objection and Request for Reconsideration of the Court's Order Excluding and Striking the Testimony of Remote Witness Francine Yeh and Ken Hsieh ("Motion to Reconsider") (Doc. No. 490); and (D) Amendment of Plaintiff's Second Amended Adversary Complaint (the "Second Amended Complaint") (Doc. No. 88),

---

[5] Ex. 8 at 1094-95.  Michiko asserts Hsieh invested approximately $17,000, not $5,000 as indicated on the promissory note and note assignment.  At the 2023 trial, the following exchange occurred:

Michiko:  I think earlier there was discussion about Ken having put in additional amounts, correct?

Tamio:  Yes.  Well, he put in amounts.  I do not know what that exact number is.

Michiko:  If I told you that amount was $17,000, would that be incorrect?

Tamio:  I can't respond.  It seems like it would be somewhere in that ballpark.

Michiko:  Do you have evidence that states it would be anything other than $17,000?

Tamio:  No.

*See* Doc. No. 355 at 93-94.  Based on this exchange, Hsieh may have invested additional funds, but the actual amount invested and the connection between any such funds and Defendants is unclear.  The record does not support a finding that Hsieh purchased securities totaling more than $5,000.

[6] Ex. 8 at 1085-86, 1092-93.

MEMORANDUM OF DECISION - 3

including Plaintiff's Motion for Leave to Amend Second Amended Complaint to Conform to Evidence Obtained at Trial ("Motion to Amend Complaint") (Doc. No. 491).

### A.      Exhibit Numbering

The Court provides the following clarification regarding exhibit numbering in this case.  The Court's Order Regarding Exhibits and Witness Lists, *see* Doc. No. 145, required Michiko to identify and mark her exhibits with consecutive numbers starting with 1000.  Michiko, however, marked her exhibits starting with "Exhibit 1."  She then assigned page numbers to each exhibit, beginning with page 1000 as the first page of "Exhibit 1" and continuing consecutively through all her exhibits.  Therefore, Michiko's exhibits cited in this memorandum are identified by both the exhibit number, and where appropriate, the corresponding pages admitted into the record.

Additionally, at the 2023 trial, Tamio admitted exhibits 2046-2055 as rebuttal exhibits.  At the 2025 trial, however, Tamio's marked exhibits also started with the number 2046 instead of continuing from 2056.  To avoid confusion from this duplication, the Court has redesignated the exhibits as follows:

- Exhibits 2046a-2055a:  Tamio's rebuttal exhibits from the 2023 trial;

- Exhibits 2046b-2055b:  Tamio's exhibits from the 2025 trial.

### B.      Michiko's Motion to Extend

On February 19, 2025, the Court issued a Trial Scheduling Order and Order Regarding Exhibits and Witness Lists ("Scheduling Order") establishing pretrial deadlines.  Doc. No. 371.  The Scheduling Order established a June 10, 2025, deadline for parties to file pretrial briefs, with trial to occur from June 24-26, 2025.  It also

MEMORANDUM OF DECISION - 4

required each party to make certain disclosures regarding exhibits and witnesses by June 10, 2025.

Regarding exhibits, the Scheduling Order provided in relevant part that:

> Any party intending to offer an exhibit in evidence shall provide pre-marked copies thereof to opposing parties, and provide a witness original, one bench copy and an additional electronic version or copy to the courtroom deputy, no later **June 10, 2025**, unless otherwise ordered by the Court. Failure to do so may be grounds for not admitting an exhibit in evidence.

Scheduling Order at 4-5. Similarly, regarding witnesses, the Scheduling Order provided in relevant part that:

> Each party shall disclose the names and addresses of all witnesses proposed to be called at trial, except for rebuttal witnesses. Such witness lists shall be provided to opposing parties and the courtroom deputy no later than **June 10, 2025**, unless otherwise ordered by the Court. Failure to do so may be grounds for not allowing the testimony of a witness.

*Id*. at 5.

Michiko failed to timely file her pre-trial brief or provide the required witness and exhibit disclosures. One day after the deadline, she filed a Pre-Trial Brief (Doc. No. 473) and a motion under Rule 9006(b) seeking an extension of time to file the pre-trial brief and a witness list (Doc. No. 472). Michiko did not initially seek to extend the time to provide exhibit disclosures. Tamio opposed Michiko's motion arguing that the requested extension would prejudice him. *See* Doc. No. 474. Three days after the disclosure deadline, Michiko filed an Amended Pre-Trial Brief. Doc. No. 477. Then, ten days after the disclosure deadline, Michiko filed the Amended Motion to Extend, seeking to enlarge

MEMORANDUM OF DECISION - 5

certain deadlines regarding her Amended Pre-Trial Brief, witness disclosures, and exhibit disclosures.  Doc. No. 480.

The Court addressed this matter on the first day of trial.  The Court explained that it had due process concerns regarding Michiko's disclosure of witnesses and exhibits and whether such disclosures permitted Defendants a reasonable opportunity to prepare for trial.  Regarding exhibits, the Court noted that its concern was not alleviated just because Defendants may have seen a potential exhibit before in the state court case between these same parties approximately ten years prior, or that the document may exist somewhere on the Court's voluminous docket in this case.  The Court expressed concern that Defendants did not know which documents Michiko had designated as exhibits at least two weeks prior to the trial, so Defendants could prepare their defenses, prepare potential objections to the admission of these exhibits, and prepare to examine witnesses based on exhibits that may be offered for admission.  The Court voiced similar concerns that Defendants did not know which witnesses Michiko would designate to call at trial in order to permit Defendants a reasonable opportunity to prepare for trial.

The Court declined to rule on the Amended Motion to Extend before trial.  Instead, the Court took the matter under advisement and indicated it would rule after the close of evidence.  Accordingly, Michiko's exhibits, unless admitted previously at the 2023 trial, were conditionally admitted, subject to the Court's ruling on the Amended Motion to Extend.  The Court also permitted Michiko to call her witnesses at trial but warned that if the Court later concluded any witness was not properly disclosed as required by the Scheduling Order, it would not consider that witness's testimony.

MEMORANDUM OF DECISION - 6

After the conclusion of trial, the Court issued its Order Requiring Additional Information Regarding Conditional Admission of Exhibits.  Doc. No. 502.  That order required Michiko to provide the Court with additional information concerning the disclosure of the four exhibits that were conditionally admitted at trial.  Michiko did so by filing a "Declaration of Michiko Stehrenberger Complying with Order (Doc. No. 502) and in Support of Granting Extension and Permanently Admitting the Previously Conditionally Admitted Exhibits."  Doc. No. 510 (the "Disclosure Declaration").

### 1.    Extension of Briefing Deadline

The Court will grant the Amended Motion to Extend regarding Michiko's deadline to file her Amended Pre-Trial Brief.  Defendants were not prejudiced by the late filing.  Pre-trial briefing aids the Court and opposing parties in preparing for trial and provides legal support for a party's claims.  However, the Court does not make factual findings or reach legal conclusions based on pre-trial briefing.  Instead, the Court relies upon the applicable law and evidentiary record established at trial.  Here, the parties were given the opportunity to provide written closing statements addressing the applicable law after the close of evidence.  Consequently, Defendants were able to respond to Michiko's legal argument after considering the complete evidentiary record.

### 2.    Extension of Witness Disclosure Deadline

The Court permitted Michiko to elicit testimony from three witnesses at trial:  Michiko and both Defendants.[7]  All three witnesses were listed on Michiko's Witness

---

[7] Michiko also sought to elicit testimony from Ken Hsieh and Francine Yeh.  As discussed below, their testimony is not part of the record due to Michiko's failure to comply with the Court's order governing remote testimony.

MEMORANDUM OF DECISION - 7

List filed in advance of the 2023 trial, Doc. No. 262, and on the additional witness list Michiko filed on April 14, 2025, Doc. No. 403.  The Certificate of Service attached to that witness list indicates that Michiko served it on the Defendants on April 10, 2025.  Accordingly, the Court concludes Michiko timely disclosed these three witnesses to Defendants and it is not necessary to extend Michiko's witness disclosure deadline.

### 3. Extension of Exhibit Disclosure Deadline

The Court conditionally admitted the following exhibits at trial:

• Exhibit 24 (pgs. 1224-1231, 1233, 1334)

• Exhibit 26 (pgs. 1240-1241)

• Exhibit 28 (pgs. 1274-1280)

• Exhibit 38

The Court will rule on each exhibit in turn.

Exhibit 24 was not disclosed timely and will not be admitted into evidence. As reflected in the Disclosure Declaration, Michiko first listed Exhibit 24 (pages 1224-1231, 1233, and 1334) on an exhibit list filed with the Court on June 20, 2025, just four days before the start of trial.  While pages 1124-1229 had been provided to Defendants earlier, on April 4, 2025, as an attachment to Plaintiff's Motion for Summary Judgment, the remaining pages were not provided until June 16, 2025, when Michiko shared a DropBox link containing electronic copies of the documents.  The Court finds that Michiko failed to comply with the Scheduling Order governing disclosure of exhibits. The fact that some pages were previously produced in connection with a motion for summary judgment did not provide Defendants with adequate notice that those

MEMORANDUM OF DECISION - 8

documents would be offered as trial exhibits, particularly given that the motion for summary judgment was itself untimely.  Accordingly, the Court will not admit Exhibit 24 or consider it in ruling on the merits of this matter.

Michiko timely disclosed Exhibit 26, pages 1240-1241, and it will be admitted into evidence.  The relevant portion of this exhibit was previously disclosed as Exhibit 17, page 1262-1264, during the 2023 trial and was provided to Defendants in advance of the 2023 trial.

Michiko did not timely disclose Exhibit 28, pages 1274-1280, and it will not be admitted into evidence.  As reflected in the Disclosure Declaration, Michiko first listed Exhibit 28 (pages 1274-1280) on an exhibit list filed with the Court on June 20, 2025, just four days before the start of trial.  Further, pursuant to the Disclosure Declaration, Michiko did not provide Defendants with a copy of the exhibit until June 16, 2025, when she provided Defendants with a DropBox link containing an electronic version of the exhibit.  This occurred well after the disclosure deadline.

Finally, Michiko timely disclosed Exhibit 38, and it will be admitted into evidence.  The relevant portion of this exhibit was previously disclosed as Exhibit 11, page 1163, during the 2023 trial and was provided to Defendants in advance of the 2023 trial.

### C.      Amendments to Second Amended Complaint

The Court must consider two issues regarding amendments to the Second Amended Complaint.  First, the Court must address Michiko's formal Motion to Amend

MEMORANDUM OF DECISION - 9

Complaint, Doc. No. 491. Second, the Court must determine whether it is appropriate to amend the Second Amended Complaint based on the parties' implied consent.

### 1. Legal Standard to Amend Complaint

Bankruptcy Rule 7015 makes Civil Rule 15(b) applicable in adversary proceedings. Civil Rule 15(b)(2) provides:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

This Court has broad discretion to permit evidence that does not conform to the pleadings to resolve the merits of the dispute so long as no element of undue prejudice or surprise is present. *In re Vanschoiack*, 356 B.R. 56, 62 (Bankr. D. Idaho 2006). Civil Rule 15(b) is designed to be automatic. The key question is whether there has been the requisite consent of the parties. *In re Yadidi*, 274 B.R. 843, 851 (9th Cir. BAP 2002). In short, "[o]nce a case is actually tried, what was actually litigated takes precedence over the pleadings." *Id.*

### 2. The Motion to Amend Complaint

Michiko filed a Motion to Amend Complaint during break before the conclusion of the third day of trial. Doc. No. 491. The motion appears to rely on Civil Rule 15(b)(2) and seeks to amend her complaint to include "additional claims for violations of multiple states' securities laws and of federal securities law by Star Mountain (and its Managers Anna and Tamio) conducting illegal sales of securities across state lines." *Id.* at 3. At

MEMORANDUM OF DECISION - 10

trial, the Court declined to rule on the Motion to Amend Complaint until Defendants had an opportunity to review and respond to it. Michiko filed Plaintiff's Third Amended Complaint on June 27, 2025. Doc. No. 499. Both Defendants filed written objections opposing the motion after trial. *See* Doc. Nos. 508 and 513.

The Court will deny the Motion to Amend because such amendment would result in undue prejudice and surprise to Defendants. Michiko does not identify the specific state or federal statutes she alleges the Defendants violated, either in her Motion to Amend Complaint, the proposed Third Amended Complaint, or her written closing arguments, Doc. No. 517. While she generally alleges violations of federal and state securities laws, this is insufficient to put Defendants on notice of the specific statutes at issue. Without knowing which state and federal securities laws Michiko contends Defendants violated, the Court cannot determine what standards would apply to establish Defendants' liability. Nor can Defendants reasonably defend against such liability.

The Court also concludes that Defendants did not consent to this Court trying unpled state and federal securities laws at trial. At trial on June 24, 2025, Tamio testified that Star Mountain did not have more than 15 investors. That number of investors is important because the applicable version of Utah Code section 61-1-14(2)(q) (2007)[8] provided a safe harbor regarding the sale of securities if there were not more than 15 purchasers in Utah. Upon further examination, however, Tamio identified more than 15 investors who had invested in Star Mountain. On cross-examination by Anna, Tamio

---

[8] This statute has been amended many times since the parties' transactions in 2006 and 2007, starting with an amendment effective May 5, 2008.

MEMORANDUM OF DECISION - 11

identified certain investors who resided in states other than Utah.  The Court concludes

that Tamio's testimony identifying certain Star Mountain investors and their locations

does not constitute consent to try unpled federal and additional state securities law

violations.[9]  The mere mention of out-of-state investors during testimony about the

applicable Utah safe harbor provision does not transform the trial into a proceeding on

unpled multi-state or federal securities claims.

Finally, Michiko seeks to amend her complaint to assert additional claims against

Star Mountain for violations of multiple states' securities laws and federal securities law.

However, Star Mountain is not a party to this proceeding and cannot consent to the

adjudication of claims against it.  Therefore, such amendment is improper.

### 3.  Amendment of Complaint to Conform to Evidence

As noted, Michiko's Second Amended Complaint contains a cause of action under

§ 523(a)(19), in which she asserts Defendants violated the Utah Uniform Securities Act

("UUSA"), specifically Utah Code section 61-1-1(2) for fraud, justifying damages under

section 61-1-22.  Doc. No. 88.  The Second Amended Complaint does not contain

assertions that Defendants violated Utah Code section 61-1-3, concerning certain

licensing requirements in connection with the sale of securities, or section 61-1-7,

concerning registration requirements for the sale of securities.  Regardless, the parties

addressed claims under sections 61-1-3 and 61-1-7.  Defendants had advance notice that

---

[9] Moreover, while Star Mountain may have had other investors, Michiko was not a party to the transactions between those investors and Star Mountain.  Michiko does not explain how the existence of those other investors provides her with a cause of action against Defendants under federal or other state securities laws.

MEMORANDUM OF DECISION - 12

Michiko intended to try these claims, and Defendants did not oppose the presentation of evidence related to the claims at trial.  *See* Doc. No. 375.  Indeed, Tamio specifically addressed the issues in his pre-trial brief and closing argument.  Therefore, the Court will permit amendment of the Second Amended Complaint to include claims that Defendants violated Utah Code sections 61-1-3 and 61-1-7.

### D.      Michiko's Motion to Reconsider

At trial, the Court struck the testimony of witness Francine Yeh and prohibited Michiko from calling witness Ken Hsieh due to Michiko's failure to comply with the Court's order that granted in part and denied in part Michiko's request for witnesses to appear remotely by Zoom, Doc. No. 462 (the "Remote Testimony Order"), and the resulting prejudice to Defendants.

The Court entered the Remote Testimony Order approximately one month before trial.  That order authorized Yeh and Hsieh, among others, to appear and testify at trial remotely via Zoom.  The order also required Michiko to ensure that her remote witnesses had access to copies of all exhibits while testifying.  The order provided in relevant part:

> 2. **Exhibits:**  The parties shall comply with any Court order and local rules regarding the identification and exchange of witness and exhibit lists and exhibits.  In addition:
>
> a. It is the obligation of the party identifying a witness to provide his/her witnesses with all the exhibits, those identified by the party and those identified by all other parties.  Thus, Plaintiff shall ensure that her Zoom witnesses have copies of all the exhibits.  She may provide those copies in electronic format; however, she must ensure that the witness has the ability to view the exhibit and testify simultaneously.

MEMORANDUM OF DECISION - 13

b. The Court will address the dissemination of any rebuttal exhibits as they are presented.

Before Yeh testified, the Court asked Michiko to confirm that her remote witnesses had access to copies of the trial exhibits, including Defendants' exhibits. Michiko indicated that she believed the witnesses had access to all of the exhibits, including Defendants' exhibits.[10]

During Yeh's testimony, however, two problems became apparent. First, during direct examination, the copies of Michiko's exhibits provided to the witnesses were not identical to the exhibits before the Court and Defendants. Second, during Tamio's cross-examination, Yeh did not have access to Defendants' exhibits or to Michiko's exhibits admitted at the 2023 trial. Tamio attempted but was unable to cross-examine Yeh regarding Exhibit 2054b or Exhibit 8 because the witness lacked access to these exhibits.

Tamio moved orally to strike Yeh's testimony. The Court granted the motion, reasoning that Tamio was prejudiced by Michiko's noncompliance as he was unable to cross-examine Yeh as intended using all available trial exhibits. The scope of his cross-examination was restricted by Michiko's failure to comply with the Remote Testimony Order. The Court also prohibited Ken Hsieh from testifying because Defendants' cross-examination would be similarly limited due to the absent exhibits.

---

[10] The following exchange occurred at the start of trial on June 25:

Court:  Are there copies of the exhibits available to the witness there?

Plaintiff:  Yes, I confirmed that this – about an hour ago.

Court:  Okay, and that includes not only your exhibits but all the Defendants' exhibits as well?

Plaintiff:  I believe so.  They didn't submit them, but I did my best to forward what I could.

MEMORANDUM OF DECISION - 14

Michiko seeks reconsideration of the Court's ruling.  *See* Doc. No. 490.  Both Defendants oppose such reconsideration.  *See* Doc. Nos. 509 and 511.  Michiko argues that the Remote Testimony Order was ambiguous because it did not include a specific deadline for providing the remote witnesses with copies of all exhibits.  She further argues that because the order permitted her to provide copies in electronic format, the Court should have granted a recess to allow her to email all exhibits to the remote witnesses.

The Court disagrees.  A trial court has the authority to enter pretrial case management orders designed to ensure that the relevant issues to be tried are identified, "and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly."  *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (en banc).  Further, "[a]ll federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders."  *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001).  "As a function of this power, courts can dismiss cases in their entirety, bar witnesses, award attorney's fees and assess fines."  *Id*.

The Remote Testimony Order unambiguously required Michiko to ensure that her remote witnesses had copies of all exhibits.  Michiko failed to provide all exhibits to the remote witnesses.  This Court has broad discretion in managing its courtroom at trial, and nothing in the Remote Testimony Order required the Court to interrupt cross-examination so that Michiko could remedy her failure by emailing the omitted exhibits to the witnesses.  Moreover, the fact that the Remote Testimony Order states "the Court will

MEMORANDUM OF DECISION - 15

address the dissemination of any rebuttal exhibits as they are presented" does not support Michiko's argument that she could pause the trial to email copies of exhibits to the witnesses as needed. None of the exhibits Michiko failed to provide were rebuttal exhibits. As such, the Court will deny Michiko's motion for reconsideration.

**ANALYSIS**

The Court now turns to the merits of the trial. As noted, Michiko seeks a judgment against Defendants for violations of the UUSA arising out of the referenced promissory notes, as well as a determination that the debt is nondischargeable. The definition of "security" is broad, and the parties do not dispute that the promissory notes are securities and subject to the UUSA. *See* Utah Code § 61-1-13(x)(i) (2006).

In pertinent part, the UUSA provides that a person who "offers or sells a security in violation" of subsection 61-1-3(1), section 61-1-7, or subsection 61-1-1(2) is liable to a person who buys the security. Utah Code § 61-1-22(1)(a) (2006). The person to whom the seller is liable may sue in law or equity as permitted by the statute. *Id.* Michiko alleges Defendants offered and sold her securities in violation of various sections of the UUSA. One violation, however, is sufficient to establish liability.

### A.      Liability

Michiko asserts two theories of liability: (1) that Defendants are individually liable for selling securities in violation of the UUSA, and (2) that they are jointly and severally liable with Star Mountain for Star Mountain's violations of the UUSA. As explained below, the Court concludes that Tamio may be held individually liable, but Anna may not. Additionally, because the Court cannot determine Star Mountain's liability since it

MEMORANDUM OF DECISION - 16

is not a party to this adversary proceeding, there is no basis for finding either Defendant

jointly and severally liable.

### 1. Liability for Sale of Securities

The UUSA establishes a private cause of action against persons who offered or

sold securities in violation of the UUSA.  Such cause of action exists only for the

purchasers of the securities.  In other words, the UUSA provides a remedy "only to

plaintiffs who are in privity with the defendant." *Gohler v. Wood*, 919 P.2d 561, 565

(Utah 1996).  Therefore, before assessing if a violation occurred, it is necessary to

determine whether Defendants offered and sold securities to Michiko, Francine Yeh, and

Ken Hsieh.

Under the UUSA an "offer to sell" includes "every attempt or offer to dispose of,

or solicitation of an offer to buy, a security or interest in a security for value."  Utah Code

§ 61-1-13 (v)(ii) (2006).  "The issue of whether a party is considered a 'seller' under the

Utah Act is governed by the same standard which applies to claims of primary liability

under § 12(2) of the Federal Securities Act of 1933." *Wenneman v. Brown*, 49 F. Supp.

2d 1283, 1290 (D. Utah 1999).  A seller is "one who actually passes title to the stock or

who actively solicits the purchase motivated by a desire to serve his own financial

interests or those of the security owner." *Id.  See also Pinter v. Dahl*, 486 U.S. 622, 646-

47 (1988) (interpreting "offers or sells" to extend liability to those who persuade a buyer

to purchase securities).

The record demonstrates that Tamio offered and sold the promissory notes at

issue.  Specifically, Tamio invited Michiko's, Yeh's, and Hsieh's investments, discussed

MEMORANDUM OF DECISION - 17

investment terms with them, and executed the notes on behalf of Star Mountain. Because these sales were at least partially motivated by a desire to further Star Mountain's financial interests, Tamio qualifies as a "seller" under the UUSA and may be held individually liable if he violated the UUSA.

Anna testified that she engaged only in general conversations about investments and Star Mountain at the family gathering in Switzerland and other social events. Michiko disputes this account, arguing that Anna directly influenced her decision to invest with Star Mountain during the Switzerland gathering. However, the record demonstrates that Michiko's interactions concerning Star Mountain occurred primarily with Tamio, not Anna. After assessing the credibility of the parties' conflicting testimony regarding Anna's conversations at the Switzerland gathering and other social events, the Court finds insufficient evidence to conclude that Anna's actions were directed at producing a sale or that Anna persuaded or urged Michiko to invest in Star Mountain.[11] Michiko has failed to meet her burden of proof on this issue. Moreover, the record contains little to no evidence concerning Anna's involvement with Yeh's and Hsieh's purchases of Star Mountain promissory notes. Based on the record before it, the

---

[11] Michiko also argues that Anna signed a 2011 document in a Utah State Court case stating that Anna played an active role in selling securities to Michiko. That document, marked as Exhibit 4, purportedly consists of excerpts of a Memorandum in Support of Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment filed in the Utah State Court case. The document was never admitted into evidence in this case. While Michiko read portions of the document into the record when questioning Anna at the 2023 trial, the assertions contained in it constitute inadmissible hearsay to which the Court gives no evidentiary weight. Simply because something is somewhere in the Court's file does not make the factual assertions in that something properly admissible evidence. Moreover, this line of questioning did not impugn Anna's credibility.

MEMORANDUM OF DECISION - 18

Court does not find that Anna offered the notes or otherwise solicited Michiko, Yeh, or

Hsieh's investments with Star Mountain.

### 2. Joint and Several Liability with Star Mountain

Michiko also argues that both Tamio and Anna, as members of Star Mountain,

may be held strictly liable for Star Mountain's violations of the UUSA pursuant to

subsection 61-1-22(4)(a) (2006), which provides:

> Every person who directly or indirectly controls a seller or
> buyer liable under Subsection (1), every partner, officer, or
> director of such a seller or buyer, every person occupying a
> similar status or performing similar functions, every employee
> of such a seller or buyer who materially aids in the sale or
> purchase, and every broker-dealer or agent who materially aids
> in the sale are also liable jointly and severally with and to the
> same extent as the seller or purchaser, unless the nonseller or
> nonpurchaser who is so liable sustains the burden of proof that
> he did not know, and in exercise of reasonable care could not
> have known, of the existence of the facts by reason of which
> the liability is alleged to exist.

Michiko asserts that this provision imposes strict joint and several liability on Tamio and

Anna for Star Mountain's violations of the UUSA.  Specifically, she argues Star

Mountain:

- Violated the UUSA's registration requirements under section 61-1-7;

- Violated the UUSA's licensing requirement under section 61-1-3;

- Violated the UUSA's risk disclosure requirement under section 61-1-1(2).

No court has entered a money judgment establishing Star Mountain's liability for

violations of the UUSA.  To the extent Michiko relies on the Findings of Fact and

Conclusions of Law Upon the Default of Defendants Anna Stehrenberger Star Mountain

Enterprises, LLC, and Taanen, LP, Exhibit 11, entered in the Utah State Court, this Court

MEMORANDUM OF DECISION - 19

has already determined it does not qualify as a final judgment entitled to preclusive effect.[12] *See also Stehrenberger v. Stehrenberger (In re Stehrenberger)*, 665 B.R. 402, 417 (9th Cir. BAP 2024).  Additionally, this Court cannot make a determination as to Star Mountain's liability in the first instance because Star Mountain is not a party to this proceeding.[13]

### B.   Tamio's Violations of the UUSA

Having determined that only Tamio may be liable on these facts, the Court turns to the asserted violations of the UUSA.  Michiko alleges that Tamio violated the UUSA by selling unregistered securities.  With limited exceptions, section 61-1-7 of the UUSA prohibits the offer or sale of any security unless it is registered.  One exception is if the security or transaction is exempt from registration under section 61-1-14.  The parties do not dispute that the Star Mountain securities were not registered.  Instead, Tamio argues the transactions were exempt pursuant to 61-1-14(2)(q), which provides that a transaction is exempt if:

> (i) the transaction is part of an issue in which there are not more than 15 purchasers in this state, other than those designated in Subsection (2)(h), during any 12 consecutive months;
>
> (ii) no general solicitation or general advertising is used in connection with the offer to sell or sale of the securities;
>
> (iii) no commission or other similar compensation is given, directly or indirectly, to a person other than a broker-dealer or

---

[12] The Utah State Court later set aside the default as to Anna.  *See* Ex. 3002.

[13] Prior to the 2023 trial, this Court dismissed Star Mountain after finding it lacked subject-matter jurisdiction over the claims against Star Mountain.  Doc. No. 84.  Michiko did not challenge that dismissal on appeal.  *See Stehrenberger*, 665 B.R. at 408 n.3.

MEMORANDUM OF DECISION - 20

agent licensed under this chapter, for soliciting a prospective purchaser in this state;

(iv) the seller reasonably believes that all the purchasers in this state are purchasing for investment;

(v) the transaction is part of an aggregate offering that does not exceed $500,000, or a greater amount as prescribed by a division rule, during any 12 consecutive months; and

(vi) the director, as to a security or transaction, or a type of security or transaction, may withdraw or further condition this exemption or waive one or more of the conditions in Subsection (q).

Utah Code § 61-1-14(2)(q) (2007).  Under the UUSA the person claiming an exemption under section 61-1-14 bears the burden to prove the exemption applies.  Utah Code § 61-1-14(5)(b) (2007).  Therefore, Tamio must demonstrate that each element of (2)(q) is satisfied.

To qualify for an exemption under section 61-1-14(2)(q), the aggregate offering may not exceed $500,000 in any 12-month period.  According to the investment account statements, Star Mountain had $2,213,500 invested with Landmark Bray-Conn in 2007.[14] Tamio testified that he, Anna, and at least one of their entities executed promissory notes with Star Mountain, and these investments reached approximately $1,800,000 over time. Third parties such as Michiko, Francine Yeh, and Ken Hsieh invested the remaining funds.  The Landmark Bray-Conn investment account grew from $1,042,000 to $2,213,500 over a 7-month period between February 28, 2007, and September 30, 2007.[15]  This growth exceeds the $500,000 threshold, and there was no testimony or

---

[14] Memorandum of Decision, Doc. No. 313 at 4.

[15] Ex. 26 at 1241.

MEMORANDUM OF DECISION - 21

proof as to the source of the growth or Star Mountain's aggregate offering during such period.[16] Put another way, there was no evidence that the investment account grew from anything other than offerings to investors. While there was some testimony that investors occasionally deposited funds into the account without Tamio's knowledge, Tamio failed to demonstrate Star Mountain's aggregate offering remained below the statutory threshold. Therefore, Tamio did not present sufficient evidence to support a finding that the transactions were exempt under subsection 61-1-14(2).

Because the Court finds Tamio violated the registration requirement of the UUSA, the Court declines to discuss the other violations alleged by Michiko.

## C.    Damages

Michiko seeks to recover statutory damages arising from the promissory notes she executed with Star Mountain in 2007, as well as the Star Mountain promissory notes assigned to her by Francine Yeh and Ken Hsieh. The UUSA provides:

> A person who offers or sells a security in violation of Subsection 61-1-3(1), Section 61-1-7, Subsection 61-1-17(2), any rule or order under Section 61-1-15, which requires the affirmative approval of sales literature before it is used, any condition imposed under Subsection 61-1-10(4) or 61-1-11(7), or offers, sells, or purchases a security in violation of Subsection 61-1-1(2) is liable to the person selling the security to or buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at 12% per year from the date of payment, costs, and reasonable attorney's fees, less the amount of any income received on the security, upon the tender of the security or for damages if he no longer owns the security.

---

[16] Tamio testified he followed the advice of counsel and kept Star Mountain's offerings below the statutory threshold. However, he stated the offering remained below $1,000,000, not the applicable $500,000 limit.

MEMORANDUM OF DECISION - 22

Utah Code § 61-1-22(1)(a) (2006).  "Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at 12% per year from the date of disposition."  Utah Code § 61-1-22(1)(b) (2006).

Additionally, Michiko seeks treble damages pursuant to subsection 61-1-22(2) (2006).  This subsection provides that a court "may award an amount equal to three times the considerations paid for the security . . . upon a showing that the violation was reckless or intentional."  *Id*.  In *Steenblik v. Lichfield*, the plaintiff alleged violations of subsection 61-1-1(2) for fraud.  906 P.2d 872 (Utah 1995).  The defendant, who was a director of the seller, "clearly knew that [plaintiff] was being fraudulently enticed into making investments" and rather than intervene to stop the violations, he "helped defraud her."  *Id.* at 879.  The Utah Supreme Court affirmed the jury's finding that the defendant had recklessly and intentionally violated the UUSA, noting he "signed loan disclosure and stock purchase agreements, he continuously reassured [plaintiff] that her money was secure, and he funded his personal business ventures by repeatedly returning to [plaintiff] for funds."  *Id.* at 880.

The record does not reflect that Tamio's noncompliance with the UUSA was intentional or reckless.  In forming Star Mountain, Tamio engaged an attorney specializing in securities to advise him on managing Star Mountain's investments and the applicable laws.  Based on the attorney's guidance and recommendations, Tamio believed he was acting lawfully under the UUSA at the time he sold securities to Michiko, Yeh, and Hsieh.  Although Tamio ultimately failed to comply with the UUSA,

MEMORANDUM OF DECISION - 23

the Court does not find Tamio acted intentionally or recklessly such that an award of treble damages is warranted.

While the Court does not discuss Michiko's claims that Tamio violated sections 61-1-3(1) and 61-1-1(2), the Court has considered the evidence presented regarding those claims in finding Tamio's violations of the UUSA were not intentional or reckless. As stated above, the record reflects Tamio believed he was acting lawfully under the UUSA, including in compliance with section 61-1-3(1). Regarding section 61-1-1(2), while the evidence is disputed, the Court remains unpersuaded that Tamio made any false statements to Michiko in connection with the Star Mountain promissory notes or misled her regarding their contents or effect. *See* Memorandum of Decision, Doc. No. 313 at 10-11. Furthermore, in light of the parties' testimony concerning the circumstances and exchanges surrounding the sale of the Star Mountain promissory notes, Michiko did not meet her burden to show that Tamio made statements that were misleading due to his omission of a material fact that was necessary to make such statements not misleading.[17] The sparse record does not support a conclusion that Tamio violated section 61-1-1(2), let alone that such violation was intentional or reckless rather than merely negligent.

---

[17] For example, according to Michiko, Tamio stated Star Mountain would continue the agreement they had under the holding account agreement, while omitting that the funds would not be invested in exclusively "hard money loans" and the promissory notes did not contain a personal guarantee. Tamio credibly refuted making any such statement or similar statement to Michiko. Additionally, the Court is unpersuaded that Michiko did not know the funds could be used for something other than "hard money loans," that the promissory notes did not contain a personal guarantee, or that Star Mountain would receive a greater return than the 2% she was to receive under the promissory notes. *See* Memorandum of Decision, Doc. No. 313 at 14-15; Utah Code § 61-1-22(3) (2007) ("A person who offers or sells a security in violation of Subsection 61-1-1(2) is not liable under Subsection (1)(a) if the purchaser knew of the untruth or omission . . . .").

MEMORANDUM OF DECISION - 24

Additionally, the statute provides that a court "may" award exemplary damages, indicating that an award is not mandatory but within a court's discretion. *See North Fork Meadows Owners Ass'n, Inc. v. Dove*, 537 P.3d 258, 263 (Utah Ct. App. 2023) ("may" grants discretionary power); *Holmes Dev., LLC v. Cook*, 48 P.3d 895, 902-03 (Utah 2002) (plain meaning of "may" is permissive or discretionary). Given the parties' testimony and the facts and circumstances of the case, the Court would decline awarding treble damages in the exercise of its discretion. *See Long v. Stutesman*, 269 P.3d 178, 186 (Utah Ct. App. 2011) (affirming denial of punitive damages noting that even if trial court determined defendant's actions were sufficient to support an award, it is within the trial court's discretion to award or deny punitive damages); *White v. Randall*, 156 P.3d 849, 854 (Utah Ct. App. 2007) ("Even when malicious action has been established, a trial court has discretion in deciding whether to award punitive damages.").

Tamio also asserts the equitable defense of unclean hands, alleging Michiko committed other wrongdoings in various investment ventures. Under the doctrine of unclean hands, a party "will not be permitted to take advantage of his own wrongdoing or claim the benefit of his own fraud." *Goggin v. Goggin*, 299 P.3d 1079, 1097 (Utah 2013). A party seeking equitable relief "must show that his . . . conduct has been fair, equitable, and honest as to the particular controversy in issue." *Id.* However, unclean hands is not a defense to legal claims, but an equitable doctrine that applies to equitable relief. *See Hill v. Estate of Allred*, 216 P.3d 929, 935 (Utah 2009) ("hygiene of [plaintiff's] hands" not at issue when court does not invoke equitable powers to award damages). The unclean hands defense is inapplicable here because Michiko seeks

MEMORANDUM OF DECISION - 25

statutory damages, not rescission.  Even if Michiko did seek equitable relief, there was not sufficient evidence to support a finding that Michiko committed wrongdoing in the security transactions at issue such that she should be barred from recovery.

**CONCLUSION**

For the reasons stated above, the Court will enter an order regarding the various preliminary motions and an order addressing the damage calculation and amount.  Once the damage amount is established, the Court will enter a judgment in favor of Michiko, against Tamio only, and such debt will be excepted from discharge under § 523(a)(19).[18]

DATED: March 25, 2026



_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

---

[18] Michiko also sought a judgment against Tamio and Anna's "marital community."  This is problematic for two reasons.  First, Tamio and Anna are no longer married, and no such marital community exists.  Second, under Idaho community property law, while community property many be liable for certain debts against one spouse, a marital community is not an entity with separate legal status. *Twin Falls Bank & Tr. Co. v. Holley*, 723 P.2d 893, 896 (Idaho 1986) (stating the "marital community is not a legal entity such as a business partnership or corporation. . . . While one may properly speak of a 'corporate debtor,' there is no such entity as a 'community debtor.'").

MEMORANDUM OF DECISION - 26